ROBERT W. FERGUSON
*Attorney General*

JEFFREY T. SPRUNG, WSBA #23607
R. JULY SIMPSON, WSBA #45869
PAUL M. CRISALLI, WSBA #40681
SPENCER W. COATES, WSBA #49683
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON
# AT SPOKANE

| | |
|---|---|
| STATE OF WASHINGTON, | NO. |
| Plaintiff, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| BETSY DeVOS, in her official capacity as Secretary of the United States Department of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, a federal agency, | |
| Defendants. | |

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ................................................................... 1

3    II.   JURISDICTION AND VENUE ............................................ 3

4    III.  PARTIES ............................................................................ 3

5    IV.   RELEVANT FACTS ........................................................... 5

6         A.  The COVID-19 Pandemic ............................................. 5

7         B.  The Coronavirus Aid, Relief, and Economic Security Act ........ 11

8         C.  The Department's CARES Act Guidance ................................. 15

9               1.   April 9, 2020, guidance ...................................... 15

10              2.   April 21, 2020, guidance .................................... 19

11        D.  The Department's Reversal of Position in Its April 21, 2020,
             Guidelines Is Unlawful ............................................... 23

12

13        E.  Injuries to the State of Washington and Its Residents ............... 25

14   V.    CAUSES OF ACTION ...................................................... 33

15   VI.   PRAYER FOR RELIEF .................................................... 40

16

17

18

19

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

i

1

# I.    INTRODUCTION

2         1.    This suit challenges the United States Department of Education's

3    (the Department) unilateral denial of emergency COVID-19 relief to tens of

4    thousands of Washington higher education students made eligible by Congress

5    and who are in desperate need of help. In the Coronavirus Aid, Relief, and

6    Economic Security Act (CARES Act), Congress directed the Department to

7    distribute over $100 million to colleges and universities in Washington to provide

8    emergency financial aid grants to higher education students whose lives and

9    educations were disrupted by COVID-19. Without Congressional authorization,

10    the Department grafted its own limit on Congress's directive, requiring students

11    to meet the eligibility requirements for federal financial aid under a different

12    statute. The Department did so despite its express recognition that CARES Act

13    emergency grants are not federal financial aid, Congress gave institutions—not

14    the Department—"significant discretion" to decide which students need urgent

15    financial help, and the Department lacked authority to impose additional

16    restrictions on the eligibility criteria dictated by Congress.

17         2.    As a result of the Department's unauthorized eligibility restriction,

18    over 85,000 Washington higher education students who desperately need

19    financial assistance have been excluded from federal help. These students are

20    among those whose financial survival and lifeline to higher education is most

21    threatened by COVID-19, because they worked part-time to pay for tuition,

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

1

1    healthcare, and childcare, they did not have high school diplomas, or they had

2    missed payments on federal student loans. They include, for example, 24,364

3    basic adult education students at Washington's 34 community and technical

4    colleges who are acquiring reading, writing, math, and language skills to leverage

5    a job, college degree, or trade certification; 28,451 high school-aged students in

6    Running Start Programs; and many of Washington's approximately 17,000

7    "Dreamers," individuals brought to the country at an early age, educated by

8    Washington secondary schools, and protected under the Deferred Action for

9    Childhood Arrivals program.

10         3.    The Department's unauthorized eligibility restriction violates the

11    Administrative Procedure Act, separation of powers, and the Spending Clause in

12    the United States Constitution. The CARES Act does not delegate to the

13    Department authority to interpret its eligibility requirements. Thus, the

14    Department's action is entitled to no or minimal deference. In this case, the

15    applicable CARES Act provision provides no support for engrafting the

16    eligibility requirements from a different statute onto students' ability to qualify

17    for emergency grants to respond to a sudden pandemic. Further, the Department's

18    eligibility restriction is arbitrary and capricious because, among many reasons, it

19    denies emergency aid to college students who most need pandemic assistance to

20    continue their higher education. Finally, separation of powers principles and the

21    Spending Clause prevent the Department from asserting "[the] unilateral

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

2

1    authority" to "thwart congressional will by canceling appropriations passed by

2    Congress." *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir.

3    2018) (internal quotation marks and citations omitted).

4        4.    To avert irreparable injury to the State and its residents, Washington

5    brings this suit to declare unlawful and enjoin the Department's restriction on

6    student eligibility for coronavirus emergency financial aid grants.

7    **II.    JURISDICTION AND VENUE**

8        5.    This Court has personal jurisdiction over the Defendants pursuant to

9    28 U.S.C. § 1391(e) because Defendants are agencies and officers of the United

10    States.

11        6.    This Court has jurisdiction over the subject matter of this lawsuit

12    pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

13        7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)

14    because this is a judicial district in which Plaintiff State of Washington resides,

15    the Department's interpretation of the CARES Act will adversely affect the

16    health and welfare of residents in this district, and the finances of the State, and

17    this action seeks relief against a federal agency and its official acting in her

18    official capacity.

19    **III.    PARTIES**

20        8.    The State of Washington represented by its Attorney General is a

21    sovereign state of the United States of America.

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

9.      Plaintiff State of Washington is represented by its Attorney General, who is the State's chief legal advisor. The powers and duties of the Attorney General include acting in federal court on matters of public concern to the State.

10.     The State of Washington brings this action to redress harms to its sovereign, proprietary, and quasi-sovereign interests and its interests as *parens patriae* in protecting the health and well-being of their residents. The State of Washington is affected by Department's interpretation of the CARES Act, is directly injured by it, and the relief requested will redress its injuries.

11.     Washington's institutions of higher education are current recipients of CARES Act emergency grant funds. Accordingly, Washington is directly affected by the Department's unlawful interpretation of section 18004 of the CARES Act. Washington institutions are forced to change their behavior because of the Department's unlawful guidance.

12.     Washington has a proprietary interest in maintaining the enrollment of students in its institutions of higher education. The Department's guidance harms this interest because it denies emergency assistance to students who need it to remain in school. Washington colleges and universities have experienced harm in the form of loss of enrollment due to students' recent financial insecurity and expect continued loss of enrollment because of the Department's restriction.

13.     Washington has a quasi-sovereign interest in protecting the health, safety, and well-being of its residents. The Department's interpretation severely

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

4

1  limits the use of emergency funding that Congress intended to broadly assist

2  higher education students affected by COVID-19. It therefore jeopardizes the

3  health, housing, nutrition, and well-being of students in the State of Washington.

4      14.    The State of Washington and its higher education students will

5  suffer significant and irreparable harm if the Department's interpretation is

6  allowed to stand.

7      15.    Defendant Betsy DeVos is the Secretary of the Department of

8  Education. She is sued in her official capacity.

9      16.    Defendant United States Department of Education is an executive

10  agency with responsibility for distributing Higher Education Emergency Relief

11  Act funds to Washington institutions of higher education in compliance with

12  section 18004 of the Cares Act.

13  **IV.    RELEVANT FACTS**

14  **A.    The COVID-19 Pandemic**

15      17.    A novel coronavirus is a new coronavirus that has not been

16  previously identified. According to Johns Hopkins University & Medicine

17  Coronavirus Resource Center, on December 29, 2019, the Wuhan City

18  government, in Hubei Province, China, started to trace cases of a coronavirus. On

19  January 4, 2020, a Shanghai lab detected a coronavirus similar to severe acute

20  respiratory syndrome (SARS). On January 6, 2020, a Wuhan doctor and

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

5

1    13 nurses were infected after operating on infected patient, and the next day the

2    pathogen was identified as a novel coronavirus.

3        18.    On January 30, 2020, the World Health Organization (WHO)

4    declared the novel coronavirus outbreak a Public Health Emergency of

5    International Concern. On February 11, 2020, it announced an official name for

6    the disease causing the 2019 outbreak, coronavirus disease 2019, abbreviated as

7    COVID-19. (In COVID-19, 'CO' stands for 'corona,' 'VI' for 'virus,' and 'D'

8    for 'disease.' Formerly, this disease was referred to as "2019 novel coronavirus"

9    or "2019-nCoV.")

10        19.    Coronaviruses are a large family of viruses that are common in

11    people and may affect different species of animals, including camels, cattle, cats,

12    and bats. The exact source of the COVID-19 virus is unknown.

13        20.    The virus that causes COVID-19 is thought to spread mainly from

14    person to person. It is spreading very easily and sustainably between people.

15    Information from the ongoing COVID-19 pandemic indicates this virus spreads

16    more efficiently than influenza.

17        21.    One of the most important ways to measure the burden of

18    COVID-19 is mortality. Nevertheless, the actual total death toll from COVID-19

19    is likely to be higher than the number of confirmed deaths, due to limited testing

20    and problems in the attribution of the cause of death. Countries throughout the

21    world have reported different case fatality ratios – the number of deaths divided

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    by the number of confirmed cases. Differences in mortality numbers can be

2    caused by differences in the number of people tested; demographics, because

3    mortality tends to be higher in older populations, and characteristics of the

4    healthcare system, because mortality may rise as hospitals become overwhelmed

5    and have fewer resources.

6        22.    The fatality rate of COVID-19 is higher than the fatality rate for a

7    more familiar disease: the seasonal influenza. Deaths have been concentrated

8    among older adults, who have weaker immune systems on average than younger

9    people and have a higher rate of chronic illness. People of all ages with chronic

10    medical conditions are also at higher risk. Johns Hopkins University & Medicine

11    Coronavirus Resource Center reports a death rate in the United States of 6%,

12    which is three times the fatality rate in the United States for people infected with

13    the flu. Johns Hopkins University & Medicine, *Mortality Analyses*,

14    https://coronavirus.jhu.edu/data/mortality (last visited May 14, 2020). Some

15    scientists estimate, however, that COVID-19 is up to 20 times more deadly than

16    the flu. *See, e.g.*, Jeremy Samuel Faust & Carlos del Rio,

17    *Assessment of Deaths From COVID-19 and From Seasonal*

18    *Influenza*, JAMA Internal Med., May 14, 2020,

19    https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2766121

20    (last visited May 19, 2020).

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

7

1   23.    On January 21, 2020, the Washington State Department of Health

2   confirmed what was believed to be the first case of COVID-19 in the United

3   States in Snohomish County, Washington. The Centers for Disease Control and

4   Prevention (CDC) then confirmed as the first-known U.S. case a diagnosis of a

5   35-year-old man living in Snohomish County, Washington.[1] Since then, as of

6   May 18, the country has reported 1,500,753 cases and 90,312 deaths. Johns

7   Hopkins University & Medicine, COVID-19 Dashboard by the Center for

8   Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU),

9   https://coronavirus.jhu.edu/map.html (last visited May 19, 2020).

10   24.    On February 19, 2020, a resident of a Life Care Centers of America

11   nursing home in Kirkland, Washington, was transferred to a local hospital and

12   later tested positive for COVID-19. On February 24, a 54-year-old man was

13   transferred from the Life Care Center of Kirkland to Harborview Medical Center

14   and died there on February 26. Also on February 26, a woman in her 80s from

15   the center died at her family home. Both were found to have had COVID-19. On

16   ───────────────

17   [1] It was later determined that a woman in California died on February 6

18   from COVID-19, meaning she likely contracted it in early to mid-January. CNN,

19   Jason   Hanna,   et   al.,   *2 Californians   died   of   coronavirus   weeks*

20   *before   previously   known   1st   US   death*   (Apr.   22,   2020),

21   https://www.cnn.com/2020/04/22/us/california-deaths-earliest-in-us/index.html

22   (last visited May 19, 2020).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

8

1   February 28, a high school student at Henry M. Jackson High School in

2   Mill Creek, Washington, was confirmed as having the virus, causing the school

3   to be closed immediately. The following day, researchers confirmed the

4   coronavirus strain in the student's case may be related to the coronavirus strain

5   in the first confirmed U.S. case from January 21, suggesting that the virus may

6   have been spreading in the area for up to six weeks.

7       25.    Washington State made the first announcement of a death from the

8   disease in the U.S. on February 29 and later announced that the two deaths on

9   February 26 were also due to COVID-19. Until mid-March, Washington had the

10  highest absolute number of confirmed cases and the highest number per capita of

11  any state in the country, when it was surpassed by New York.

12      26.    On February 29, 2020, Washington Governor Jay Inslee declared a

13  state of emergency in all counties in Washington. In Proclamation 20-05,

14  Governor Inslee stated that the CDC had identified the potential public health

15  threat posed by COVID-19 both globally and in the United States as "high." He

16  provided that there were 85,688 confirmed cases of COVID-19 worldwide with

17  66 of those cases in the United States. Governor Inslee found that the Washington

18  State Department of Health had confirmed localized person-to-person spread of

19  COVID-19 in Washington State, which "significantly increase[ed] the risk of

20  exposure and infection to Washington State's general public and creat[ed] an

21  extreme public health risk that may spread quickly[.]" State of Washington Office

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1  of the Governor, Proclamation by the Governor 20-05,

2  https://www.Governor.wa.gov/sites/default/files/proclamations/20-

3  05%20Coronavirus%20%28final%29.pdf (last visited May 14, 2020).

4          27.    The two largest state universities, University of Washington (UW)

5  and Washington State University (WSU) curtailed on-campus classes during the

6  pandemic. UW announced its closure on March 6; and on March 11, WSU

7  announced the closure would begin after its spring break, on March 23.

8          28.    On March 12, 2020, Governor Inslee announced closures for all

9  public and private K-12 schools in King, Snohomish, and Pierce Counties

10  beginning from March 17 through at least April 24. Later, on March 13,

11  Governor Inslee announced K-12 closures until at least April 24 throughout the

12  state. On April 6, 2020, Governor Inslee announced that the school closure would

13  encompass the rest of the school year statewide.

14          29.    On March 13, 2020, President Trump issued a proclamation that the

15  COVID-19 outbreak constituted a national emergency.

16          30.    As of May 13, 2020, the Washington State Department of Health

17  reported 17,330 confirmed cases of COVID-19 in the State and 962 deaths.

18          31.    As of May 13, 2020, Johns Hopkins University & Medicine

19  Coronavirus Resource Center reported over 4 million confirmed COVID-19

20  cases, with over 1.3 million in the United States, and over 293,000 global deaths.

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

10

1    **B.    The Coronavirus Aid, Relief, and Economic Security Act**

2        32.    In late March 2020, the United States Congress acted to address the

3    COVID-19 outbreak. It passed legislation, signed by the President, that included

4    large new appropriations to federal agencies with explicit directions for

5    distributing the new funding.

6        33.    At 11:17 p.m., on March 25, 2020, the Senate passed the

7    Coronavirus Aid, Relief, and Economic Security Act as an amendment in the

8    nature of a substitute to H.R. 748. On March 27, 2020, the House passed the bill

9    and presented it to the President, who signed it the same day. Pub. L. No.

10    116-136, 134 Stat. 281 (Mar. 27, 2020) (CARES Act).

11        34.    The CARES Act appropriates federal funding for a wide array of

12    purposes related to COVID-19. It contains a series of provisions directing

13    funding through the Department of Education. Specifically, the CARES Act

14    makes the following appropriation to the Department:

15        For an additional amount for "Education Stabilization Fund",
        $30,750,000,000, to remain available through September 30,
16        2021, to prevent, prepare for, and respond to coronavirus,
        domestically or internationally[.]

17    *Id.*

18        35.    Section 18001 of the CARES Act directs the Secretary of Education

19    to allocate the Education Stabilization Fund for specified purposes in specified

20    percentages. After directing the Secretary to allocate 2% of the Education

21    Stabilization Fund to certain purposes, Section 18001 specifies the percentages

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

11

the Secretary is to allocate to three funds created by the Act, the Governor's Emergency Education Relief Fund, the Elementary and Secondary School Emergency Relief Fund, and the Higher Education Emergency Relief Fund (HEERF). CARES Act, § 18001(b).

36.    In total, the CARES Act appropriates approximately $14 billion in funding to institutions of higher education to assist with the costs associated with disruptions in education due to COVID-19. In Section 18004(a), Congress details exactly how the Secretary is to allocate the Higher Education Emergency Relief Fund. This subsection gives the Secretary discretion only with regard to the allocation of 2.5% of the roughly $14 billion fund.

37.    Subsection (a)(1) directs the Secretary how to allocate the vast majority of the HEERF. "The Secretary shall allocate funding under this section as follows: (1) 90 percent"—$12.56 billion—"to each institution of higher education to prevent, prepare for, and respond to coronavirus," using a detailed formula specified by Congress based on student enrollment. CARES Act, § 18004(a)(1).

38.    Subsection (a)(2) directs 7.5% of the HEERF to minority-serving institutions, again based on a specified, non-discretionary formula. CARES Act, § 18004(a)(2) ("allocated by the Secretary proportionally to such programs based on the relative share of funding appropriated to such programs in the Further Consolidated Appropriations Act, 2020").

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

12

39.     Finally, subsection (a)(3) gives the Secretary some discretion over just 2.5% of the HEERF. That percentage is reserved for "institutions of higher education that the Secretary determines have the greatest unmet needs related to coronavirus . . . ." CARES Act, § 18004(a)(3).

40.     Subsection (b) of Section 18004 directs the Secretary how to distribute the HEERF, and subsection (c) directs how the HEERF may be used. Neither subsection grants the Secretary any interpretive authority or any discretion in implementing Congress's directives.

41.     Subsection (b) states that HEERF funds "shall be distributed by the Secretary using the same systems as the Secretary otherwise distributes funding to each institution under title IV of the Higher Education Act of 1965 (20 U.S.C. [§] 1001 et seq.)." This refers to an existing G5 grants management system the Department uses to disburse money. CARES Act, § 18004(b). *See also* U.S. Dep't of Educ., Frequently Asked Questions, https://www.g5.gov/g5/home/!ut/p/z1/hY1BC4IwHMU_za77_zHN6GahkHaIQly7xAZrCrrJXAp9-gYduhS923vv93jAgQE3Yu608J01og_-yte3CPeIWF3q9JyneEiKuDxVdRQXCM0_gIcafyhDKIHr3sr3VWbkaqOBO3VXTjn6cCFuvR-nLUGCy7JQnVBtZ4KNkjthTIBaP3wdt3bywD4bGAf2PKomewEZ_rsa/dz/d5/L2dJQSEvUUt3QS80TmxFL1o2XzVJMVVVRM0tTVUY3SkQwwSUFKMFFFFY3ODgxMDA3/#faqQuestion11, (last visited May 14, 2020).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

42.    Subsection (c) addresses "use of funds" by institutions. It gives the Secretary no authority; indeed, it does not mention the Secretary. "Except as otherwise specified in subsection (a), an institution . . . may use the funds received to cover any costs associated with significant changes to the delivery of instruction due to the coronavirus," excluding athletics, religious instruction, and other activities for which Congress denies funding. CARES Act, § 18004(c).

43.    Further addressing the emergency grants at issue in this litigation, Congress directs that:

> Institutions of higher education shall use no less than 50 percent of such funds to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care.

*Id.*

44.    The education provisions in the CARES Act define "cost of attendance" as used in § 18004(c). "Except as otherwise provided in sections 18001–18006 of this title, as used in such sections . . . the term 'cost of attendance' has the meaning given such term in section 472 of the Higher Education Act of 1965." CARES Act, § 18007(5). In turn, section 472 of the HEA is an expansive definition that includes things like tuition, books, miscellaneous personal expenses, computer equipment, room and board, and certain dependent care expenses. 20 U.S.C. § 1087ll (2008).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

14

1    **C.    The Department's CARES Act Guidance**

2        **1.    April 9, 2020, guidance**

3        45.    On April 9, 2020, the Department released the portion of the

4    CARES Act funding Congress appropriated for student emergency grants. The

5    Department issued a press release, in which Defendant DeVos was quoted:

6    "What's best for students is at the center of every decision we make."

7        46.    In addition to a press release, the Department contemporaneously

8    issued a letter from Secretary DeVos to college and university presidents, a

9    certification form for higher education institutions, a list of individual allocations

10    to colleges and universities, and a methodology for how it calculated the

11    allocations schools were scheduled to receive.

12        47.    The documents issued by Defendants on April 9, 2020, correctly

13    read the CARES Act as giving no authority to the Department to restrict the

14    students to whom institutions awarded emergency grants, not limiting recipients

15    to students eligible for financial aid under Title IV of the HEA, and as

16    empowering institutions to determine the recipients limited only by the express

17    requirements in the Act.

18        48.    In the April 9, 2020, letter to college and university presidents,

19    Defendant DeVos wrote that "[t]he CARES Act provides institutions with

20    significant      discretion      on      how      to      award      this

21    emergency    assistance    to    students."    Letter    from    the    Secretary    of

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    Education    to    College    and    University    Presidents    (Apr. 9, 2020),

2    https://www2.ed.gov/about/offices/list/ope/caresactgrantfundingcoverletterfinal.

3    pdf (last visited May 14, 2020). DeVos continued:

4              This means that ***each institution may develop its own system and***
          ***process for determining how to allocate these funds***, which may
5          include distributing the funds to all students or only to students
          who    demonstrate    significant    need.    The    ***only    statutory***
6          ***requirement*** is that the funds be used to cover expenses related to
          the disruption of campus operations due to coronavirus (including
7          eligible expenses under a student's cost of attendance, such as
          food, housing, course materials, technology, health care, and
8          child care).

9    *Id*. (emphasis added).

10          49.    The Department's press release confirmed the Department's initial

11    understanding of the CARES Act: "In order to access the funds, the Department

12    must receive a signed certification from the higher education institution affirming

13    they will distribute the funds in accordance with applicable law. ***The college or***

14    ***university will then determine which students will receive the cash grants***."

15    Press Release, U.S. Dep't of Educ., Secretary DeVos Rapidly Delivers More

16    Than $6 Billion in Emergency Cash Grants for College Students Impacted by

17    Coronavirus    Outbreak    (Apr.    9,    2020),    https://www.ed.gov/news/press-

18    releases/secretary-devos-rapidly-delivers-more-6-billion-emergency-cash-

19    grants-college-students-impacted-coronavirus-outbreak (last visited May 14,

20    2020) (emphasis added).

21

22

COMPLAINT FOR                                16              ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                              Complex Litigation
800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                            Seattle, WA 98104-3188
(206) 464 – 7744

50.    The Department's certification form expressly disavowed that CARES Act emergency grants were subject to Title IV requirements: "The Secretary does not consider these individual emergency financial aid grants to constitute Federal financial aid under Title IV of the HEA." Recipient's Funding Certification and Agreement Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief, and Economic Security (CARES) Act ¶ 3, https://www2.ed.gov/about/offices/list/ope/caresheerfcertificationandagreement finalombapprovedforissuance.pdf (last visited May 14, 2020). The certification form also expressly acknowledged that Congress assigned to institutions the discretion to determine the amount, and thus necessarily the recipients, of emergency aid, subject to applicable statutes: "Recipient retains discretion to determine the amount of each individual emergency financial aid grant consistent with all applicable laws including non-discrimination laws." *Id*. The language the Department included in the certification regarding institutions' use of CARES Act emergency grant funding was intentionally hortatory and not mandatory, using phrases such as "the Secretary recommends," "the Recipient should be mindful," and the "Secretary strongly encourages." *Id*.

51.    Contemporaneous reporting on the website of a prominent higher education trade organization, the National Association of Financial Aid Administrators, noted institutions' broad discretion recognized by the Department, expressly reporting that the Title IV federal financial aid eligibility

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    requirements did not apply: "Notably, neither the statute or certification form

2    require that these funds be provided to Title IV eligible students, meaning schools

3    are able to cast a wider net in determining and meeting emergency needs."

4    Owen Daugherty, *ED     Provides     Details     on     Institutional*

5    *Allocation   for   $6   Billion   in   Emergency   Funds   for   Students*,

6    NASFAA   (Apr.   10,   2020,   12:35   p.m.),   https://www.nasfaa.org/news-

7    item/21501/ED_Provides_Details_on_Institutional_Allocation_for_6_Billion_i

8    n_Emergency_Funds_for_Students (last visited May 14, 2020).

9         52.    The Department's April 9, 2020, guidance to institutions is

10    consistent with guidance its Office of Postsecondary Education issued on April 3,

11    2020. In a memorandum posted on that office's website, it stated: "***Any aid (in***

12    ***the form of grants or low-interest loans) received by victims of an emergency***

13    ***from a federal or state entity for the purpose of providing financial relief is not***

14    ***counted*** as income for calculating a family's Expected Family Contribution

15    (EFC) under the Federal Methodology or ***as estimated financial assistance for***

16    ***packaging purposes***." Office of Postsecondary Education, UPDATED Guidance

17    for   interruptions   of   study   related   to   Coronavirus   (COVID-19),

18    Federal Student Aid   (Apr.   3,   2020),   https://ifap.ed.gov/electronic-

19    announcements/040320UPDATEDGuidanceInterruptStudyRelCOVID19

20    (last visited May 18, 2020) (emphasis added).

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

18

1

## 2.    April 21, 2020, guidance

2          53.    On April 21, 2020, the Department announced that it would release

3    the additional $6.2 billion the CARES Act appropriated for institutions' own use.

4    The Department recognized that the "funding for these 'Recipient Institutional

5    Costs' is separate from the funding previously made available for 'Emergency

6    Financial Aid Grants to Students.' " Press Release, U.S. Dep't of Educ., Secretary

7    DeVos Delivers $6 Billion in Additional Grant Funding to Support Continued

8    Education    at    America's    Colleges,    Universities    (Apr.    21,    2020),

9    https://www.ed.gov/news/press-releases/secretary-devos-delivers-6-billion-

10   additional-grant-funding-support-continued-education-americas-colleges-

11   universities (last visited May 14, 2020).

12          54.    Despite the fact that this release of funds did not pertain to

13   Congress's authorization of emergency grants to students, the Department

14   reversed its position on the discretion institutions had to determine students

15   eligible for emergency grants, as well as the authority the Department had to

16   restrict student eligibility.

17          55.    On April 21, 2020, it posted a document entitled "Frequently Asked

18   Questions about the Emergency Financial Aid Grants to Students under Section

19   18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act"

20   (Emergency Grants FAQs). In the Emergency Grants FAQs, the Department

21   purported to answer the question, "What students are eligible to receive

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

19

emergency financial aid grants from the HEERF?" For the first time, the Department asserted that "[o]nly students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial aid grants." Higher Education Emergency Relief Fund, Frequently Asked Questions about the Emergency Financial Aid Grants to Students under Section 18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Emergency Grants FAQs I), https://www2.ed.gov/about/offices/list/ope/heerfstudentfaqs.pdf (FAQ #9) (last visited May 14, 2020).

56.    The Department's FAQ response continued:

> If a student has filed a Free Application for Federal Student Aid (FAFSA), then the student has demonstrated eligibility to participate in programs under Section 484 the HEA. Students who have not filed a FAFSA but who are eligible to file a FAFSA also may receive emergency financial aid grants. The criteria to participate in programs under Section 484 of the HEA include but are not limited to the following: U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is male); and a high school diploma, GED, or completion of high school in an approved homeschool setting.

*Id*.

57.    On or about April 21, 2020, the Department also published a second set of FAQs, entitled, "Frequently Asked Questions about the Institutional Portion of the Higher Education Emergency Relief Fund under Section 18004(a)(1) and 18004(c) of the Coronavirus Aid, Relief, and Economic Security

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    (CARES) Act." Higher Education Emergency Relief Fund, Frequently Asked

2    Questions about the Institutional Portion of the Higher Education Emergency

3    Relief Fund under Section 18004(a)(1) and 18004(c) of the Coronavirus Aid,

4    Relief, and Economic Security (CARES) Act (Emergency Grants FAQs II),

5    https://www2.ed.gov/about/offices/list/ope/heerfinstitutionalfaqs.pdf

6    (last visited May 14, 2020). In this FAQ, the Department repeated that "students

7    must be eligible to receive emergency financial aid grants, and only students who

8    are or could be eligible to participate in programs under Section 484 in Title IV

9    of the Higher Education Act of 1965, as amended (HEA), may receive emergency

10   financial aid grants." *Id.*, FAQ #5.

11         58.    Section 484 of Title IV of the HEA, 20 U.S.C. § 1091, contains

12   numerous requirements for student eligibility for financial aid not contained in

13   the CARES Act. These include "U.S. citizenship or eligible noncitizen; a valid

14   Social Security number; registration with Selective Service (if the student is male);

15   and a high school diploma, GED, or completion of high school in an approved

16   homeschool setting." Emergency Grants FAQs I, FAQ #9. Other requirements

17   include that the student not be in default on any loan issued by the Department and

18   have maintained at least a cumulative C average, or its equivalent or academic

19   standing consistent with the requirements for graduation. 20 U.S.C. § 1091(a)(3),

20   (c)(1)(B) (2019); *see also* 34 C.F.R. § 668.32 (2020). By imposing eligibility

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    requirements not contained in the CARES Act, the Emergency Grants FAQs

2    violated section 18004(c) of the CARES Act.

3    59.    While the Department's Emergency Grants FAQ states that a FAFSA

4    is not required, having one on file is the primary practicable means for an institution

5    to determine that a student is eligible to participate in the student aid programs and

6    meet all applicable eligibility requirements.

7    60.    For institutions to access the second wave of funding, the Department

8    announced they first must have submitted the certification form for the emergency

9    grants for students, and then must submit a second certification form attesting that

10   they will use the money in accordance with the law.

11   61.    Both the Department's certifications purported to impose liability on

12   institutions if they did not comply with the Department's restriction of student

13   eligibility for emergency grants. The certification required for institutions to receive

14   emergency grant funding for their students states:

15          [F]ailure to comply with this Certification and Agreement, its
            terms and conditions, and/or all relevant provisions and
16          requirements of the CARES Act or any other applicable law may
            result in Recipient's liability under the False Claims Act,
17          31 U.S.C. § 3729, *et seq.*; OMB Guidelines to Agencies on
            Governmentwide Debarment and Suspension (Nonprocurement)
18          in 2 CFR part 180, as adopted and amended as regulations of the
            Department in 2 CFR part 3485; 18 USC § 1001, as appropriate;
19          and all of the laws and regulations referenced in Attachment A,
            which is incorporated by reference hereto.
20
     Recipient's Funding Certification and Agreement Emergency Financial Aid
21
     Grants     to     Students     under     the     Coronavirus     Aid,
22

COMPLAINT FOR                          22              ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                Complex Litigation
                                                          800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                             Seattle, WA 98104-3188
                                                               (206) 464 – 7744

1    Relief, and Economic Security (CARES) Act ¶ 4(g),

2    https://www2.ed.gov/about/offices/list/ope/caresheerfcertificationandagreement

3    finalombapprovedforissuance.pdf (last visited May 14, 2020).

4          62.    The certification to receive CARES Act funding for institutions' own

5    use states:

6          Recipient's failure to comply with this Certification and
          Agreement, its terms and conditions, and/or all relevant
7          provisions and requirements of the CARES Act or any other
          applicable law may result in Recipient's liability under the False
8          Claims Act, 31 U.S.C. § 3729, *et seq.*; OMB Guidelines to
          Agencies on Governmentwide Debarment and Suspension
9          (Nonprocurement) in 2 CFR part 180, as adopted and amended as
          regulations of the Department in 2 CFR part 3485; 18 USC
10         § 1001, as appropriate; and all of the laws and regulations
          referenced in Attachment A, which is incorporated by reference
11         hereto.

12   Recipient's Funding Certification and Agreement for the Institutional Portion of

13   the Higher Education Emergency Relief Fund Formula Grants Authorized by

14   Section 18004(a)(1) of the Coronavirus Aid, Relief,

15   and Economic Security (CARES) Act ¶ 4(i),

16   https://www2.ed.gov/about/offices/list/ope/heerfInstitutionalcertificationagreem

17   ent42020v2.pdf (last visited May 14, 2020).

18   **D.    The Department's Reversal of Position in Its April 21, 2020,**
        **Guidelines Is Unlawful**
19
          63.    The Department's restriction on student eligibility for CARES Act
20
     emergency grants to only those students who qualify for federal financial aid under
21

22

COMPLAINT FOR                          23          ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                           Complex Litigation
                                                       800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                         Seattle, WA 98104-3188
                                                           (206) 464 – 7744

1    section 484 of Title IV of the HEA is unlawful.[2] The CARES Act does not restrict

2    emergency grants to only students eligible for federal financial aid under section

3    484 of Title IV of the HEA. Further, the CARES Act does not delegate to the

4    Department the authority to interpret section 18004.

5        64.    The Department's Eligibility Restriction is illegal whether it is a

6    legislative or interpretive rule. If it is deemed a substantive rule, it is contrary to the

7    plain meaning of the CARES Act and is contrary to law. If it is deemed an

8    interpretive rule, it improperly imposes binding legal obligations on Washington

9    institutions of higher education that diverge from the CARES Act and purports to

10   have the force of law. Further, it is entitled to no or minimal deference and

11   contradicts Congress's manifest intent to funnel emergency aid through institutions

12   to students they deem in urgent need.

13       65.    The Eligibility Restriction also is arbitrary and capricious. The

14   Department initially acknowledged that "[t]he CARES Act provides institutions

15   with significant discretion on how to award this emergency assistance to

16   students," and "[t]he only statutory requirement is that the funds be used to cover

17   expenses related to the disruption of campus operations due to coronavirus

18   (including eligible expenses under a student's cost of attendance, such as food,

19   housing, course materials, technology, health care, and child care)." Letter from

20   _____

21       [2] Washington refers to this restriction below as the Department's

22   "Eligibility Restriction."

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

the Secretary of Education to College and University Presidents (Apr. 9, 2020),

https://www2.ed.gov/about/offices/list/ope/caresactgrantfundingcoverletterfinal.

pdf (last visited May 14, 2020). Further, the Department's certification form

expressly states that the grants are not "Federal financial aid under Title IV of the

HEA." Recipient's Funding Certification and Agreement Emergency Financial

Aid      Grants      to      Students      under      the      Coronavirus      Aid,

Relief,     and     Economic     Security     (CARES)     Act     ¶     3,

https://www2.ed.gov/about/offices/list/ope/caresheerfcertificationandagreement

finalombapprovedforissuance.pdf (last visited May 14, 2020). Nevertheless,

within 11 days the Department changed course and announced that the funds are

federal financial aid and that students would have to qualify under Title IV of the

HEA to be entitled to an emergency grant. The Emergency Grants FAQs contain

no analysis or explanation for this change of course. Nor was the Department's

certification revised to remove the inconsistent language that the grants were *not*

considered federal financial aid under Title IV of the HEA.

66.    The Department reversed its position without displaying awareness

that it was changing course, showing that the Eligibility Restriction was permissible

under section 18004, and without providing good reasons for the change.

**E.    Injuries to the State of Washington and Its Residents**

67.    The Washington Legislature enacted the Community and Technical

College Act of 1991, Wash. Rev. Code Title 28B.50. This Act created a network

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1  of community and technical colleges as an essential part of the State's higher

2  education system, including the colleges referred to above. The purpose of the

3  Act is to:

provide for the dramatically increasing number of students requiring high standards of education either as a part of the continuing higher education program or for occupational education and training, or for adult basic skills and literacy education, by creating a new, independent system of community and technical colleges which will:

(1) Offer an open door to every citizen, regardless of his or her academic background or experience, at a cost normally within his or her economic means;

(2) Ensure that each college district, in coordination with adjacent college districts, shall offer thoroughly comprehensive educational, training, and service programs to meet the needs of both the communities and students served by combining high standards of excellence in academic transfer courses; realistic and practical courses in occupational education, both graded and ungraded; community services of an educational, cultural, and recreational nature; and adult education, including basic skills and general, family, and workforce literacy programs and services;

(3) Provide for basic skills and literacy education, and occupational education and technical training in order to prepare students for careers in a competitive workforce;

(4) Provide or coordinate related and supplemental instruction for apprentices at community and technical colleges;

(5) Provide administration by state and local boards which will avoid unnecessary duplication of facilities, programs, student services, or administrative functions; and which will encourage efficiency in operation and creativity and imagination in education, training, and service to meet the needs of the community and students;

(6) Allow for the growth, improvement, flexibility and modification of the community colleges and their education, training, and service programs as future needs occur; and

(7) Establish firmly that as provided under RCW 28B.50.810, community colleges are, for purposes of academic training, two year institutions, and are an independent, unique, and vital section of our state's higher education system,

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

26

1

2

separate from both the common school system and other institutions of higher learning.

Wash. Rev. Code § 28B.50.020 (2019).

3

4

68.    Approximately 363,000 students are enrolled statewide in Washington's community and technical colleges.

5

6

7

8

9

10

11

69.    Wash. Rev. Code Title 28B.10 establishes a system of Washington universities. These include state universities, the University of Washington and Washington State University; regional universities, Western Washington University at Bellingham, Central Washington University at Ellensburg, and Eastern Washington University at Cheney; and state college, The Evergreen State College in Thurston county. Wash. Rev. Code § 28B.10.016 (2019). These universities also are part of the State's system of higher education.

12

13

14

15

16

17

18

19

20

21

22

70.    Numerous colleges and universities in Washington have submitted applications to the Department to receive HEERF monies and have signed Funding Certifications and Agreements as required by the Department. This includes Washington's major four-year universities and all 34 community and technical colleges in Washington, including Columbia Basin College, Wenatchee Valley College, Pierce College, North Seattle College, and Skagit Valley College. Many of these institutions signed the Recipient's Funding Certification and Agreement Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief, and Economic Security (CARES) Act before the Department announced the Eligibility Restriction.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

71.    The Department's Eligibility Restriction applies to Washington colleges and universities and restricts their ability to distribute CARES Act funds to all needy students. But for the Eligibility Restriction, Washington colleges and universities would distribute CARES Act funding to students who qualify under section 18004(c) but are excluded by the challenged action.

72.    Students at Washington colleges and universities have been deeply affected by the COVID-19 pandemic. The disruption of campus operations has caused them to incur unexpected expenses such as food, housing, course materials, technology, health care, and child care. Some students have been unable to remain in school due to these expenses, and Washington institutions have lost enrollment as a result. In addition, the institutions anticipate continued loss of enrollment in summer terms and future semesters because of these expenses. The Eligibility Restriction has caused students to have to try to absorb the above expenses themselves, forced students to disenroll in order to manage these expenses, and worsened the rate of disenrollment from Washington institutions.

73.    Lack of financial resources is the most common reason for student disenrollment. Many students, particularly at technical and community colleges, work part-time while in school making them ineligible for unemployment benefits, and others are small business owners. Many such students are without an income because of COVID-19 and desperately need help. In addition, many Washington students are just above the level to receive Pell Grants. These individuals are often

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

28

the hardest hit because they do not meet the threshold to receive any significant amount of aid, but they do not make enough to make ends meet. Many of these students would be able to continue their education if their institutions could provide CARES Act funding more broadly.

74.    The loss of enrollment at Washington institutions caused by the Eligibility Restriction has reduced tuition payments and will continue to do so. This financial injury harms the proprietary interests of Washington and its institutions of higher education.

75.    Washington higher education students have encountered a variety of needs during the switch to online learning. These include:

a.    Loss of access to campus computer labs, student media centers, artist centers, electronics, science, and/or nursing labs requiring the purchase of technical equipment for use at home such as computers, printers, cameras, other equipment for classes, and upgrades of internet services or internet hotspots;

b.    Loss of access to technology resources for disability services accommodations such as screen readers, alternate format textbooks, notetakers, or other needs;

c.    Loss of income from a campus job or other work;

d.    Loss of access to onsite counselors and other medical care; and

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

29

e.   Loss of access to campus gym shower facilities for personal hygiene when necessary due to living situations or homelessness.

76.   The Eligibility Restriction has forced Washington colleges and universities to deny emergency financial aid grants to students who are eligible for emergency financial aid grants under the CARES Act.

77.   545,000 of Washingtonians 18 and over lack a high school credential. The students improperly denied grants by the Eligibility Restriction include those in Basic Education for Adults (BEdA) programs. The majority of Washington's 51,838 Basic Education for Adults students are not receiving or deemed eligible for CARES Act funding. BEdA students fall into two categories: students who did not complete high school but are seeking to reengage in school to get a high school diploma and students for whom English is not their first language. The students for whom English is not their first language are often highly educated in their home countries and plan to enroll in a 4-year degree once their English language skills improve. Both these populations are more likely to rely on campus internet or computer labs making the transition to distance learning more challenging or impossible without financial support. Sometimes this is because the students cannot afford laptops or internet. Other students are older and face the additional burden that the use of technology is already more difficult or the use of the internet or a laptop was not part of their daily life.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

30

78.    The Eligibility Restriction also denies emergency financial aid grants to students in the Running Start Program. There are a significant number of Running Start students at Washington higher education institutions who are high school students taking primarily, or all, community college classes. In the 2017-18 school year, 28,541 community and technical college students were in a Running Start Program. Many of those students qualify for free or reduced lunches and now face food insecurity due to campus closure. They already face other economic barriers. For example, Running Start students do not qualify for federal aid money to purchase textbooks and other course materials.

79.    Other Washington students harmed by the Eligibility Restriction include those under the age of 24 who would otherwise qualify for aid under Title IV but cannot file a FAFSA because their parents will not sign the document. These include students who have been abandoned, whose parents were abusive, or whose parents simply refuse to sign because their child is now over 18 and they will no longer provide any form of assistance.

80.    According to data maintained by the Washington Student Achievement Council, of 79,668 expected graduates for the class of 2020 in Washington, 41,271 (or 51.8 percent) students did not submit a FAFSA. Wash. Student Achievement Council, FAFSA Completion, https://wsac.wa.gov/fafsa-completion (last accessed May 15, 2020). Of the 38,397 students who did submit a FAFSA, 1,636 (or 4.3 percent) of those students submitted FAFSAs with errors.

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    *Id*. Indeed, Washington has an extremely low FAFSA completion rate. According

2    to the Washington Student Achievement Council, for all 2019 seniors, it was

3    46 percent, which placed Washington 49th nationally. *Id*.

4        81.    In addition, Washington colleges and universities have many

5    students who have temporary protected status or DACA status. Under the

6    Department's Eligibility Restriction, these students are ineligible to receive

7    emergency financial aid under the CARES Act. If these students do not receive

8    this aid and no other assistance is available, many will have to disenroll, lose

9    housing, or face any number of consequences of lack of funds.

10        82.    Washington institutions may face legal claims by the Department if

11    they inadvertently disbursed funds in violation of the Eligibility Restriction. If

12    institutions inadvertently erred in determining a student's eligibility for federal

13    financial aid under Title IV and disbursed an emergency grant to the student, the

14    Department could demand they pay back the money back to the Department, or

15    seek to impose False Claims Act liability.

16        83.    The missions of Washington institutions of higher education are

17    harmed by the Eligibility Restriction. Colleges and universities already have lost

18    student enrollment because of the Eligibility Restriction and expect that more

19    students will disenroll. The loss of enrollment because of the Eligibility

20    Restriction will cause students to give up or put on hold their hopes of bettering

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

32

their lives, which is the ultimate goal of Washington's system of higher education.

## V.    CAUSES OF ACTION

### Count I:
### Violation of the Administrative Procedure Act
### Agency Action in Excess of Statutory Authority, Short of Statutory Right, or Not in Accordance with Law

84.    Washington realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

85.    The APA requires that a court hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory authority, short of statutory right, or not in accordance with law. 5 U.S.C. § 706(2)(A), (C) (1966).

86.    Congress did not grant the Department authority to interpret section 18004 of the CARES Ac. In addition, Congress did not delegate authority to the Department to make rules concerning section 18004, such as the Eligibility Restriction, carrying the force of law. The Department's Eligibility Restriction is unauthorized by and contrary to section 18004(c) of the CARES Act. It therefore is in excess of statutory authority, short of statutory right, and not in accordance with law.

87.    To the extent the Department claims that its Eligibility Restriction is merely an interpretation contained in a policy statement, agency manual, or enforcement guideline that lacks the force of law, the Department's interpretation

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF                33                ATTORNEY GENERAL OF WASHINGTON
                                                        Complex Litigation
                                                    800 Fifth Avenue, Suite 2000
                                                      Seattle, WA 98104-3188
                                                        (206) 464 – 7744

1    is entitled to no or only limited deference. The Eligibility Restriction is not

2    persuasive, nor does it reflect thorough consideration. There are many students

3    at Washington's institutions of higher education who do not qualify for financial

4    aid under Title IV, but who need emergency financial assistance due to the

5    impacts of COVID-19. In fact, many of the students who do not qualify under

6    the Eligibility Restriction are those most in need of financial support. In any

7    event, Congress's intent in the CARES Act is clear that institutions of higher

8    education possess discretion to determine which students need emergency grants

9    to cover expenses related to the disruption of campus operations due to

10    coronavirus, and their discretion is not limited by section 484 of Title IV of the

11    HEA.

12        88.    Absent injunctive and declaratory relief suspending and vacating the

13    April 21, 2020, guidance, Washington and its residents will be immediately,

14    continuously, and irreparably harmed by Defendants' illegal actions.

15                              **Count II:**
                **Violation of the Administrative Procedure Act**
16                  **Arbitrary and Capricious Agency Action**

17        84.    Washington realleges and reincorporates by reference the

18    allegations set forth in each of the preceding paragraphs.

19        85.    The APA requires that a court hold unlawful and set aside agency

20    action, findings, and conclusions found to be arbitrary, capricious, or an abuse of

21    discretion. 5 U.S.C. § 706(2)(A) (1966).

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

86.    The Eligibility Restriction is arbitrary and capricious agency action because, among other reasons, the Department expressed no awareness that it was reversing its position, its new position is not permissible under section 18004 of the CARES Act, and the Department failed to provide good reasons for its sudden change in interpretation. Further, the Eligibility Restriction is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise ignores important aspects of the problem and runs counter to the evidence before the Department. In addition, the Eligibility Restriction is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise.

87.    Absent injunctive and declaratory relief suspending and vacating the April 21, 2020, guidance, Washington and its residents will be immediately, continuously, and irreparably harmed by Defendants' illegal actions.

**Count III:**
**Violation of the Administrative Procedure Act**
**Agency Action Without Observance of Procedure Required by Law**

88.    Washington realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

89.    The APA requires that a court hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law. 5 U.S.C. § 706(2)(D) (1966).

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

35

90.    The Eligibility Restriction is a legislative rule adopted without complying with the notice and comment requirements of the APA.

91.    Absent injunctive and declaratory relief suspending and vacating the April 21, 2020, guidance, Washington and its residents will be immediately, continuously, and irreparably harmed by Defendants' illegal actions.

**Count IV:**
**Separation of Powers**

92.    Washington realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

93.    Article I of the Constitution "exclusively grants the power of the purse to Congress[.]" *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018) (citing U.S. Const. art. I, § 9, cl. 7; U.S. Const. art. I, § 8, cl. 1). That power includes "condition[ing] the receipt of funds, by states and others, on compliance with federal directives." *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989). As the Ninth Circuit recently reaffirmed, the Executive Branch "does not have unilateral authority" to "thwart congressional will by canceling appropriations passed by Congress." *City & Cty. of San Francisco*, 897 F.3d at 1232 (internal quotation marks and citations omitted); *Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("[N]o provision in the Constitution . . . authorizes the President to enact, to amend, or to repeal statutes."). To that end, the Executive Branch is without inherent power to "condition the payment of . . . federal funds on adherence to its political

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

priorities." *Oregon v. Trump*, 406 F. Supp. 3d 940, 961 (D. Or. 2019) (citing *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018), *reh'g en banc granted in part, opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated on other grounds*, Nos. 17-2991 & 18-2649, 2018 WL 4268814 (7th Cir. Aug. 10, 2018)). If the Executive Branch wishes to condition the receipt of federal funds, it may *only* do so pursuant to a specific delegation of spending authority by Congress. *City & Cty. of San Francisco*, 897 F.3d at 1233-34.

94.    The Eligibility Restriction permits Defendants to withhold, deny, suspend, claw back, or terminate money appropriated by Congress, thereby violating constitutional separation of powers principles based on conditions not provided for in the CARES Act. Defendants did not have inherent authority to impose these restrictions. Nor did Congress afford Defendants any discretion or authority to place such restrictions through the CARES Act.

95.    In unilaterally imposing the Eligibility Restriction, the Department abrogated the discretion given the educational institutions in the CARES Act and usurped Congress' power to legislate in violation of the principles of separation of powers.

96.    Absent injunctive and declaratory relief vacating the Final Rule and prohibiting it from going into effect, Washington and its residents will be

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1  immediately, continuously, and irreparably harmed by Defendants' illegal

2  actions.

3  **Count V:**

4  **Spending Clause**

5  97.    Washington realleges and reincorporates by reference the

   allegations set forth in each of the preceding paragraphs.

6  98.    Article I, section 8, clause 1 of the United States Constitution, also

7  known as the Spending Clause, states that "Congress shall have Power To lay

8  and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for

9  the common Defence and general Welfare of the United States[.]"

10  99.    Under the Spending Clause, conditions may not be placed on federal

11  funds that are (1) so coercive that they compel (rather than encourage) recipients

12  to comply, (2) ambiguous, (3) retroactive, or (4) unrelated to the federal interest

13  in a particular program. *Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S.

14  519, 575–78 (2012); *South Dakota v. Dole*, 483 U.S. 203, 206–08 (1987).

15  100.    At the very least, the Department's Eligibility Restriction violates

16  the Constitutional requirements that conditions on funds be "unambiguous" and

17  not retroactive because they are improper "post-acceptance" restrictions.

18  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)

19  ("[I]f Congress intends to impose a condition on the grant of federal moneys, it

20  must do so unambiguously."). States "cannot knowingly accept conditions of

21  which they are 'unaware' or which they are 'unable to ascertain.' " *Arlington*

22

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

38

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1   *Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting

2   *Pennhurst*, 451 U.S. at 17).

3       101.  "Though Congress' power to legislate under the spending power is

4   broad, it does not include surprising participating States with post acceptance or

5   'retroactive' conditions." *Pennhurst*, 451 U.S. at 25; *see also Sebelius*, 567 U.S.

6   at 584 (quoting *Pennhurst*, holding Congress cannot retroactively alter conditions

7   of Medicaid grants to states). Once a state has accepted funds pursuant to a federal

8   spending program, the federal government cannot alter the conditions.

9       102.  Accordingly, the Spending Power does not permit what the

10  Department is attempting to do here: "surprising participating States with post

11  acceptance or 'retroactive' conditions" on congressionally appropriated funds.

12  *Pennhurst*, 451 U.S. at 25; *see also Sebelius*, 567 U.S. at 519 (quoting *Pennhurst*,

13  holding Congress cannot retroactively alter conditions of Medicaid grants to

14  states). Once a state or state entity has accepted funds pursuant to a federal

15  spending program, the federal government cannot alter the conditions attached to

16  those funds so significantly as to "accomplish[] a shift in kind, not merely

17  degree." *Sebelius*, 567 U.S. at 523.

18      103.  The Eligibility Restriction is not stated unambiguously in the

19  CARES Act. Further, Washington institutions did not know of the Eligibility

20  Restriction at the time they signed the Department's certification to receive

21  emergency financial aid grants for their students. Therefore they were unable to

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

39

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1    exercise their choice knowingly, cognizant of the consequences of their

2    participation, and they were surprised with post acceptance or retroactive

3    conditions. In addition, the Eligibility Restriction is not related to the federal

4    interest in assisting students impacted by COVID-19, nor is it consistent with

5    other provisions of the Constitution. For these reasons, the Eligibility Restriction

6    violates the Spending Clause.

7        104.   Absent injunctive and declaratory relief vacating the Final Rule and

8    prohibiting it from going into effect, Washington and its residents will be

9    immediately, continuously, and irreparably harmed by Defendants' illegal

10   actions.

11                    **VI.    PRAYER FOR RELIEF**

12        WHEREFORE, the State of Washington prays that the Court:

13        a.      Declare Defendants' April 21, 2020, restriction on student eligibility

14   for emergency financial relief grants is unauthorized by and contrary to the

15   Constitution and laws of the United States, and the only requirement applicable

16   to institutions of higher education is that the funds be used to provide emergency

17   financial aid to their students for expenses related to the disruption of campus

18   operations due to coronavirus (including eligible expenses under a student's cost

19   of attendance, such as food, housing, course materials, technology, health care,

20   and child care);

21

22

COMPLAINT FOR                              40                  ATTORNEY GENERAL OF WASHINGTON
DECLARATORY AND                                                        Complex Litigation
                                                                  800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                                     Seattle, WA 98104-3188
                                                                       (206) 464 – 7744

1      b.     Declare Defendants' April 21, 2020, restriction on student eligibility

2    for emergency financial relief grants is invalid and without force of law;

3      c.     Issue preliminary and permanent injunctions prohibiting Defendants

4    from implementing or enforcing the April 21, 2020, restriction on student

5    eligibility for emergency financial relief grants;

6      d.     Compel Defendants to rescind the April 21, 2020, restriction on

7    student eligibility for emergency financial relief grants and to distribute CARES

8    Act funds to Washington institutions without any such restriction, pursuant to

9    28 U.S.C. § 1361;

10      e.     Award the State of Washington its costs and reasonable attorneys'

11    fees; and

12      f.     Award such other and further relief as the interests of justice may

13    require.

14

15

16

17

18

19

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

41

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744

1

RESPECTFULLY SUBMITTED this 19th day of May, 2020.

2

ROBERT W. FERGUSON
Attorney General of Washington

3

4

*/s/ Jeffrey T. Sprung*
JEFFREY T. SPRUNG, WSBA #23607

5

R. JULY SIMPSON, WSBA #45869
PAUL M. CRISALLI, WSBA #40681

6

SPENCER W. COATES, WSBA #49683
Assistant Attorneys General

7

800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

8

(206) 464-7744
jeff.sprung@atg.wa.gov

9

july.simpson@atg.wa.gov
paul.crisalli@atg.wa.gov

10

spencer.coates@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

11

12

13

14

15

16

17

18

19

20

21

22

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

42

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464 – 7744