1    ROBERT W. FERGUSON
     *Attorney General*
2
     JEFFREY T. SPRUNG, WSBA #23607
3    R. JULY SIMPSON, WSBA #45869
     PAUL M. CRISALLI, WSBA #40681
4    SPENCER W. COATES, WSBA #49683
     *Assistant Attorneys General*
5    800 Fifth Avenue, Suite 2000
     Seattle, WA 98104-3188
6    (206) 464-7744

7              **UNITED STATES DISTRICT COURT**
            **EASTERN DISTRICT OF WASHINGTON**
8                      **AT SPOKANE**

9    STATE OF WASHINGTON,              NO. 2:20-cv-00182-TOR

10             Plaintiff,             PLAINTIFF STATE OF
                                      WASHINGTON'S MOTION FOR
11        v.                          PRELIMINARY INJUNCTION

12   BETSY DeVOS, in her official     NOTED FOR: JUNE 11, 2020
     capacity as Secretary of the United   With Oral Argument at time and
13   States Department of Education, and    location to be determined by
     the UNITED STATES              Court
14   DEPARTMENT OF EDUCATION, a
     federal agency,
15
               Defendants.
16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

1

## TABLE OF CONTENTS

2

I.    INTRODUCTION ..................................................................... 1

3

II.   STATUTORY AND FACTUAL BACKGROUND ........................... 3

4

   A.  COVID-19 ............................................................................ 3

5

   B.  The Coronavirus Aid, Relief, and Economic Security Act ........... 4

6

   C.  The Department's CARES Act Guidance ..................................... 5

7

       1.   The Department initially complied with Congress's
           directive ................................................................. 5

8

       2.   The Department's about-face ................................. 7

9

   D.  Injury to Washington Institutions and Their Students ................ 10

10

       1.   Institutional injuries ............................................. 10

11

       2.   Student injuries .................................................... 11

12

III.  ARGUMENT ......................................................................... 14

13

   A.  Legal Standard ................................................................... 14

14

   B.  Washington is Likely to Succeed on the Merits of Its Claims.... 15

15

       1.   The Department's Eligibility Restriction exceeds its statutory
           authority ............................................................. 15

16

          a.   Congress did not delegate authority to the Department to
              make eligibility rules for student emergency grants ...... 16

17

            (1)   The plain language of section 18004 forecloses any
                   rulemaking authority ............................................. 16

18

19

            (2)   The Secretary has no implicit rulemaking
                   authority ............................................................. 17

20

21

22

PLAINTIFF'S MOTION FOR          i         ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                        Complex Litigation
NO. 2:20-cv-00182-TOR                          800 Fifth Avenue, Suite 2000
                                            Seattle, WA 98104-3188
                                            (206) 464-7744

(3)    The Department lacks authority to interpret section 18004 because it is an appropriations statute........ 19

    b.    The Department's Eligibility Restriction fails to persuade under *Skidmore* ........................................................ 20

    c.    Even if the Eligibility Restriction were entitled to deference under *Chevron*, Congress's intent was clear . 22

  2.    The Department's Eligibility Restriction is arbitrary and capricious ..................................................................... 27

    a.    The Eligibility Restriction is an unexplained inconsistency .................................................................. 27

    b.    The Eligibility Restriction fails to consider an important aspect of the problem .................................................... 28

    c.    The Department's Eligibility Restriction is so implausible it cannot be ascribed to a different in view or the product of agency expertise...................................... 30

  3.    The Eligibility Restriction violates Separation of Powers ... 30

  4.    The Eligibility Restriction violates the Spending Clause..... 32

C.    Washington Will Suffer Irreparable Harm Absent Preliminary Relief ......................................................................... 34

  1.    Deprivation of State institutions' ability to use emergency funds for all needy students as granted by Congress............ 35

  2.    Uncompensable financial harm ........................................... 36

  3.    Undermining the mission of Washington's higher education institutions.......................................................................... 37

  4.    Destroying the health and well-being of Washington students ............................................................................... 38

  5.    Constitutional violations are irreparable harms................... 39

D.    Equity and Public Interest Strongly Favor an Injunction .......... 39

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

IV.    CONCLUSION ....................................................................40

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

iii

1

**TABLE OF AUTHORITIES**

2

**<u>Cases</u>**

3

*Adams Fruit Co., Inc. v. Barrett,*
   494 U.S. 638 (1990) .................................................................................18

4

5

*Ariz. Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014)..................................................................34

6

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
   548 U.S. 291 (2006) .................................................................................33

7

8

*Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.,*
   370 F.3d 1214 (D.C. Cir. 2004) ...............................................................19

9

*Brown v. Kramer,*
   49 F. Supp. 359 (M.D. Pa. 1943) .............................................................36

10

11

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018)..............................................................34, 37

12

*California v. Health & Human Servs.,*
   281 F. Supp. 3d 806 (N.D. Cal. 2017), *aff'd in pertinent part sub nom.*
   *California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ............................................38

13

14

*Charles v. Verhagen,*
   348 F.3d 601 (7th Cir. 2003)....................................................................34

15

16

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) ...............................................................20, 21, 22, 23

17

*Chinook Indian Nation v. U.S. Dep't of Interior,*
   No. C17-5668-RBL, 2020 WL 363410 (W.D. Wash. Jan. 22, 2020) ...........28

18

*City & Cty. of San Francisco v. Trump,*
   897 F.3d 1225 (9th Cir. 2018)..................................................................31

19

20

*City of Chicago v. Barr,*
   Nos. 18-2885 & 19-3290, 2020 WL 2078395 (7th Cir. Apr. 30, 2020).........18

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

iv

*City of Los Angeles v. Barr*,
    941 F.3d 931 (9th Cir. 2019)...................................................................18, 19

*City of Los Angeles v. McLaughlin*,
    865 F.2d 1084 (9th Cir. 1989)...........................................................................32

*Clinton v. City of New York*,
    524 U.S. 417 (1998)..........................................................................................31

*Diaz v. Brewer*,
    656 F.3d 1008 (9th Cir. 2011)...........................................................................40

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017)............................................................................14

*DLS Precision Fab LLC v. U.S. Immigration & Customs Enf't*,
    867 F.3d 1079 (9th Cir. 2017)...........................................................................20

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014)...........................................................................39

*E. Bay Sanctuary Covenant v. Trump*,
    354 F. Supp. 3d 1094 (N.D. Cal. 2018).............................................................38

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009).....................................................................................27, 28

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994)...........................................................................37

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000).....................................................................................23, 26

*Gonzales v. Oregon*,
    546 U.S. 243 (2006)...............................................................................16, 17, 21

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017)........................................................................15, 39

*Idaho v. Coeur d'Alene Tribe*,
    794 F.3d 1039 (9th Cir. 2015)...........................................................................37

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*In re Aiken County,*
  725 F.3d 255 (D.C. Cir. 2013) .......................................................................32

*La. Pub. Serv. Comm'n v. F.C.C.,*
  476 U.S. 355 (1986) ......................................................................................15

*League of Women Voters of the U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ....................................................................37, 39

*Legal Servs. Corp. v. Velazquez,*
  531 U.S. 533 (2001) ......................................................................................20

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) .........................................................................39

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ........................................................................................27

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
  545 U.S. 967 (2005) ......................................................................................27

*Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB),*
  567 U.S. 519 (2012) ................................................................................33, 34

*New York v. United States,*
  505 U.S. 144 (1992) ......................................................................................34

*Oregon v. Trump,*
  406 F. Supp. 3d 940 (D. Or. 2019) ...............................................................19

*Oregon v. Trump,*
  406 F. Supp. 3d 940 (D. Or. 2019), *reh'g en banc granted in part, opinion
  vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018),
  *vacated on other grounds*, No. 17-2991 & 18-2649, 2018 WL 4268814 (7th
  Cir. Aug. 10, 2018)) ......................................................................................31

*Pennhurst State Sch. & Hosp. v. Halderman,*
  451 U.S. 1 (1981) ....................................................................................33, 34

*Pennsylvania v. Trump,*
  351 F. Supp. 3d 791 (E.D. Pa. 2019) ............................................................38

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Perrin v. United States*,
444 U.S. 37 (1979) ....................................................................24

*Ramirez v. U.S. Immigration & Customs Enf't*,
310 F. Supp. 3d 7 (D.D.C. 2018) ..............................................39

*Russello v. United States*,
464 U.S. 16 (1983) ....................................................................17

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019)...............................................21, 22

*South Dakota v. Dole*,
483 U.S. 203 (1987) ..................................................................33

*Sutton v. United Air Lines, Inc.*,
527 U.S. 471 (1999) ..................................................................17

*Train v. City of New York*,
420 U.S. 35 (1975) ....................................................................32

*Trump v. Int'l Refugee Assistance Project*,
137 S. Ct. 2080 (2017) ..............................................................39

*U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*,
665 F.3d 1339 (D.C. Cir. 2012) ................................................19

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013)...................................................38

*Washington v. U.S. Dep't of State*,
318 F. Supp. 3d 1247 (W.D. Wash. 2018)..................................28

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................................14, 39, 40

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
864 F.3d 158 (2d Cir. 2017)......................................................21

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ..................................................................30

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

vii

1                              **Constitutional Provisions**

2      U.S. Const. art. I, § 8, cl. 1 ....................................................................30

3                                        **Statutes**

4      5 U.S.C. § 533 (2020) ....................................................................17

5      5 U.S.C. § 704 (2020) ....................................................................15

6      5 U.S.C. § 706(2)(A) (2020)........................................................15, 27

7      5 U.S.C. § 706(2)(B) (2020) ..........................................................15

8      5 U.S.C. § 706(2)(C) (2020) ..........................................................15

9      20 U.S.C. §§ 1001 et. seq. ............................................................25

10     20 U.S.C. §§ 1051-1068h (2020) ...................................................25

11     20 U.S.C. §§ 1070-1099d (2020) ...................................................25

12     20 U.S.C. § 1091(a)(3) (2020)..........................................................8

13     20 U.S.C. § 1091(c)(1)(B) (2020) .....................................................8

14     20 U.S.C. §§ 1101-1103g (2020) ...................................................25

15     20 U.S.C. §§ 1121-1132 (2020) .....................................................25

16     20 U.S.C. §§ 1151-1155 (2020) .....................................................25

17     20 U.S.C. § 1161k (2020)..........................................................25, 30

18     20 U.S.C. § 1161w (2020) .............................................................30

19     20 U.S.C. § 1161w(f)(2) (2020) .....................................................25

20     31 U.S.C. § 3729(a)(1) (2020)..........................................................9

21     Pub. L. No. 116-136 § 1114 (Mar. 27, 2020)....................................17

22     Pub. L. No. 116-136 § 3513 (Mar. 27, 2020)....................................26

PLAINTIFF'S MOTION FOR          viii          ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                           Complex Litigation
NO. 2:20-cv-00182-TOR                           800 Fifth Avenue, Suite 2000
                                                   Seattle, WA 98104-3188
                                                     (206) 464-7744

Pub. L. No. 116-136 § 3513(f) (Mar. 27, 2020)........................................................16

Pub. L. No. 116-136 § 12003(c) (Mar. 27, 2020) ..............................................17

Pub. L. No. 116-136 § 18001 (Mar. 27, 2020)......................................................20

Pub. L. No. 116-136 § 18001(b) (Mar. 27, 2020) ...................................................4

Pub. L. No. 116-136 §§ 18001-18007 (Mar. 27, 2020) .......................20, 22, 24

Pub. L. No. 116-136 § 18004 (Mar. 27, 2020)............ 4, 5, 16, 17, 19, 20, 26, 29

Pub. L. No. 116-136 § 18004(a) (Mar. 27, 2020) ..................................................4

Pub. L. No. 116-136 § 18004(a)(1) (Mar. 27, 2020)................................4, 32, 35

Pub. L. No. 116-136 § 18004(a)(2) (Mar. 27, 2020 .......................................24, 32

Pub. L. No. 116-136 § 18004(a)(3) (Mar. 27, 2020)........................................24

Pub. L. No. 116-136 § 18004(b) (Mar. 27, 2020) ...................................4, 24, 25

Pub. L. No. 116-136 § 18004(c) (Mar. 27, 2020) ............................4, 23, 32, 35

Pub. L. No. 116-136 § 18007 (Mar. 27, 2020)....................................................24

Wash. Rev. Code § 28B.07.010 (2019).........................................................11, 37

Wash. Rev. Code § 28B.50.020(1) (2019) ....................................................11, 37

Wash. Rev. Code § 28B.50.020(3) (2019) ....................................................11, 37

**Regulations**

34 C.F.R. § 668.32 (2020).................................................................................8

34 C.F.R. § 668.34(a)(4)(ii) (2020).......................................................................8

34 C.F.R. § 685.207 (2020)..............................................................................29

34 C.F.R. § 690.79 (2020)................................................................................29

34 C.F.R. § 690.80 (2020)................................................................................29

1

2

### **Other Authorities**

Coronavirus (COVID-19) Information, Running Start,
    https://www.sbctc.edu/colleges-staff/programs-services/running-
    start/default.aspx (last visited May 16, 2020)..................................................12

Johns Hopkins University & Medicine, COVID-19 Dashboard by the Center for
    Systems Science and Engineering (CSSE) at Johns Hopkins University
    (JHU), https://coronavirus.jhu.edu/map.html (last visited May 19, 2020).......3

Lucy Bayly, *Unemployment rate soars to 14.7 percent, highest level since the
    Great Depression*, NBC News (May 8, 2020, 7:51 AM PDT)
    https://www.nbcnews.com/business/economy/u-s-economy-shed-record-20-
    5-million-jobs-last-n1202696 (last visited May 17, 2020) ..............................36

Memorandum from Janet Napolitano, Secretary of Homeland Security, U.S.
    Dep't of Homeland Security, Exercising Prosecutorial Discretion with
    Respect to Individuals Who Came to the United States as Children (June 15,
    2012), http://niwaplibrary.wcl.american.edu/wp-content/uploads/2015/IMM-
    Memo-USasChildrenProsDis.pdf (last visited May 18, 2020)......................14

State of Washington Office of the Governor,
    Proclamation by the Governor 20-05,
    https://www.Governor.wa.gov/sites/default/files/proclamations/20-
    05%20Coronavirus%20%28final%29.pdf (last visited May 14, 2020) ...........3

United States Government Accountability Office, A Glossary of Terms Used in
    the Federal Budget Process, No. GAO-05-734SP at 13 (September 2005),
    https://www.gao.gov/new.items/d05734sp.pdf (last visited May 18, 2020) ..20

Washington State Department of Health, COVID-19 Data Dashboard,
    https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVI
    D19/DataDashboard (last visited May 19, 2020) ............................................3

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

x

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I.    INTRODUCTION

The Court should enter a preliminary injunction to prevent the United States Department of Education (the Department) from arbitrarily denying emergency grants to more than 50,000 of Washington's most vulnerable college students struggling to cope with the COVID-19 pandemic. In late March, Congress urgently appropriated over $6 billion and directed the Secretary of Education to distribute it according to a prescribed formula to colleges and universities for emergency grants to students reeling from the disruption of campus operations. The Department initially complied with Congress's command, but within just 11 days reversed itself and unilaterally limited eligibility to only those students who met the financial aid eligibility criteria under an entirely different statute.

Washington is likely to succeed on the merits. The operative statutory provision, a section of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), delegated no rulemaking authority to the Department. Further, the Department's interpretation warrants no deference even under the limited *Skidmore* test. Without any statutory or rulemaking authority, the Department engrafted eligibility requirements from a separate, unrelated statute, the Higher Education Act (HEA). The Department exemplified inconsistency: At the same time it advised that CARES Act emergency grants are not financial aid, it inexplicably adopted the eligibility criteria for federal financial aid as a basis for

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1     limiting which students might be eligible to receive those grants. Further, without

2     any explanation for reversing course after just 11 days, the Department seemingly

3     picked out at random just one of a myriad financial aid eligibility standards

4     contained in the HEA. The Department's action bears all the hallmarks of

5     arbitrary and capricious decision-making, exceeded its statutory authority, and

6     violated separation of powers principles and the Spending Clause in the United

7     States Constitution. All this violates the Administrative Procedure Act and

8     necessitates setting aside the Department's action.

9           Washington is likely to suffer irreparable harm. The Department's

10    interpretation forces Washington schools to exclude some of their students with

11    the greatest needs, who do not meet the eligibility requirements for federal

12    financial aid. It denies financial assistance to these vulnerable students during an

13    unprecedented time, forcing them to abandon their higher education and forego

14    food, health care, and mental health counseling previously offered on

15    Washington campuses. These are *emergency* funds appropriated by Congress to

16    respond swiftly to a public health crisis; Washington schools and students cannot

17    wait until final resolution of this action on the merits.

18          The Court should grant Washington's motion for preliminary injunction.

19

20

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

2

## II.    STATUTORY AND FACTUAL BACKGROUND

### A.    COVID-19

On February 29, 2020, Washington State made the first announcement of a death from COVID-19 in the United States. On the same day, Washington Governor Jay Inslee declared a state of emergency in all counties in Washington. Beyond the one reported death, the Governor's Proclamation stated that, at the time, there were 66 confirmed cases of COVID-19 in the United States.[1] In the 80 days since Governor Inslee declared a state of emergency, the country has gone from 66 to 1,520,029 reported cases and from 1 to 91,187 deaths.[2] Washington now reports 18,611 cases and 1,002 deaths.[3]

---

[1] State of Washington Office of the Governor, Proclamation by the Governor 20-05, https://www.Governor.wa.gov/sites/default/files/proclamations/20-05%20Coronavirus%20%28final%29.pdf (last visited May 14, 2020).

[2] Johns Hopkins University & Medicine, COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU), https://coronavirus.jhu.edu/map.html (last visited May 19, 2020).

[3] Washington State Department of Health, COVID-19 Data Dashboard, https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard (last visited May 19, 2020).

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B.** **The Coronavirus Aid, Relief, and Economic Security Act**

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020). The CARES Act appropriated $30.75 billion to the Department of Education "to prevent, prepare for, and respond to coronavirus[.]" *Id.*, Preamble to § 18001.

The CARES Act appropriated approximately $14 billion for the Higher Education Emergency Relief Fund (HEERF). CARES Act § 18001(b). In section 18004, the section at issue in this litigation, Congress explained its intent as to the HEERF. First, it commanded the Secretary of Education to distribute the HEERF to institutions of higher education. CARES Act § 18004(a). Second, it specified exactly how the Secretary is to allocate the money, prescribing a formula based on student enrollment. *Id.* § 18004(a)(1). Third, it provided explicit instructions on the means of distribution, dictating that the Secretary employ the Department's existing grants management system used to distribute federal student aid funds. CARES Act § 18004(b). Fourth, it specified how HEERF funds may be used, providing, as relevant to this litigation:

> Institutions of higher education shall use no less than 50 percent of such funds to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care).

CARES Act § 18004(c).

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Section 18004 did not grant the Secretary any rulemaking or interpretive

2    authority, nor any discretion in implementing Congress's directives. Indeed,

3    subsection (c), the use provision, did not mention the Secretary at all.

4    **C.    The Department's CARES Act Guidance**

5        **1.    The Department initially complied with Congress's directive**

6    The    Department    initially    followed    Congress's    instructions.    On

7    April 9, 2020, it released the portion of the CARES Act funding Congress

8    appropriated for student emergency grants. In addition to a press release, the

9    Department contemporaneously issued a letter from Secretary DeVos to college

10   and university presidents, a certification form for higher education institutions,

11   and a list of individual allocations to colleges and universities. Simpson Decl.,

12   Exs. A-D.[4]

13       The Department's April 9, 2020, issuances correctly read the CARES Act

14   as giving no authority to the Department to restrict the students to whom

15   institutions awarded emergency grants, and as empowering institutions to

16   determine the recipients limited only by the express requirements in the Act.

17       In the April 9, 2020, letter to college and university presidents,

18   Secretary DeVos wrote that "[t]he CARES Act provides institutions with

19   _____

20       [4] Declarations in support of Washington's motion for preliminary

21   injunction are cited throughout by the declarant's last name, followed where

22   appropriate by the pertinent numbered exhibit, designated by "Ex."

1  significant discretion on how to award this emergency assistance to students."
2  Simpson Decl., Ex. B. This "means that each institution may develop its own
3  system and process for determining how to allocate these funds[.]" *Id*. She stated
4  that "[t]he ***only*** statutory requirement is that the funds be used to cover expenses
5  related to the disruption of campus operations due to coronavirus (including
6  eligible expenses under a student's cost of attendance, such as food, housing,
7  course materials, technology, health care, and child care)." *Id*. (emphasis added).

8         The Department's press release confirmed that once institutions submitted
9  the required certification, "[t]he college or university will then determine which
10 students will receive the cash grants." Simpson Decl., Ex. A. The certification
11 form also acknowledged that institutions "retain[] discretion to determine the
12 amount of each individual emergency financial aid grant consistent with all
13 applicable laws including non-discrimination laws." Simpson Decl., Ex. C. The
14 language in the certification regarding institutions' use of CARES Act
15 emergency grant funding was intentionally hortatory and not mandatory, using
16 phrases such as "the Secretary recommends," "the Recipient should be mindful,"
17 and the "Secretary strongly encourages." *Id*.

18        The certification form expressly disavowed that CARES Act emergency
19 grants were subject to the requirements of Title IV of the Higher Education Act
20 (HEA): "The Secretary does not consider these individual emergency financial
21 aid grants to constitute Federal financial aid under Title IV of the HEA." *Id*. This

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    was consistent with public guidance the Department's Office of Postsecondary

2    Education issued on April 3, 2020, which stated that emergency federal financial

3    aid grants are "not counted . . . as estimated financial assistance for packaging

4    purposes." Simpson Decl., Ex. E. Higher education news sources noted

5    institutions' broad discretion recognized by the Department, reporting that the

6    Title IV federal financial aid eligibility requirements did not apply: "Notably,

7    neither the statute or certification form require that these funds be provided to

8    Title IV eligible students, meaning schools are able to cast a wider net in

9    determining and meeting emergency needs." Simpson Decl., Ex. F.

10          Washington higher education institutions, acting urgently on Congress's

11   offer of federal aid to their students, promptly submitted applications and signed

12   certifications according to the Department's then-existing instructions and

13   assurances. Woods Decl. ¶ 12 (applied April 10, 2020); Flores Decl. ¶ 12 (applied

14   April 12, 2020); Allison Decl. ¶ 12 (applied April 13, 2020); Buchmann Decl.

15   ¶¶ 12-13 (applied April 21, 2020); Soto Decl. ¶ 12 (applied April 21, 2020);

16   Allison Decl. ¶ 12 (applied April 13, 2020); Sanchez Decl. ¶ 12 (applied

17   April 10, 2020).

18          **2.      The Department's about-face**

19          Nevertheless, 11 days later the Department reversed course. On

20   April 21, 2020, in connection with its release of different CARES Act funding,

21   the Department issued "FAQs" that purported to restrict student eligibility for

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

7

1  emergency grants. The Department asserted that "[o]nly students who are or
2  could be eligible to participate in programs under Section 484 in Title IV of the
3  Higher Education Act of 1965, as amended (HEA), may receive emergency
4  financial aid grants." Simpson Decl., Ex. G, FAQ #9; *see also id*., Ex. H, FAQ #5
5  (the "Eligibility Restriction"). Despite Congress having assigned the Department
6  no role in determining institutions' use of emergency grant funds, the Department
7  engrafted its own eligibility restriction onto those grant funds from a different
8  statute, unlawfully adding that onto "[t]he only statutory requirement" it
9  previously had identified, Simpson Decl., Ex. B, and restricted institutions'
10  discretion.

11       The Department's unilateral Eligibility Restriction excluded hundreds of
12  thousands of students in desperate need of financial assistance nationwide. The
13  HEA contains numerous requirements for student eligibility for financial aid not
14  found in the CARES Act. These include U.S. citizenship or legal permanent
15  resident status; a valid Social Security number; registration with Selective Service
16  (if the student is male); a high school diploma, GED, or completion of high school
17  in an approved homeschool setting; that the student not be in default on any loan
18  issued by the Department; and maintenance of at least a cumulative C average, or
19  its equivalent or academic standing consistent with the requirements for graduation.
20  20 U.S.C. §§ 1091(a)(3), (c)(1)(B) (2020); *see also* 34 C.F.R. §§ 668.32,
21  668.34(a)(4)(ii) (2020); Yoshiwara Decl. ¶ 11.

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    While technically a student does not need to possess a Department-approved

2    federal student aid application (called a Free Application for Federal Student Aid,

3    or FAFSA), most schools do "not have the capability to determine if students are

4    eligible for federal financial aid under Title IV without information provided by

5    [the Department], such as an approved FAFSA." Flores Decl. ¶ 10; *see also*

6    Yoshiwara Decl. ¶ 21. Furthermore, "given the number of these students and the

7    urgent need for us to distribute the emergency grants," those schools "do not have

8    the capacity to research and independently determine if these students would

9    qualify for federal financial aid under Title IV." Flores Decl. ¶ 18.

10    Institutions' compliance with the Eligibility Restriction is mandatory. The

11    Department's required certifications made institutions that received HEERF money

12    liable for any failure to comply with the CARES Act—threatening treble damages

13    under the False Claims Act, 31 U.S.C. § 3729(a)(1), if they did not abide by the

14    Eligibility Restriction. Simpson Decl., Exs. C ¶ 4(g), I ¶ 4(i); *see also* Flores Decl.

15    ¶ 11; Woods Decl. ¶ 11; Buchmann Decl. ¶ 11; Allison Decl. ¶ 11; Sanchez

16    Decl. ¶ 11.

17    The Department's Eligibility Restriction immediately cut off access to

18    emergency grants to tens of thousands of Washington students and denied

19    institutions discretion granted by Congress in using HEERF funds. This litigation

20    ensued.

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    **D.    Injury to Washington Institutions and Their Students**

2        **1.    Institutional injuries**

3        The Department's Eligibility Restriction applies directly to Washington

4    colleges and universities and limits their ability to distribute CARES Act funds to

5    all needy students. As a result, students have been saddled with a variety of

6    expenses because of the disruption of campus operations. These include scouring

7    alternatives for lost campus jobs, shuttered school health clinics, and closed onsite

8    mental health counseling; homeless students' need to find hygiene facilities to

9    replace campus shower facilities; disabled students' needs to buy technology

10   resources that accommodated their disability such as screen readers, alternate

11   format textbooks, and notetakers; and replacing campus technical equipment such

12   as computers, printers, cameras, and upgrades of internet services or internet

13   hotspots. Flores Decl. ¶ 15; Woods Decl. ¶ 17; Soto Decl. ¶ 16; Yoshiwara Decl.

14   ¶ 18; Sanchez Decl. ¶ 17; Allison Decl. ¶ 16; Cleary Decl. ¶ 13.

15       In addition, by denying students needed emergency funds, the Eligibility

16   Restriction has forced students to disenroll as they "struggle with the financial

17   fallout of COVID-19." Flores Decl. ¶ 21; Yoshiwara Decl. ¶ 24; Woods Decl.

18   ¶ 23; Sanchez Decl. ¶ 25; Allison Decl. ¶ 23. This has reduced tuition payments

19   and exacerbating educational institutions' financial strain caused by the pandemic.

20   Flores Decl. ¶¶ 21-22, 25; Woods Decl. ¶ 23; Buchmann Decl. ¶¶ 21-29;

21   Yoshiwara Decl. ¶¶ 23-25; Allison Decl. ¶ 22; Sanchez Decl. ¶ 25.

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    At the same time, the Eligibility Restriction has undermined the critical

2    mission of Washington higher education institutions. As envisioned by the

3    Washington legislature, this is to "[o]ffer an open door to every citizen, regardless

4    of his or her academic background or experience, at a cost normally within his or

5    her economic means" to "basic skills and literacy education, and occupational

6    education and technical training in order to prepare students for careers in a

7    competitive workforce," Wash. Rev. Code §§ 28B.50.020(1), (3), and to "higher

8    education institutions . . . [offering] . . . educational opportunities . . . essential to

9    the economic, intellectual, and social well-being of the state and its people."

10    Wash. Rev. Code § 28B.07.010 (2019). As one community college vice president

11    put it:

12    
>    Wenatchee Valley College enriches North Central Washington by
>    serving educational and cultural needs of communities and
>    residents throughout the service area (Chelan, Douglas, and
>    Okanogan counties). . . . It is identified as a Hispanic Serving
>    Institution. . . . [T]he loss of enrollment because of the new
>    restrictions imposed by ED's FAQs will cause students to give up
>    or put on hold their hopes of bettering their lives, which is the
>    ultimate goal of our institution.

16    Flores Decl. ¶ 25; *see also* Woods Decl. ¶ 27; Buchmann Decl. ¶ 30; Soto Decl.

17    ¶ 22; Allison Decl. ¶ 27; Sanchez Decl. ¶ 30; Cleary Decl. ¶ 20.

18    **2.    Student injuries**

19    The Eligibility Restriction has also gravely harmed Washington students.

20    It forced institutions to deny emergency grants to students in Basic Education for

21    Adults programs, a population more likely to rely on campus internet or computer

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    labs, making the transition to distance learning more challenging or impossible

2    without financial support. Flores Decl. ¶ 16; Woods Decl. ¶ 18; Allison Decl.

3    ¶ 17; Buchmann Decl. ¶ 16. The Washington Board of Community and Technical

4    Colleges reports 24,364 basic adult education students disqualified from CARES

5    Act emergency grants by the Eligibility Restriction. Yoshiwara Decl. ¶ 17.

6        Institutions must also exclude students in the Running Start Program, who

7    are 11th and 12th grade students taking college courses at Washington's 34

8    community and technical colleges, earning both high school and college credits

9    for their courses. *See* Coronavirus (COVID-19) Information, Running Start,

10   https://www.sbctc.edu/colleges-staff/programs-services/running-

11   start/default.aspx (last visited May 16, 2020). Flores Decl. ¶ 12; Woods Decl.

12   ¶ 19; Buchmann Decl. ¶ 17; Allison Decl. ¶ 18; Sanchez Decl. ¶ 18. Many of these

13   students qualify for free or reduced lunches and now face food insecurity due to

14   campus closure. Yoshiwara Decl. ¶ 20. In the 2017-18 school year, 28,451 high

15   school-aged students enrolled in Running Start. Yoshiwara Decl. ¶ 14.

16       The Eligibility Restriction excludes many students under the age of 24 who

17   would otherwise qualify for aid under Title IV but have not filed a FAFSA. Flores

18   Decl. ¶ 18; Woods Decl. ¶ 20; Allison Decl. ¶ 19; Buchmann Decl. ¶ 18; Sanchez

19   Decl. ¶ 18. Institutions' need to rely on Department-approved FAFSAs

20   particularly harms students in Washington because Washington ranks 49th of the

21   50 states in high school students' FAFSA completion rate. Yoshiwara Decl. ¶ 13.

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Wenatchee Valley College, for example, has a FAFSA filing rate of 56%. Flores

2    Decl. ¶ 9. Columbia Basin College has a FAFSA filing rate of just 41%. Woods

3    Decl. ¶ 9. Skagit Valley College has a FAFSA filing rate between 38% and 48%

4    annually. Allison Decl. ¶ 9. For North Seattle College, 5,825 of the school's 6,073

5    students have not filled out a FAFSA application for this year. Sanchez Decl. ¶ 9.

6    Students do not file FAFSAs for various reasons. As one college vice president

7    explained, "many of our students did not complete high school and are seeking

8    to reengage in school, others are high school Running Start Students, others do

9    not want to take out loans but are just above the threshold to become eligible for

10   a Pell Grant, others would otherwise be eligible except they are under 24 and

11   their parents refuse to sign the FAFSA." Flores Decl. ¶ 9. According to the

12   Washington Student Achievement Council, approximately 40,000 high school

13   graduates (using 2020 figures) did not submit a FAFSA (including 7,127 students

14   at Washington State University alone. Dixon Decl. ¶ 9). Yoshiwara Decl. ¶ 13.

15        In addition, Washington colleges and universities have many students who

16   have temporary protected status or participate in DACA.[5] Flores Decl. ¶ 19;

17   _____

18        [5] Washington is home to approximately 17,000 "Dreamers," who are

19   individuals brought to the country at an early age, educated by Washington

20   secondary schools, and protected under the Deferred Action for Childhood

21   Arrivals program. *See* Memorandum from Janet Napolitano, Secretary of

22   Homeland Security, U.S. Dep't of Homeland Security, Exercising Prosecutorial

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

13

1    Woods Decl. ¶ 21; Soto Decl. ¶¶ 18-19; Buchmann Decl. ¶ 19; Allison Decl. ¶ 19;

2    Sanchez Decl. ¶ 22; Cleary Decl. ¶ 14. Under the Department's Eligibility

3    Restriction, these students are ineligible to receive emergency financial aid under

4    the CARES Act. "If these students do not receive this aid and no other assistance

5    is available, many will have to disenroll, lose housing, or face any number of

6    consequences of lack of funds." Flores Decl. ¶ 19.

7                        **III.   ARGUMENT**

8    **A.   Legal Standard**

9        "A party can obtain a preliminary injunction by showing that (1) it is likely

10    to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence

11    of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an

12    injunction is in the public interest." *Disney Enters., Inc. v. VidAngel, Inc.*,

13    869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks and citations

14    omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

15    Under the Ninth Circuit's "sliding scale" approach, these elements are "balanced,

16    so that a stronger showing of one element may offset a weaker showing of

17

18    _____

19    Discretion with Respect to Individuals Who Came to the United States as

20    Children (June 15, 2012), http://niwaplibrary.wcl.american.edu/wp-

21    content/uploads/2015/IMM-Memo-USasChildrenProsDis.pdf (last visited May

22    18, 2020).

PLAINTIFF'S MOTION FOR         14         ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                  Complex Litigation
NO. 2:20-cv-00182-TOR                  800 Fifth Avenue, Suite 2000
                                     Seattle, WA 98104-3188
                                     (206) 464-7744

1  another." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (internal

2  quotation marks and citations omitted).

3  **B.    Washington is Likely to Succeed on the Merits of Its Claims**

4        The Department's Eligibility Restriction is a binding requirement imposed

5  on institutions of higher education. This constitutes "[a]gency action made

6  reviewable by statute and final agency action for which there is no other adequate

7  remedy in a court . . . ." 5 U.S.C. § 704 (2020). The Administrative Procedure

8  Act (APA) requires that a court "hold unlawful and set aside agency action,

9  findings, and conclusions found to be" (1) in excess of statutory authority, (2)

10  "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

11  law," or (3) "contrary to constitutional right, power, privilege, or immunity[.]" 5

12  U.S.C. §§ 706(2)(A), (B), (C) (2020). Here, the Department's Eligibility

13  Restriction was adopted in excess of their delegated authority, is arbitrary and

14  capricious, and in violation of the constitution.

15      **1.    The Department's Eligibility Restriction exceeds its statutory**
16           **authority**

17        An agency "literally has no power to act . . . unless and until Congress

18  confers power upon it." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374

19  (1986). And here the Department has not been conferred any authority—explicit

20  or implicit—to impose restrictions on which students may and may not have

21  access to vital emergency funds appropriated by Congress to assist higher

22  education students.

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

15

a. **Congress did not delegate authority to the Department to make eligibility rules for student emergency grants**

(1) **The plain language of section 18004 forecloses any rulemaking authority**

The Department's Eligibility Restriction improperly imports the eligibility requirements for federal financial aid from Title IV, section 484 of the Higher Education Act into the CARES Act and thus interprets "students" as only those who are eligible for federal financial aid. Section 18004, however, provides no support for this interpretation.

"The starting point for this inquiry is, of course, the language" of the statutory provision at issue. *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006). The language of section 18004 lacks *any* delegation of rulemaking authority to the Secretary. As in *Gonzalez*, the CARES Act "does not grant" the Department "broad authority to promulgate rules." *Id*. at 259. Nor can "the . . . limited powers [granted to the Department], to be exercised in specific ways," support the Department's interpretation. *Id*. The CARES Act gives the Department specific direction for the amounts and the means to distribute the HEERF. This narrow authority does not suggest any rulemaking power.

The absence of rulemaking authority in section 18004 is in sharp contrast to other portions of the Act that do delegate rulemaking authority to agencies. For example, in an earlier section—specifically addressing relief for student loan borrowers—the Secretary is delegated authority to "waive the application of . . . negotiated rulemaking" under the HEA. CARES Act § 3513(f). Moreover, the

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Director of the Bureau of Prisons is directed to engage in rulemaking to provide

2    prisoners with video visitation and is exempted from the notice and comment

3    period of 5 U.S.C. § 533. *Id*. § 12003(c). And, the Small Business Administration

4    has been delegated an "emergency rulemaking authority." *Id*. § 1114.

5        But what is lacking is any reference to rulemaking to interpret section

6    18004. "[W]here Congress includes particular language in one section of a statute

7    but omits it in another section of the same Act, it is generally presumed that

8    Congress acts intentionally and purposely in the disparate inclusion or

9    exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). The CARES Act

10   is clear: Congress did not intend to delegate rulemaking authority to the

11   Department to interpret section 18004.

12            **(2)        The Secretary has no implicit rulemaking authority**

13       Courts have been skeptical of claims of implicit authority—or the claim

14   that interpretive authority exists over one area due to authority granted in another.

15   In *Gonzales v. Oregon*, 546 U.S. 243 (2006), the Court held the Attorney General

16   lacked authority to interpret the meaning of the law, even when delegated the

17   authority to ensure compliance with the law. *Id*. at 263-64. In *Sutton v. United*

18   *Air Lines, Inc.*, 527 U.S. 471 (1999), the Court rejected the claim that EEOC or

19   any other agency had authority to define "disability" under the ADA when the

20   delegating provision instructing the EEOC to "issue regulations . . . to carry out

21   this subchapter" was in a separate subchapter from the definition. *Id*. at 478. In

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638 (1990), the Court held that a

2    delegation of authority to promulgate motor vehicle safety "standards" did not

3    include the authority to decide the pre-emptive scope of the federal statute when

4    the statute lacked a specific delegation regarding enforcement provisions. *Id*. at

5    649-50.

6         The Ninth Circuit recently addressed an executive agency imposing

7    conditions on grants without specific authority to do so, as the Department

8    attempts here. In *City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019), the

9    Assistant Attorney General (AAG) imposed immigration related conditions on

10   Byrne JAG grants. Similar to the CARES Act grants, Byrne JAG grants are

11   "formula grants," meaning "Congress appropriates a set amount of funding and

12   specifies how the funds will be allocated among the eligible recipients, as well as

13   the method by which an applicant must demonstrate its eligibility for that

14   funding." *Id*. at 935 (internal quotation marks omitted). Although Congress

15   delegated authority to the AAG to "plac[e] special conditions on all grants, and

16   determin[e] priority purposes for formula grants," the Court held that this did not

17   grant "broad authority to impose any condition it chooses on a Byrne JAG

18   award." *Id*. at 939, 942 (citing *City of Philadelphia v. Attorney Gen. of U.S.*, 916

19   F.3d 276, 288 (3d Cir. 2019)); *see also City of Chicago v. Barr*, Nos. 18-2885 &

20   19-3290, 2020 WL 2078395, at *8–9 (7th Cir. Apr. 30, 2020) ("[i]t would strain

21   statutory interpretation to the breaking point to interpret a provision that requires

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    the fostering of communication as handing to the Assistant Attorney General the

2    power to withhold the entire Byrne JAG award for the failure to comply with

3    substantive conditions imposed by the Attorney General"); *Oregon v. Trump*,

4    406 F. Supp. 3d 940, 969–70 (D. Or. 2019) (statute invoked by federal

5    government—"an otherwise unremarkable provision nested within a larger list of

6    mundane responsibilities—would again be an odd location for Congress to house

7    such an authority"). Instead, the Court held, that "[s]uch a broad interpretation

8    would be antithetical to the concept of a formula grant[.]" *Barr*, 941 F.3d at 942.

9        Even more so here, where Congress did not authorize the Department even

10   to impose conditions on or determine purposes of grants. Section 18004 directed

11   the Secretary to make the funds available and to use the same "system" it

12   normally uses to distribute grant money. But it does not delegate any rulemaking

13   authority to the Department or any authority to otherwise interpret other portions

14   of the Act.

15              **(3)    The Department lacks authority to interpret section
                        18004 because it is an appropriations statute**

16

17       A third reason the Department's interpretation is unsupportable is that

18   agencies generally lack authority to interpret appropriations statutes. Therefore,

     courts owe no deference to agency interpretations of appropriations statutes or

19   riders. *See U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339,

20   1348 (D.C. Cir. 2012); *Ass'n of Civilian Technicians v. Fed. Labor Relations

21   Auth.*, 370 F.3d 1214, 1221 (D.C. Cir. 2004). Similarly, the Department's

22

1    interpretation of the CARES Act receives no deference as a statute generally

2    applicable to all federal agencies. *DLS Precision Fab LLC v. U.S. Immigration*

3    *& Customs Enf't*, 867 F.3d 1079, 1087 (9th Cir. 2017).

4         An appropriations law is a "statute, under the jurisdiction of the House and

5    Senate Committees on Appropriations, that generally provides legal authority for

6    federal agencies to incur obligations and to make payments out of the Treasury

7    for specified purposes." United States Government Accountability Office,

8    A Glossary of Terms Used in the Federal Budget Process, No. GAO-05-734SP

9    at 13 (September 2005), https://www.gao.gov/new.items/d05734sp.pdf (last

10   visited May 18, 2020); *see Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 549

11   (2001) (an appropriations act "defines the scope of a federal spending program").

12        A review of the statutory sections creating and implementing the HEERF

13   makes clear they are appropriations provisions. The preamble to section 18001

14   makes an appropriation of $30.75 billion to the Department, and sections

15   18001-18007 prescribe the specific purposes for which the funds may be spent.

16   Section 18004 defines the scope of the HEERF spending program, the

17   Department lacks authority to interpret it, and its interpretation is not entitled to

18   deference.

19        **b.    The Department's Eligibility Restriction fails to persuade**
              **under *Skidmore***
20
              The basis of *Chevron* deference is that "Congress has delegated authority
21
     to an administrative agency to make rules carrying the force of law and that
22

PLAINTIFF'S MOTION FOR                          20                 ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                                      Complex Litigation
                                                                       800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                                                    Seattle, WA 98104-3188
                                                                            (206) 464-7744

1    agency's interpretation to which deference is to be given was promulgated in the

2    exercise of that authority." *Woods v. START Treatment & Recovery Ctrs., Inc.*,

3    864 F.3d 158, 168 (2d Cir. 2017). When Congress has not delegated interpretive

4    authority and yet an agency takes it upon itself to exercise that authority, the

5    agency's action is not entitled to *Chevron* deference. *Gonzales*, 546 U.S. at 258;

6    *Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019). Here, the proper

7    standard of review is prescribed by *Skidmore v. Swift & Co.*, 323 U.S. 134, 140

8    (1944), under which an agency's interpretation is only given deference to the

9    extent it has the "power to persuade." *Skidmore* deference depends on "the

10   thoroughness evident in its consideration, the validity of its reasoning, its

11   consistency with earlier and later pronouncements" as well as its overall "power

12   to persuade[.]" *Skidmore*, 323 U.S. at 140.

13        *Skidmore*'s criteria undercut the Eligibility Restriction. The Department's

14   actions manifest telltale inconsistency. It initially stated that institutions would

15   have "significant discretion" in how to award the funds and "the *only statutory*

16   *requirement* is that the funds be used to cover expenses related to the disruption

17   of campus operations due to coronavirus," and its own Certification form

18   specifically stated that the grants do not "constitute Federal financial aid under

19   Title IV of the HEA." Simpson Decl., Ex. B (emphasis added). Yet just 11 days

20   later the Department reversed course and determined the emergency funds *are*

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   federal financial aid and students would have to qualify under Title IV of the

2   HEA. *Id.*, Ex. G.

3       Further, it did so in so-called "FAQs," which contained no analysis or

4   explanation for the change. The Department failed to explain where or how

5   Congress expressed its intent to apply Title IV to CARES Act emergency

6   grants—particularly when federal financial aid is addressed in a separate section

7   of the Act. *Compare* CARES Act § 3513 (addressing federal financial aid) *with*

8   section 18004 (addressing relief for higher education institutions and students).

9   Nor was the certification updated to remove the language that grants were not

10  considered Title IV federal financial aid. Its pronouncement is fatally conclusory

11  and reflects no reasoning, valid or otherwise.

12      Where, as here, an agency's reasoning is "entirely conclusory," lacks valid

13  reasoning by adding language that is not in the statute, and is inconsistent with

14  its earlier pronouncement, it fails to meet *Skidmore*'s requirement of "thorough

15  consideration." *Skidmore*, 323 U.S. at 140; *Sierra Club*, 929 F.3d at 693.

16          **c.    Even if the Eligibility Restriction were entitled to
               deference under *Chevron*, Congress's intent was clear**
17
        Congress did not delegate authority to the Department to interpret sections
18
    18001-18007 of the CARES Act, making *Chevron* deference inappropriate. But
19
    even if it did, Congress's intent was clear— institutions of higher education are
20
    not restricted as to which students they may consider eligible for grants. This
21
    ends the analysis.
22

PLAINTIFF'S MOTION FOR                    22          ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                        Complex Litigation
NO. 2:20-cv-00182-TOR                                    800 Fifth Avenue, Suite 2000
                                                            Seattle, WA 98104-3188
                                                                (206) 464-7744

1    When an agency has been delegated authority to interpret a statute, its

2    implementation is analyzed using a two-step approach. *Chevron, U.S.A., Inc. v.*

3    *Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). First, using the

4    "traditional tools of statutory construction," the court first determines whether

5    "the intent of Congress is clear[.]" *Id.* at 842 & n.9. The "traditional tools" include

6    the statute's text, history, structure, "context"—including its place among other

7    statutes enacted previously or "subsequently"—as well as "common sense." *FDA*

8    *v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-3 (2000). If

9    Congress's intent is clear, "that is the end of the matter[.]" *Chevron*, 467 U.S. at

10    842–43. If not, and the statute "is silent or ambiguous with respect to the specific

11    issue," the court determines "whether the agency's answer is based on a

12    permissible construction of the statute." *Id.*

13    Here, Congress's intent with regard to student emergency grants when

14    passing the CARES Act is clear: all students are eligible for aid if their school

15    determines they have need. Starting with the text, Section 18004(c) is entitled

16    "Uses of Funds." It directs that "[i]nstitutions of higher education shall use no

17    less than 50 percent of such funds to provide emergency financial aid grants to

18    *students* for expenses related to the disruption of campus operations due to

19    coronavirus (including eligible expenses under a student's cost of attendance,

20    such as food, housing, course materials, technology, health care, and child care)."

21    CARES Act § 18004(c) (emphasis added). Similarly, section 18004(a) twice

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    directs that the money should be given as "grants to *students* for any component

2    of the student's cost of attendance . . . ." *Id*., §§ 18004(a)(2), (3) (emphasis

3    added). Nothing in this language indicates Congress only intended *some* students

4    to get aid, let alone that they intended to exclude some of the students with the

5    greatest needs.

6         Nor did Congress choose to define "student" to only include those eligible

7    for federal financial aid in the definitions section applicable to sections

8    18001-18006, where it would have if it so intended. CARES Act § 18007.

9    "A fundamental canon of statutory construction is that, unless otherwise defined,

10   words will be interpreted as taking their ordinary, contemporary, common

11   meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, the ordinary

12   meaning of "student" is not restricted to those who meet the eligibility criteria for

13   federal financial aid.

14        Further, there is no reference to the eligibility requirements in Title IV,

15   section 484, of the HEA anywhere in sections 18001-18007. The only reference

16   to Title IV is in section 18004(b), which states that "[t]he funds made available

17   to each institution under subsection (a)(1) shall be distributed by the Secretary

18   using the same *systems* as the Secretary otherwise distributes funding to each

19   institution under title IV of the Higher Education Act of 1965 (20 U.S.C. § 1001

20   et seq.)." (Emphasis added.) The plain language of this provision indicates that

21

22

PLAINTIFF'S MOTION FOR                    24        ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                        Complex Litigation
NO. 2:20-cv-00182-TOR                                       800 Fifth Avenue, Suite 2000
                                                             Seattle, WA 98104-3188
                                                                 (206) 464-7744

1    the Secretary shall distribute money to the institution itself using the system it

2    already has in place to transfer aid money to institutions. *See supra* at 4.

3         Title IV as a whole compels the conclusion that the term "system" is a

4    technological system, not a methodology for determining eligibility. In addition

5    to governing how federal financial aid is distributed, Title IV contains a nearly

6    countless number of grants the Department distributes directly to institutions for

7    a wide variety of purposes. 20 U.S.C. §§ 1051-1068h, 1101-1103g, 1121-1132,

8    1151-1155 (2020). In fact, the sections governing grants that go directly to

9    institutions of higher education dwarf the number of provisions governing money

10   that goes to students for federal financial aid. 20 U.S.C. §§ 1070-1099d

11   (governing Student Assistance).

12        A myriad of eligibility requirements match the many provisions providing

13   aid to students and institutions. *See* 20 U.S.C. §§ 1001 et. seq. For example, to be

14   eligible under the Path to Success program, an individual must be aged 16-25,

15   convicted of a criminal offense, and detained or released from a juvenile

16   detention center. 20 U.S.C. § 1161w(f)(2) (2020). As another example, "eligible

17   students" under the Pilot Programs to Increase College Persistence and Success

18   must be at least 19 years old and a parent of at least one dependent child.

19   20 U.S.C. § 1161k (2020). None of these eligibility requirements—including

20   eligibility for federally financial aid—can rationally be determined to be a

21   "system" for distribution. *See* CARES Act § 18004(b).

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

25

1    The structure of the CARES Act itself also shows that Congress did not

2    intend to limit CARES Act emergency grants under section 18004 only to

3    students eligible for federal financial aid. Among the many eligibility provisions

4    available under Title IV, the Department selected a single eligibility provision

5    and applied it to block needy students from accessing emergency grant money.

6    Worse, the Department selected the eligibility provisions that apply to students

7    applying for federal financial aid when Congress created a wholly separate

8    section of the CARES Act that dealt with federal financial aid. CARES Act

9    § 3513. It also defies credulity that Congress would intend to force an immensely

10    burdensome administrative task—determining each individual student's

11    technical eligibility for federal financial aid under Title IV—during a pandemic

12    when school resources are extremely limited and time is of the essence for

13    dispersing much-needed financial assistance. The Department's decision to add

14    an additional eligibility requirement simply defies "common sense."

15    Thus when using the "traditional tools" of statutory construction such as

16    the statutes text, structure, context, and common sense, *Brown & Williamson*,

17    529 U.S. at 132, Congress's intent is clear. Congress assigned to institutions the

18    ability to determine the students who would receive CARES Act grants, subject

19    "only [to the] statutory requirement … that the funds be used to cover expenses

20    related to the disruption of campus operations due to coronavirus." Simpson

21    Decl., Ex. B.

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

## 2. The Department's Eligibility Restriction is arbitrary and capricious

The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A) (2020). Agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of a problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [made a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Unexplained inconsistency" between agency actions is also "a reason for holding an interpretation to be an arbitrary and capricious change . . . ." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005).

### a. The Eligibility Restriction is an unexplained inconsistency

Unexplained inconsistencies are grounds to find a policy arbitrary and capricious, but a change in policy is permissible under the APA if the agency (1) displays "awareness that it *is* changing position," (2) shows that "the new policy is permissible under the statute," (3) "believes" the new policy is better, and (4) provides "good reasons" for the new policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009). The Department failed to meet these standards.

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

27

1    As demonstrated above, the Department flip-flopped in just 11 days with

2    no explanation. *See supra* at 7-10. The Department's policy reversal fails to meet

3    the standards under *Fox*. First, the FAQs failed to mention the Department's

4    previous position and failed to display any awareness that it was changing its

5    position. Second, unlike the Secretary's Letter to Presidents and the Certification,

6    which specifically referenced the statutory language of the CARES Act, the

7    FAQs failed to refer to any portion of the CARES Act. Simpson Decl. Exs. B, C,

8    G And, finally, because the FAQs did not acknowledge the Department's

9    previous position entirely and included no analysis of the need for the change, it

10   failed the third and fourth prongs of *Fox* by lacking a statement that the new

11   policy is "better" and failing to provide "good reasons" for the change.

12   The Department's sudden policy shift is therefore arbitrary and capricious.

13   *See Chinook Indian Nation v. U.S. Dep't of Interior*, No. C17-5668-RBL,

14   2020 WL 363410, at *7 (W.D. Wash. Jan. 22, 2020); *Washington v. U.S. Dep't*

15   *of State*, 318 F. Supp. 3d 1247, 1260 (W.D. Wash. 2018).

16   **b.    The Eligibility Restriction fails to consider an important**
17        **aspect of the problem**

18   Moreover, the Eligibility Restriction "entirely fail[s] to consider an

19   important aspect of the problem," which is that there are many students at

20   Washington's institutions of higher education who do not qualify for financial

21   aid under Title IV, section 484 of the HEA, but who need emergency financial

22   assistance due to the impacts of COVID-19. In fact, many of the students who do

1    not qualify are those most in need of financial support. *See* Yoshiwara Decl.

2    ¶¶ 18-19; Woods Decl. ¶¶ 18-24; Flores Decl. ¶¶ 15-22; Allison Decl. ¶¶ 16-23;

3    Buchmann Decl. ¶¶ 15-27; *see also* Yoshiwara Decl. ¶ 19 (community colleges

4    serve a large population of adult basic education students who are typically lower

5    income and seeking to gain education and skills to improve their employment

6    prospects); Flores Decl. ¶ 16 (same); Allison Decl. ¶ 17 (same); Yoshiwara Decl.

7    ¶ 20 (community colleges serve significant number of Running Start students,

8    many of whom are on free or reduced lunch programs); Flores Decl. ¶ 17 (same);

9    Allison Decl. ¶ 18 (same).

10    And the decision to tie emergency grants to eligibility for federal financial

11    aid ignores another important aspect of the problem: the Congressional purposes

12    for each type of funding are different. Financial aid under Title IV of the HEA is

13    comprised of Direct Loans, which must be repaid, and Pell Grants, which must

14    be repaid under certain circumstances (*e.g.*, leaving the program, change in

15    enrollment status, receiving other grants that reduce financial need).

16    *See* 34 C.F.R. §§ 685.207, 690.80, 690.79 (2020). By contrast, when Congress

17    passed the HEERF provisions, it did not envision students needing to repay the

18    funds for any reason. *See* CARES Act § 18004. Thus, any reasons Congress may

19    have conditioned eligibility for Federal Financial Aid under the HEA are simply

20    absent under the CARES Act.

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        **c.    The Department's Eligibility Restriction is so implausible it cannot be ascribed to a different in view or the product of agency expertise**

2

3        Finally, the Department's decision to limit emergency grants only to

4  students who are eligible for federal financial aid is completely implausible and

5  unfounded in logic. As discussed above, there are myriad and diverse eligibility

6  requirements found in Title IV's many provisions. The Department's decision to

7  cherry-pick a single eligibility requirement from all of Title IV, in the absence of

8  any direction from Congress to do so, runs so far counter to the language of the

9  CARES Act that it is nonsensical and *prima facie* arbitrary and capricious.

10  *See* 20 U.S.C. §§ 1161w, 1161k (2020).

11      **3.    The Eligibility Restriction violates Separation of Powers**

12        In addition to violating numerous sections of the APA, the Department's

13  Eligibility Restriction also violates constitutional separation of powers principles

14  by permitting it to refuse to disburse money appropriated by Congress. The

15  Constitution gives Congress, not the Executive branch, the power to spend and

16  to set conditions on funds. U.S. Const. art. I, § 8, cl. 1. As shown above, Congress

17  did not delegate to the Executive branch any power or authority to condition

18  CARES Act grant dispersal on students' eligibility for federal financial aid under

19  Title IV. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952)

20  ("The President's power, if any, to issue the order must stem either from an act

21  of Congress or from the Constitution itself.").

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      As the Ninth Circuit recently reaffirmed, the Executive Branch "does not

2    have unilateral authority" to "thwart congressional will by canceling

3    appropriations passed by Congress." *City & Cty. of San Francisco v. Trump*, 897

4    F.3d 1225, 1232 (9th Cir. 2018) (internal quotation marks and citations omitted);

5    *see also Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("[N]o provision

6    in the Constitution . . . authorizes the President to enact, to amend, or to repeal

7    statutes."). To that end, the Executive Branch is without inherent power to

8    "condition the payment of . . . federal funds on adherence to its political

9    priorities." *Oregon v. Trump*, 406 F. Supp. 3d 940, 976 (D. Or. 2019) (citing *City

10   *of Chicago v. Sessions*, 888 F.3d 272, 295 (7th Cir. 2018), *reh'g en banc granted

11   in part, opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir.

12   June 4, 2018), *vacated on other grounds*, No. 17-2991 & 18-2649,

13   2018 WL 4268814 (7th Cir. Aug. 10, 2018)).

14      If the Executive branch wishes to condition the receipt of federal funds, it

15   may *only* do so pursuant to a specific delegation of spending authority by

16   Congress. *City & Cty. of San Francisco*, 897 F.3d at 1233-34. Absent

17   Congressional authorization, the Department "may not redistribute or withhold

18   properly appropriated funds in order to effectuate its own policy goals." *Id.* at

19   1235. Moreover, the Executive cannot amend or cancel appropriations that

20   Congress has duly enacted by imposing, without congressional authority, its own

21

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    conditions on the receipt of such funds. *See Train v. City of New York*, 420 U.S.

2    35, 38, 44 (1975); *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013).

3         Nonetheless, this is what the Department has done by placing the

4    Eligibility Restriction on CARES Act funds that Congress did not. Here,

5    Congress did not afford the Department any discretion or authority to place such

6    restrictions. Instead, as the Department initially recognized in its April 9, 2020,

7    Secretary's letter to Presidents, the CARES Act did the opposite, giving

8    institutions—*not* the Department—"significant discretion" to decide which

9    students are in the greatest need of urgent financial help. CARES Act § 18004(c);

10   Simpson Decl., Ex. B.[6] In unilaterally imposing the Eligibility Restriction, the

11   Department abrogated the institutions' discretion and usurped Congress' power

12   to legislate in violation of the principles of separation of powers.

13        **4.    The Eligibility Restriction violates the Spending Clause**

14        The Spending Clause mandates that an agency must not impose conditions

15   on federal funds that are (1) so coercive that they compel (rather than encourage)

16   recipients to comply, (2) ambiguous, (3) retroactive, or (4) unrelated to the

17   _____

18        [6] In fact, the vast majority of the HEERF funds are allocated based on non-

19   discretionary statutory formula. CARES Act § 18004(a)(1), (2). Formula grants

20   in this vein "are not awarded at the discretion of a state or federal agency." *City

21   of Los Angeles v. McLaughlin*, 865 F.2d 1084, 1088 (9th Cir. 1989). No discretion

22   is given to determine student eligibility.

PLAINTIFF'S MOTION FOR                    32          ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                        Complex Litigation
NO. 2:20-cv-00182-TOR                                     800 Fifth Avenue, Suite 2000
                                                            Seattle, WA 98104-3188
                                                                (206) 464-7744

federal interest in a particular program. *Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519, 575–78 (2012); *South Dakota v. Dole*, 483 U.S. 203, 206-08 (1987).

First, the Department's Eligibility Restriction violates the prohibition on "ambiguity." "If Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The Eligibility Restriction is not stated "unambiguously" in the CARES Act. States "cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.' " *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17). Accordingly, Washington institutions did not know of the Eligibility Restriction at the time they signed the Department's certification to receive emergency financial aid grants for their students.

The Eligibility Restriction also violates the Spending Clause's prohibition on retroactive conditions. The Spending Power does not permit what the Department is attempting to do here: "surprising participating States with post acceptance or 'retroactive' conditions" on congressionally appropriated funds. *Pennhurst*, 451 U.S. at 25; *see also Sebelius*, 567 U.S. at 519 (quoting *Pennhurst*, holding Congress cannot retroactively alter conditions of Medicaid grants to states). Once a state or state entity has accepted funds pursuant to a federal spending program, the federal government cannot alter the conditions attached to

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  those funds so significantly as to "accomplish[] a shift in kind, not merely

2  degree." *Sebelius*, 567 U.S. at 583. Nonetheless, the Department has improperly

3  surprised Washington's colleges with post-acceptance conditions on funds by

4  imposing the eligibility requirements *after* those colleges executed the required

5  Certification. *Pennhurst*, 451 U.S. at 25. This is squarely prohibited under the

6  Spending Clause.

7         Finally, the Eligibility Restriction violates the requirement under the

8  Spending Clause that conditions be "reasonably related to the purpose of the

9  expenditure[.]" *New York v. United States*, 505 U.S. 144, 172 (1992). The

10  condition placed on a spending program must "share[] the same goal" as the

11  program. *Charles v. Verhagen*, 348 F.3d 601, 609 (7th Cir. 2003). By contrast,

12  the Department's Eligibility Restriction frustrates the goal of the CARES Act.

13  Specifically, it is contrary to Congress's intent to provide financial assistance to

14  students of higher education during a public health crisis.

15  **C.    Washington Will Suffer Irreparable Harm Absent Preliminary Relief**

16         The harm analysis "focuses on irreparability, irrespective of the magnitude

17  of the injury." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (internal

18  quotation marks omitted). Irreparable harm is harm "for which there is no

19  adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v.

20  Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The testimony of multiple college

21  and university administrators and financial aid officers establish that the

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Eligibility Restriction is likely to cause irreparable harm to Washington, its

2   higher education institutions and their legislative mission, and its students.

### 1.   Deprivation of State institutions' ability to use emergency funds for all needy students as granted by Congress

The Eligibility Restriction directly constrains the discretion Congress gave

Washington's colleges and universities to distribute emergency financial aid

grants to all needy students. In Section 18004(a)(1) of the CARES Act, Congress

gave Washington higher education institutions their allocated share of the

HEERF, and in section 18004(c) Congress told them they could use those funds

for all "students for expenses related to the disruption of campus operations due

to coronavirus . . . ." CARES Act § 18004(c). In the Eligibility Restriction, the

Department excludes from this group of students a particularly needy population

and cuts off the institutions' discretion.

This injury—denying the State use of emergency funds given it by

Congress for the purposes specified by Congress—is irreparable. Needless to say,

the country is in the midst of an unprecedented pandemic that has created

extraordinary needs, and these are *emergency* funds urgently appropriated by

Congress. The national unemployment rate is at the highest level since the Great

Depression, denying working students their income. *See, e.g.*, Lucy Bayly,

*Unemployment rate soars to 14.7 percent, highest level since the Great*

*Depression*,   NBC   News   (May   8,   2020,   7:51   AM   PDT)

https://www.nbcnews.com/business/economy/u-s-economy-shed-record-20-5-

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    million-jobs-last-n1202696 (last visited May 17, 2020). The sudden collapse of

2    livelihoods is forcing Washington students to disenroll from colleges and

3    universities. Flores Decl. ¶ 21; Woods Decl. ¶ 23; Buchmann Decl. ¶ 21; Allison

4    Decl. ¶ 22; Yoshiwara Decl. ¶ 24; Sanchez Decl. ¶ 22. The Department's action

5    denies disabled students the technology they need to continue their education,

6    homeless students the campus facilities to maintain their hygiene, and

7    low-income students food, health care, mental health treatment, and the

8    technology necessary for online learning. Flores Decl. ¶ 15; Woods Decl. ¶ 17;

9    Buchmann Decl. ¶ 15; Sanchez Decl. ¶¶ 16-17. These injuries are occurring now

10   and cannot wait the year or more it would take to litigate this case to its

11   conclusion. It is hard to imagine a stronger showing of irreparable injury.

12   *See Brown v. Kramer*, 49 F. Supp. 359, 363 (M.D. Pa. 1943) (court takes judicial

13   notice of state of national emergency that "render[s] irreparable the injury

14   occasioned by violations of the Acts of Congress").

15          **2.    Uncompensable financial harm**

16          The Eligibility Restriction irreparably harms Washington's proprietary

17   interests. The Department's restriction has caused students to disenroll from

18   Washington colleges and universities, and it will continue to do so absent court

19   intervention. Flores Decl. ¶¶ 19, 21-22; Woods Decl. ¶ 23; Buchmann Decl. ¶ 21;

20   Allison Decl. ¶ 22; Yoshiwara Decl. ¶ 24; Sanchez Decl. ¶ 22. Disenrollment

21   results in a drop in tuition payments to the institutions, a source of their funding.

22

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Flores Decl. ¶¶ 19, 21-22; Woods Decl. ¶¶ 23, 27; Buchmann Decl. ¶¶ 21-30;

2    Yoshiwara Decl. ¶¶ 24, 28. No statutory provision exists that would enable

3    Washington to recoup this lost tuition from the Department if it prevailed at the

4    conclusion of this litigation. *See Azar*, 911 F.3d at 581 (States' uncompensable

5    financial harm is irreparable); *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046

6    (9th Cir. 2015) (same).

7        **3.    Undermining the mission of Washington's higher education
               institutions**

8

9        The Washington legislature created the State's community colleges and

10   four-year institutions to open the door to all Washingtonians, regardless of

11   economic class, to the economic and personal benefits of higher education.

12   Wash. Rev. Code §§ 28B.50.020(1), (3) (2019); Wash. Rev. Code § 28B.07.010

13   (2019). The Eligibility Restriction, by preventing colleges and universities from

14   distributing CARES Act emergency grant to all needy students and precipitating

15   students to disenroll, undermines this important mission. Flores Decl. ¶¶ 19, 21-

16   22; Woods Decl. ¶¶ 23, 27; Buchmann Decl. ¶¶ 21-30; Yoshiwara Decl. ¶¶ 24,

17   28. Federal action that undermines a state program and impedes its purpose

18   constitutes irreparable harm. *League of Women Voters of the U.S. v. Newby*, 838

19   F.3d 1, 8 (D.C. Cir. 2016) ("An organization is harmed if the actions taken by

20   [the defendant] have 'perceptibly impaired' the [organization's] programs.")

21   (internal quotation marks and citations omitted); *see also Fair Emp't Council of*

22   *Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994);

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

37

1    *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); *E. Bay*

2    *Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1116 (N.D. Cal. 2018).

3        **4.    Destroying the health and well-being of Washington students**

4        Thousands of Washington residents will be seriously harmed by the Final

5    Rule. The Eligibility Restriction denies financial assistance to the most

6    vulnerable students in Washington during an unprecedented time, forcing them

7    to abandon their higher education and forego food, health care, and mental health

8    counseling. *See, e.g.*, Flores Decl. ¶ 15; Woods Decl. ¶ 17; Buchmann Decl.

9    ¶¶ 15, 21, 24-27; Soto Decl. ¶ 16; Allison Decl. ¶ 16; Sanchez Decl. ¶¶ 16-17;

10   Cleary Decl. ¶ 13. This includes 24,364 Adult Basic Education students; 28,451

11   Running Start participants; upwards of 40,000 students who do not have an

12   approved FAFSA; Dreamers; and those who do not meet the other eligibility

13   requirements of Title IV of the HEA. Yoshiwara Decl. ¶¶ 13-14, 17. Injury to

14   residents' health and well-being irreparably harms the State itself.

15   *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 828 (E.D. Pa. 2019) ("the States

16   also stand to suffer injury to their interest in protecting the safety and well-being

17   of their citizens"); *California v. Health & Human Servs.*, 281 F. Supp. 3d 806,

18   830 (N.D. Cal. 2017), *aff'd in pertinent part sub nom. California v. Azar*, 911

19   F.3d 558 (9th Cir. 2018) (finding irreparable injury based in part on "what is at

20   stake: the health of Plaintiffs' citizens and Plaintiffs' fiscal interests").

21

22

1          **5.      Constitutional violations are irreparable harms**

2          Finally, the constitutional violations caused by the Eligibility Restriction

3   establish irreparable harm. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

4   2012) ("It is well established that the deprivation of constitutional rights

5   'unquestionably constitutes irreparable injury.' ") (quoting *Elrod v. Burns*,

6   427 U.S. 347, 373 (1976)).

7   **D.     Equity and Public Interest Strongly Favor an Injunction**

8          When the government is a party, the final two *Winter* factors merge.

9   *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "The

10  purpose of such interim equitable relief is not to conclusively determine the rights

11  of the parties, but to balance the equities as the litigation moves forward."

12  *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal

13  citations omitted). The principal consideration concerns the extent of the "public

14  consequences" attendant to the stay of the Rule. *Ramirez v. U.S. Immigration &*

15  *Customs Enf't*, 310 F. Supp. 3d 7, 32 (D.D.C. 2018) (quoting *Winter*, 555 U.S. at

16  24); *see also Hernandez*, 872 F.3d at 996. Here, the balance of the equities and

17  public interest strongly favor a stay.

18         "There is generally no public interest in the perpetuation of unlawful

19  agency action. To the contrary, there is a substantial public interest in having

20  governmental agencies abide by the federal laws that govern their existence and

21  operations." *League of Women Voters*, 838 F.3d at 12 (internal quotation marks

22  and citations omitted). The Eligibility Restriction violates the APA, and has

significant, and immediate, consequences to Washington's students and institutions of higher education. It is, without doubt, in the public interest to ensure that all students who are struggling with the financial fall-out of COVID-19 have access the emergency funding appropriated by Congress.

By contrast, preserving the status quo will not harm the defendants, and refraining from enforcing the eligibility requirement will cost them nothing. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (court may waive Rule 65(c) bond requirement). Indeed, Washington merely seeks to keep in place the Department's initial interpretation and guidance they issued when they first made the funding available to institutions. Thus, the final two *Winter* factors weigh heavily in favor of the interim equitable relief sought by the Plaintiff States.

## IV.   CONCLUSION

For the foregoing reasons, the State of Washington requests that the Court preliminarily enjoin Defendants from implementing or enforcing the Eligibility Restriction.

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00182-TOR

40

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        RESPECTFULLY SUBMITTED this 19th day of May 2020.

2                      ROBERT W. FERGUSON
                      Attorney General of Washington

3

4                      */s/ Jeffrey T. Sprung*

5                      JEFFREY T. SPRUNG, WSBA #23607
                      R. JULY SIMPSON, WSBA #45869

6                      PAUL M. CRISALLI, WSBA #40681
                      SPENCER W. COATES, WSBA #49683

7                      Assistant Attorneys General
                      800 Fifth Avenue, Suite 2000

8                      Seattle, WA 98104-3188
                      (206) 464-7744

9                      jeff.sprung@atg.wa.gov
                      july.simpson@atg.wa.gov

10                   paul.crisalli@atg.wa.gov
                    spencer.coates@atg.wa.gov

11                   *Attorneys for Plaintiff State of Washington*

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR           41           ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                     Complex Litigation
NO. 2:20-cv-00182-TOR                    800 Fifth Avenue, Suite 2000
                                          Seattle, WA 98104-3188
                                          (206) 464-7744

1          **<u>DECLARATION OF SERVICE</u>**

2          I hereby declare that on this day I caused the foregoing document to be

3    served via U.S. Certified Mail as follows:

4          Betsy DeVos
           Secretary of U.S. Department of Education
5          c/o U.S. Department of Education
           Lyndon Baines Johnson (LBJ)
6          Department of Education Building
           400 Maryland Ave. SW
7          Washington, DC 20202-1475

8          U.S. Department of Education
           Lyndon Baines Johnson (LBJ)
9          Department of Education Building
           400 Maryland Ave. SW
10         Washington, DC 20202-1475

11         DATED this 19th day of May 2020, at Seattle, Washington.

12

13                        */s/ Jeffrey T. Sprung*
                          Jeffrey T. Sprung, WSBA #23607
14                        Assistant Attorney General

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR                    42        ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                       Complex Litigation
NO. 2:20-cv-00182-TOR                                    800 Fifth Avenue, Suite 2000
                                                            Seattle, WA 98104-3188
                                                              (206) 464-7744