FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 12, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Plaintiff,<br><br>   v.<br><br>BETSY DeVOS, in her official capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, a federal agency,<br><br>               Defendants. | NO. 2:20-CV-0182-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

BEFORE THE COURT is Plaintiff's Motion for Preliminary Injunction (ECF No. 5). This matter was heard with oral argument on June 11, 2020. R. July Simpson and Spencer W. Coates appeared on behalf of Plaintiff. Alexander V. Sverdlov appeared on behalf of Defendants. The Court has reviewed the record and files herein and considered the parties' oral arguments, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Preliminary Injunction (ECF No. 5) is GRANTED.

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 1

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint and are essentially undisputed as relevant and material to resolution of the instant motion.

### 1. COVID-19 Outbreak

In late December 2019, the Wuhan City government in Hubei Province, China, started to trace cases of a novel coronavirus. ECF No. 1 at 7, ¶ 17. On January 30, 2020, the World Health Organization declared the novel coronavirus outbreak a Public Health Emergency of International Concern. ECF No. 1 at 8, ¶ 18. On February 11, 2020, the World Health Organization announced an official name for the disease causing the 2019 outbreak, abbreviated as COVID-19. *Id.*

On January 21, 2020, the Washington State Department of Health confirmed what was believed to be the first case of COVID-19 in the United States in Snohomish County, Washington. ECF No. 1 at 10, ¶ 23. Until mid-March, Washington had the highest absolute number of confirmed cases and the highest per capita of any state in the country. ECF No. 1 at 11, ¶ 25. On February 29, 2020, Washington Governor Jay Inslee declared a state of emergency in all counties in Washington. ECF No. 1 at 11, ¶ 26. On March 13, 2020, President Donald Trump issued a proclamation that the COVID-19 outbreak constituted a national emergency. ECF No. 1 at 12, ¶ 29.

2. *CARES Act*

In late March 2020, Congress acted to address the COVID-19 outbreak. ECF No. 1 at 13, ¶ 32.  On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") into law.  ECF No. 1 at 13, ¶ 33; Pub. L. No. 116-136, 134 Stat. 281.  The CARES Act appropriates federal funding for a wide array of purposes related to COVID-19, including a series of provisions directing funding through the Department of Education ("the Department").  ECF No. 1 at 13, ¶ 34.  Specifically, the CARES Act appropriates $30,750,000,000 to the Department for an "Education Stabilization Fund." *Id.*

Section 18001 directs the Secretary of Education ("the Secretary") to allocate the Education Stabilization Fund for specified purposes in specified percentages.  ECF No. 1 at 13, ¶ 35.  Section 18001 directs the Secretary to allocate to three funds created by the Act: the Governor's Emergency Education Relief Fund, the Elementary and Secondary School Emergency Relief Fund, and the Higher Education Emergency Relief Fund ("HEERF").  ECF No. 1 at 13-14, ¶ 35.

Subsection (a)(1) of Section 18004 directs the Secretary how to allocate the vast majority of the HEERF: "90 percent to each institution of higher education to prevent, prepare for, and respond to coronavirus by apportioning it" according prescribed percentages based on full-time equivalent of students receiving and not

1   receiving Federal Pell Grants.  ECF No. 1 at 14, ¶ 37; CARES Act § 18004(a)(1).

2   Subsection (a)(2) directs the Secretary to allocate 7.5% of the HEERF to minority-

3   serving institutions based on a non-discretionary formula.  ECF No. 1 at 14, ¶ 38;

4   CARES Act § 18004(a)(2).  Lastly, subsection (a)(3) grants the Secretary

5   discretion over the remaining 2.5% of the HEERF to institutions "that the

6   Secretary determines have the greatest unmet needs related to coronavirus."  ECF

7   No. 1 at 15, ¶ 39; CARES Act § 18004(a)(3).  The Act further provides that the

8   90% allocation of HEERF funds "shall be distributed by the Secretary using the

9   same systems as the Secretary otherwise distributes funding to each institution

10  under title IV of the Higher Education Act of 1965."  ECF No. 1 at 15, ¶ 41;

11  CARES Act § 18004(b).

12          Subsection (c) instructs how institutions of higher education are to use

13  CARES Act funds: "[A]n institution of higher education receiving funds under this

14  section may use the funds received to cover any costs associated with significant

15  changes to the delivery of instruction due to the coronavirus," subject to certain

16  discrete subject limitations.  ECF No. 1 at 16, ¶ 42; CARES Act § 18004(c).  The

17  Act further provides: "Institutions of higher education shall use no less than 50

18  percent of such funds to provide emergency financial aid grants to students for

19  expenses related to the disruption of campus operations due to coronavirus

20  (including eligible expenses under a student's cost of attendance, such as food,

housing, course materials, technology, health care, and child care)." ECF No. 1 at

16, ¶ 43; CARES Act § 18004(c). The Act clarifies that the terms "institution of

higher education" and "cost of attendance" are given their meanings as defined in

the Higher Education Act of 1965 ("HEA"). CARES Act §§ 18007(2) and (5).

### 3. *Eligibility Guidelines*

On April 9, 2020, the Department released a portion of the CARES Act

funding Congress appropriated for student emergency grants. ECF No. 1 at 17, ¶

45. That same day, the Department issued a letter from the Secretary to college

and university presidents, a certification form for higher education institutions, a

list of individual allocations to colleges and universities, and a methodology for

how it calculated the allocations schools were scheduled to receive. ECF No. 1 at

17, ¶ 46; ECF No. 6-1, Ex. B-D. The Secretary's April 9 letter states, in relevant

part:

> The CARES Act provides institutions with significant discretion on how to
> award this emergency assistance to students. This means that each
> institution may develop its own system and process for determining how to
> allocate these funds, which may include distributing the funds to all students
> or only to students who demonstrate significant need. The only statutory
> requirement is that the funds be used to cover expenses related to the
> disruption of campus operations due to coronavirus (including eligible
> expenses under a student's cost of attendance, such as food, housing, course
> materials, technology, health care, and child care).

ECF No. 1 at 17-18, ¶ 48; ECF No. 6-1 at 8.

The Department's certification form states in relevant part:

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION ~ 5

Recipient retains discretion to determine the amount of each individual emergency financial aid grant consistent with all applicable laws including non-discrimination laws. … The Secretary does not consider these individual emergency financial aid grants to constitute Federal financial aid under Title IV of the HEA.

ECF No. 1 at 19, ¶ 50; ECF No. 6-1 at 11. Specific recommendations to recipients as to how to allocate the funds follow language such as "the Secretary recommends" and "the Secretary strongly encourages." *Id.*

On April 21, 2020, the Department announced it would release the additional funds the CARES Act appropriated for institutions' own use. ECF No. 1 at 21, ¶ 53. On that same day, the Department posted a document entitled "Frequently Asked Questions about the Emergency Financial Aid Grants to Students under Section 18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act" ("the FAQs"). ECF No. 1 at 21-22, ¶ 55. In the FAQs, the Department purported to answer the question, "What students are eligible to receive emergency financial aid grants from the HEERF?" *Id.* The Department's response (the "eligibility restriction") states:

Only students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial aid grants. If a student has filed a Free Application for Federal Student Aid (FAFSA), then the student has demonstrated eligibility to participate in programs under Section 484 [of] the HEA. Students who have not filed a FAFSA but who are eligible to file a FAFSA also may receive emergency financial aid grants. The criteria to participate in programs under Section 484 of the HEA include but are not limited to the following: U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 6

male); and a high school diploma, GED, or completion of high school in an approved homeschool setting.

*Id.*; ECF No. 6-1 at 128, ¶ 9.  On April 21, 2020, the Department published a second set of FAQs regarding the institutional portion of the HEERF, which similarly state that "students must be eligible to receive emergency financial aid grants, and only students who are or could be eligible to participate in programs under Section 484 of Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial grants" (hereinafter, the "eligibility restriction").  ECF No. 1 at 22-23, ¶ 57; ECF No. 6-1 at 133, ¶ 5.

Section 484 of Title IV of the HEA ("Title IV") contains numerous requirements for student eligibility for financial aid, including: U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is male); a high school diploma, GED, or completion of high school in an approved homeschool setting; the student is not in default on any loan issued by the Department; and the student has maintained at least a cumulative C average, or its equivalent or academic standing consistent with the requirements for graduation.  ECF No. 1 at 23, ¶ 58; 20 U.S.C. § 1091.  Although the Department's FAQs state that a FAFSA is not required for a student to be eligible for CARES Act funds, having a FAFSA on file is the primary practicable means

for an institution to determine whether a student is eligible to participate in student aid programs and meets all applicable eligibility guidelines.  ECF No. 1 at 24, ¶ 59.

The Department's certification forms for the two HEERF disbursements require the recipient to acknowledge that it may be subject to legal liability if it does not comply with the terms of the certification form "and/or all relevant provisions and requirements of the CARES Act or any other applicable law."  ECF No. 1 at 24, ¶ 61.

Shortly before the hearing on June 11, 2020, the Defendants filed a copy of their Interim Final Rule which they represent will be published in the Federal Register in the immediate future and will take effect on that day.  ECF Nos. 28, 28-1.  The Interim Final Rule provides justification and reasoning for the Defendants to promulgate a rule which interprets a perceived ambiguity in the CARES Act definition of "student" recipients eligible for "emergency financial aid grants." ECF No. 28-1 at 7.  The Defendants have concluded that Congress intended the category of those eligible for "emergency financial aid grants to students" in Section 18004 of the CARES Act to be limited to those individuals eligible for Title IV assistance under the HEA.  *Id*. at 8.  This interpretation, thus, necessarily also prohibits distribution of HEERF funds to those aliens prohibited from receiving benefits under 8 U.S.C. § 1611(a).  *Id*.

### 4. *Washington Impact*

Washington law establishes both a network of community and technical colleges and a system of public universities. ECF No. 1 at 27-29, ¶¶67-69. Numerous Washington colleges and universities have submitted applications to the Department and receive HEERF funds and have signed Funding Certifications and Agreements as required by the Department. ECF No. 1 at 19, ¶ 70. Many of these institutions signed the Recipient's Funding Certification and Agreement before the Department announced the eligibility restriction. *Id.* But for the Department's eligibility restriction, Washington colleges and universities would distribute CARES Act funding to students who are excluded by the eligibility restriction. ECF No. 1 at 30, ¶ 71.

Washington higher education students have encountered a variety of needs while institutions have switched to online learning, including: loss of access to on-campus resources such as labs, media centers, and technical equipment; loss of access to technology resources for disability services accommodations; loss of income from a campus job or other work; loss of access to onsite counselors and medical care; loss of access to campus gym shower facilities for personal hygiene when necessary due to living situations or homelessness. ECF No. 1 at 31-32, ¶ 75. The disruption of campus operations due to COVID-19 has caused students at Washington colleges and universities to incur unexpected expenses such as food,

housing, course materials, technology, health care, and child care, and some students have been unable to remain in school due to these expenses. ECF No. 1 at 30, ¶ 72. Lack of financial resources is the most common reason for student disenrollment. ECF No. 1 at 30, ¶ 73. The loss of enrollment at Washington institutions has reduced tuition payments and will continue to do so. ECF No. 1 at 31, ¶ 74.

The eligibility restriction has caused Washington colleges and universities to deny emergency financial aid grants to students. ECF No. 1 at 32, ¶ 76. These students include those in Basic Education for Adults programs, who either did not complete high school or for whom English is not their first language. ECF No. 1 at 32, ¶ 77. High school students who participate in the Running Start program are also excluded by the eligibility restriction. ECF No. 1 at 33, ¶ 78. Other students excluded by the eligibility restriction include students under the age of 24 who would otherwise qualify for aid under Title IV but cannot file a FAFSA because their parents will not sign the document. ECF No. 1 at 33, ¶ 79. Washington's FAFSA completion rate is ranked 49th nationally. ECF No. 1 at 33-34, ¶ 80. Additionally, many Washington college and university students are excluded by the eligibility restriction because they have temporary protected status or DACA status. ECF No. 1 at 34, ¶ 81. Washington institutions may face legal claims by

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 10

the Department if they inadvertently disbursed funds in violation of the eligibility restriction.  ECF No. 1 at 34, ¶ 82.

### DISCUSSION

**A.  Preliminary Injunction**

Plaintiff, on behalf of itself and as *parens patriae* in protecting the health and well-being of its residents, moves for a preliminary injunction to prevent Defendants from implementing or enforcing the eligibility restriction limiting the availability of CARES Act emergency financial assistance grants only to students who qualify for federal financial aid under Title IV of the HEA.  ECF No. 5 at 12.

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1)(A).  To obtain this relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).  Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief.

Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 11

the merits" and "the balance of hardships tips sharply in the plaintiff's favor,"
assuming the plaintiff also satisfies the two other *Winter* factors.  *All. for the Wild*
*Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of
one element may offset a weaker showing of another."); *see also Farris v.*
*Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) ("We have also articulated an
alternate formulation of the *Winter* test, under which serious questions going to the
merits and a balance of hardships that tips sharply towards the plaintiff can support
issuance of a preliminary injunction, so long as the plaintiff also shows that there is
a likelihood of irreparable injury and that the injunction is in the public interest."
(internal quotation marks and citation omitted)).

**B.  Likelihood of Success on the Merits**

To obtain injunctive relief, Plaintiff must show that there are "serious
questions going to the merits" of its claim, and that it is likely to succeed on those
questions of merit.  *Cottrell*, 632 F.3d at 1131; *Farris*, 677 F.3d at 865.  Plaintiff
contends it is likely to succeed on the merits of its claims under the Administrative
Procedure Act ("APA") and the United States Constitution.  ECF No. 5 at 26-45.
Defendants respond Plaintiff is unlikely to succeed on the merits because its claims
are nonjusticiable, are barred by other provisions of federal law, and are based on a
misreading of the CARES Act.  ECF No. 22 at 17-33.

1

      *1.  Justiciability – Ripeness*

2

      Defendants contend Plaintiff's claim is not ripe because the eligibility

3

restriction is not a final agency action.  ECF No. 22 at 19-22.  "[C]ourts

4

traditionally have been reluctant to apply [injunctive remedies] to administrative

5

determinations unless these arise in the context of a controversy 'ripe' for judicial

6

resolution."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on*

7

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

8

      In APA cases, issues of ripeness are "inter-related" to issues of final agency

9

action.  *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 668 (9th Cir. 1998).

10

"[I]n evaluating ripeness, courts assess 'both the fitness of the issues for judicial

11

decision and the hardship to the parties of withholding court consideration.'"

12

*Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 779-80 (9th Cir. 2000)

13

(citation omitted) ("*AAMC*").  "Under the first prong, 'agency action is fit for

14

review if the issues presented are purely legal and the regulation at issue is a final

15

agency action.'"  *AAMC*, 217 F.3d at 780 (quoting *Anchorage v. United States*, 980

16

F.2d 1320, 1323 (9th Cir. 1992)).  "As a general matter, two conditions must be

17

satisfied for agency action to be 'final': First, the action must mark the

18

'consummation' of the agency's decisionmaking process … And second, the action

19

must be one by which 'rights or obligations have been determined,' or from which

20

'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted).

"[A]n agency's characterization of its actions as being provisional or advisory is not necessarily dispositive [of finality], and courts consider whether the practical effects of an agency's decision make it a final agency action, regardless of how it is labeled." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094-95 (9th Cir. 2014); *see also Frozen Food Express v. United States*, 351 U.S. 40, 43-45 (1956) (finding agency determination to be a final action where regulated parties were subject to "civil and criminal risks" for noncompliance). Instead, courts consider "whether the [action] has the status of law or comparable legal force, and whether immediate compliance with its terms is expected." *Or. Nat. Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 987 (9th Cir. 2006) (internal quotation and citation omitted).

Defendants argue that the eligibility guidance is not final because it is only a preliminary guidance. ECF No. 22 at 19. In support, Defendants note that the Department has announced it "continues to consider" the issue of HEERF grant eligibility and that it "intends to take further action shortly." *Id.* However, this Court is not obligated to accept the Department's characterization of its own action as nonfinal. *Columbia Riverkeeper*, 761 F.3d at 1094-95. Defendants do not contest that the eligibility restriction reflects the Department's interpretation of the

1    CARES Act.  Indeed, Defendants now represent that the Interim Final Rule,

2    consistent with their prior interpretation, is soon to be published and represents

3    final action.  ECF No. 28.  Recipients of HEERF monies are required to certify to

4    the Department that their use of the funds will comply with "all relevant provisions

5    and requirements of the CARES Act or any other applicable law."  ECF No. 1 at

6    24, ¶ 61.  Regardless of whether Defendants believe they have completed their own

7    rulemaking process, the practical effect of Defendants' actions is to require

8    recipient institutions to immediately comply with the terms of the eligibility

9    restriction as the Department has interpreted them.  *Or. Nat. Desert Ass'n*, 465

10   F.3d at 987.  Plaintiff is likely to succeed in arguing that the eligibility restriction is

11   sufficiently final to be ripe for judicial review at this time.

12        Defendants also contend that this matter is not ripe because Plaintiff cannot

13   show hardship.  ECF No. 22 at 21-22.  A case may be unripe for judicial review

14   where "the impact of the regulation could not 'be said to be felt immediately by

15   those subject to it in conducting their day-to-day affairs" and "no irremediabl[y]

16   adverse consequences flow[ed] from requiring a later challenge.'"  *Nat'l Park*

17   *Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003) (quoting *Gardner v.*

18   *Toilet Goods Ass'n., Inc.*, 387 U.S. 158, 164 (1967)).  This argument is unlikely to

19   succeed for similar reasons to Defendants' finality argument.  HEERF recipient

20   institutions were required to certify their compliance with the CARES Act subject

to potential civil and criminal penalties. ECF No. 1 at 24, ¶ 61. When the

Department announced its interpretation of student eligibility for HEERF

emergency financial aid grants, Washington institutions responded by changing

how they planned to distribute HEERF emergency financial aid grants to their

students. ECF No. 1 at 30, ¶ 71. This hardship is sufficient to support judicial

review of Plaintiff's claims.

Because Plaintiff's claims seek review of final agency action and that action

has now been submitted in writing and is scheduled to be published imminently,

Plaintiff has demonstrated hardship, Plaintiff is likely to succeed in arguing that

this case is sufficiently ripe for judicial review.

### 2. *Justiciability – Article III Standing*

Defendants contend that Plaintiff lacks Article III standing because its

asserted injuries are not traceable to Defendants. ECF No. 22 at 21 n.4. "To

satisfy the 'irreducible constitutional minimum' for standing, a plaintiff must

establish 'three elements': (1) injury in fact (2) that is fairly traceable to the

challenged conduct of the defendant and (3) that is likely to be redressed by a

favorable decision." *Skyline Wesleyan Church v. California Dep't of Managed

Health Care*, 959 F.3d 341, 349 (9th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560-61 (1992)). "[S]elf-inflicted injuries" which are not fairly

traceable to a defendant do not give rise to standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

Defendants argue that any injury Plaintiff has suffered is traceable to Plaintiff's own misreading of the eligibility restriction as being binding.  ECF No. 22 at 21 n.4.  Defendants' standing argument suffers from the same flaw as their ripeness argument.  Defendants' combined actions of proffering an interpretation of HEERF grant eligibility while requiring recipient institutions to certify that they would distribute HEERF funds in accordance with CARES Act requirements leaves recipient institutions with the choice of complying with the Defendants' eligibility criteria or facing potential legal consequences.  Plaintiff's reaction to the eligibility restriction is not a "self-inflicted injury."  *Clapper*, 568 U.S. at 418.  Instead, Plaintiff's injuries are fairly traceable to Defendants' actions.  Plaintiff is likely to succeed in arguing that it has Article III standing to pursue its claims.  Again, publication of the Interim Final Rule is imminent, thus, Plaintiff has standing.

### 3.  Statutory Bar

Defendants argue that Plaintiff is unlikely to succeed on the merits because the relief it seeks is barred in part by other provisions of federal law.  ECF No. 22 at 22-23.  To the extent Plaintiff seeks injunctive relief to allow Washington institutions to allocate HEERF grants to noncitizen students, Defendants contend

the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") would prohibit this distribution. *Id.* Defendants' statutory bar argument is not relevant to the substance of Plaintiff's APA or constitutional claims, but it is relevant to the question of whether Plaintiff is likely to succeed on the merits for some of its specific requests for relief.

The relevant part of PRWORA ("Section 1611") provides "Notwithstanding any other provision of law … an alien who is not a qualified alien … is not eligible for any Federal public benefit[.]" 8 U.S.C. § 1611(a). "Federal public benefit" is defined to mean "any grant … provided by an agency of the United States or by appropriated funds of the United States" and "any … public or assisted housing, postsecondary education, food assistance, … or any other similar benefit for which payments or assistance are provided to an individual, … by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. § 1611(c)(1).

Defendants argue the "notwithstanding" clause of Section 1611(a) overrides any other indication that the CARES Act permits allocation of HEERF emergency financial aid grants to noncitizen students, as the HEERF funds are a "federal public benefit" within the meaning of the law. ECF No. 22 at 22. "[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 18

other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). However, a "notwithstanding" clause "can be overridden by other statutory indicators." *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1071 n.12 (9th Cir. 2010).

Here, Plaintiff raises compelling arguments that several features of the CARES Act override any possible application of Section 1611's "notwithstanding" clause to HEERF emergency financial aid grants. First, another provision of the CARES Act specifically excludes noncitizens from receiving funds under other relief allocation. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (citation omitted). Notably, the CARES Act section authorizing $1,200 payments to individuals specifically excludes "nonresident alien individuals" from eligibility. *See* CARES Act § 2201 ("Recovery Rebates for Individuals"). That Congress specifically included language to exclude noncitizens from eligibility for individual rebate funds, but failed to include specific language to exclude noncitizens from eligibility for HEERF funds, indicates that the omission was intentional. *Gozlon-Peretz*, 498 U.S. at 404.

Second, Plaintiffs note that Defendants' argument would require the Court to ascribe different meanings to the term "students" throughout a single section of the

CARES Act. "Under the 'normal rule of statutory construction,' we presume that 'identical words used in different parts of the same act are intended to have the same meaning.'" *City of Los Angeles v. Barr*, 941 F.3d 931, 941 (9th Cir. 2019) (quoting *Dep't of Revenue of Or. v. ACF Indus.*, 510 U.S. 332, 342 (1994)). The eligibility restriction purports to define the term "students" in section 18004(c) of the CARES Act, which requires institutions of higher education to use HEERF funds "to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus[.]" CARES Act § 18004(c). However, a prior subsection of the same provision calculates a portion of an institution's allocation of HEERF funds based on its "relative share of full-time equivalent enrollment of students who were not Federal Pell Grant recipients," excluding only those "who are not exclusively enrolled in distance education courses prior to the coronavirus emergency." CARES Act § 18004(a)(1)(B). This definition does not exclude noncitizen students. Indeed, the Department has already calculated each institution's HEERF allocation without any indication that it did so based on a definition of "students" that excluded noncitizens. *See* ECF No. 6-1 at 15-99. If "students" in subsection (a)(1)(B) means all students excluding distance learners, then Defendants' proposed definition in subsection (c) as excluding certain noncitizen students would create two different definitions for an identical term in the same statutory provision. This

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 20

result would contravene ordinary rules of statutory construction. *Barr*, 941 F.3d at 941.

On the other hand, Defendants make a compelling argument that the language of Section 1611 is clear on its face. The haste by which Congress passed the CARES Act may have led to this anomaly. To the extent that HEERF grants are considered a "federal public benefit" under Section 1611, and just because Congress articulated a specific exclusion for "nonresident alien individuals" in another section of the CARES Act, does not necessarily mean that Congress sought to override its longstanding "notwithstanding" clause of Section 1611.

Because both sides present reasonable and compelling arguments for and against the application of Section 1611 to HEERF, Plaintiff has not shown that it is likely to succeed on its argument that Section 1611 does not bar some of the relief Plaintiff seeks. However, this issue speaks to the scope of relief Plaintiff seeks and not the underlying merits of Plaintiff's substantive claims.

### 4.   *APA Claim – Exceeds Rulemaking Authority*

Plaintiff raises a series of claims against Defendants for violation of the APA. ECF No. 1 at 35-38, ¶¶ 84-91. Plaintiff argues a preliminary injunction is appropriate because Defendants have acted in excess of any delegated authority. ECF No. 5 at 26-37. Defendants respond that the eligibility restriction was lawful because the CARES Act delegates significant authority to the Secretary to

administer CARES Act funds and the eligibility restriction is valid exercise of that authority.  ECF No. 22 at 24-31.

"[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).  "If a statute is ambiguous, judicial review of administrative rulemaking often demands *Chevron* deference; and the rule is judged accordingly."  *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006).  "*Chevron* deference, however, is not accorded merely because the statute is ambiguous and an administrative official is involved."  *Id.*  Rather, *Chevron* deference "is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'"  *Id.* at 255-56 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)).  If the court determines that "(1) Congress did not intend to delegate interpretive authority to the agency, or (2) that the agency did not take the challenged action in exercise of that authority," then the agency action is entitled to *Skidmore* deference, "only to the extent that the agency's reasoning is persuasive." *Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

### a.   *Rulemaking Authority*

Plaintiff contends Defendants have no rulemaking authority under the CARES Act.  ECF No. 5 at 27-31.  "The starting point for this inquiry is, of course, the language of the delegation provision itself."  *Gonzales*, 546 U.S. at 258.  "Delegation of such authority may be shown in a variety of ways, [such] as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent."  *Sierra Club*, 929 F.3d at 692 (quoting *Mead*, 533 U.S. at 227).

First, Defendants respond that the CARES Act specifically delegates some level of rulemaking authority to Defendants.  ECF No. 22 at 25.  Specifically, the CARES Act tasks the Secretary with distributing the HEERF to recipient institutions, including the 2.5 percent to be allocated at the Secretary's discretion, and with overseeing the HEERF by requiring institutions to submit reports to the Secretary describing their use of HEERF funds.  CARES Act §§ 18004(a), (e).  These provisions are not express delegations of rulemaking authority.  At most, they are grants of "limited powers" that fail to justify the scope of rulemaking authority Defendants now claim.  *See Gonzales*, 546 U.S. at 917.  Plaintiff is likely to succeed on this argument.

Second, Defendants respond that cross references between the CARES Act and the HEA create ambiguities that constitute delegations of rulemaking

authority.  ECF No. 22 at 24-27.  "[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in a reasonable fashion."  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).  However, where Congress has specifically invoked only certain provisions of other statutes into a new statute, the references indicate Congress was aware of the other statute and "specifically chose to invoke" only certain provisions.  *Navajo Nation v. Dep't of Health & Human Servs., Sec'y*, 325 F.3d 1133, 1139-40 (9th Cir. 2003).

Defendants point to language throughout Section 18004 that references language from the HEA, arguing that these references create an inference that Congress intended to incorporate other Title IV definitions into the CARES Act.  Specifically, the CARES Act defines the term "cost of attendance" as that term is defined in the HEA, and it directs the Department to distribute HEERF funds using existing Title IV "systems."  CARES Act §§ 18004(b), 18007(5).  Contrary to Defendants' argument, Congress' limited incorporation of certain Title IV provisions raises the inference that the failure to similarly incorporate all of Title IV's eligibility restrictions into the CARES Act was intentional.  *Navajo Nation*, 325 F.3d at 1139-40.  This is not a statutory ambiguity that would justify Defendants' claim of rulemaking authority.  Plaintiff is likely to succeed on this argument.

Third, Defendants respond that the CARES Act does not alter the Department's existing rulemaking authority under the HEA.  ECF No. 22 at 27.  The HEA grants the Secretary general authority to promulgate regulations governing programs administered by the Department.  20 U.S.C. § 1221e-3.  However, courts have expressed skepticism where an agency attempts to impose special conditions on grants absent express authority to do so, as "[s]uch a broad interpretation would be antithetical to the concept of a formula grant."  *Barr*, 941 F.3d at 942.  Nothing in the CARES Act grants Defendants authority to use their general rulemaking power under the HEA to impose conditions on the general allocations made in the CARES Act.  *Id.*  Indeed, Defendants' claim of general rulemaking authority is inconsistent with the language of the statute, which only grants discretionary authority where it directs the Secretary to allocate 2.5 percent of the HEERF to the institutions the Secretary determines have the greatest unmet needs.  CARES Act § 18004(a)(3).  Otherwise, the statute requires the Secretary to distribute vast majority of the HEERF funds in accordance with prescribed formulas.  CARES Act § 18004(a)(1)-(2).  The strict prescriptions of the CARES Act are therefore inconsistent with a claim of general rulemaking authority under the HEA.  Plaintiff is likely to succeed on this argument.

//

//

    *b.  Skidmore Deference*

Plaintiff next contends that the eligibility restriction fails to persuade under *Skidmore* because the April 9 and April 21 statements are inconsistent and the eligibility restriction is generally unexplained.  ECF No. 5 at 31-33.  "The weight of such a judgment in a particular case will depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Skidmore*, 323 U.S. at 140.  Defendants fail to specifically address Plaintiff's *Skidmore* argument, but their arguments in response to Plaintiff's "arbitrary and capricious" claim are instructive.

First, Defendants contend that the eligibility restriction is reasonable in light of references to Title IV throughout the CARES Act.  ECF No. 22 at 28-29.  However, as discussed *supra*, the limited incorporation of certain provisions of Title IV into the CARES Act does not imply a general Congressional intent to subject all CARES Act HEERF funds to the restrictions in Title IV.

Additionally, Defendants note that a different provision of the CARES Act, unrelated to HEERF, authorizes institutions to reallocate their existing Title IV funds toward emergency financial aid grants, notwithstanding existing HEA restrictions.  ECF No. 22 at 28-29; CARES Act § 3504(a).  Defendants argue that because both Section 3504 and Section 18004 of the CARES Act authorize

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 26

expenditures for "emergency financial aid grants," both provisions are logically

subject to Title IV's eligibility restrictions.  *Id.* (citing *Barr*, 941 F.3d at 941).

Defendants are unlikely to succeed in this argument.  Although both sections

use the term "emergency financial aid grants," Section 3504 authorizes the

reallocation of funds that have already been awarded under Title IV and are clearly

subject to Title IV restrictions absent Section 3504's "notwithstanding" clause.  In

contrast, Section 18004 selectively incorporates certain Title IV definitions in a

manner that does not indicate an intent to subject HEERF funds to Title IV

restrictions.  Although Section 3504's "emergency financial aid grants" are subject

to Title IV restrictions, the fact that these grants are reallocated from existing Title

IV funds supports a finding that "emergency financial aid grants" as used in

Section 3504 is intended to have a different meaning than the term as it is used in

Section 18004.

Next, Defendants contend that the April 21 guidance is not contrary to the

April 9 guidance, and any alleged reversal did not cause harm because the

guidance was a nonbinding preliminary assessment.  ECF No. 22 at 29-30.

Defendants' argument is not supported by the evidence.  As discussed *supra*, the

eligibility restriction purported to establish recipient institutions' rights and

obligations and the certification form put recipient institutions on notice that failure

to comply could result in legal penalties and therefore did constitute a final action.

*Bennett*, 520 U.S. at 177-78.  This position is reiterated by the proposed Interim Final Rule.  ECF No. 28-1.  However, the eligibility restriction is plainly inconsistent with the Secretary's prior statement that institutions retain "significant discretion" on how to award emergency grants to students and "[t]he only statutory requirement is that the funds be used to cover expenses related to the disruption of campus operations due to coronavirus."  ECF No. 1 at 17-18, ¶ 48; ECF No. 6-1 at 8.  Defendants' attempt to parse the Secretary's statements otherwise is unpersuasive.  ECF No. 22 at 29.

Finally, Defendants assert that the eligibility restriction can be upheld on the basis of arguments Defendants have advanced in the current proceedings, including an acknowledgement that students who do not meet Title IV eligibility criteria will still face financial need.  ECF No. 22 at 30-31.  However, courts are not required to defer to agency litigation positions.  *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008).  Defendants' minimal consideration of the interests of non-Title IV eligible students at present, combined with Defendants' position that the April 9 and April 21 statements are not inconsistent, do not reflect thorough

evidence in support of the agency's decision-making or consistency between its

pronouncements.[1] *Skidmore*, 323 U.S. at 140.

Defendants have now proposed an Interim Final Rule which they represent

will be published in the Federal Register in the immediate future and will take

effect on that day.  ECF Nos. 28, 28-1.  The Interim Final Rule provides

justification and reasoning for the Defendants' to promulgate a rule which

interprets a perceived ambiguity in the CARES Act definition of "student"

recipients eligible for "emergency financial aid grants."  ECF No. 28-1 at 7.  The

Defendants have concluded that Congress intended the category of those eligible

for "emergency financial aid grants to students" in Section 18004 of the CARES

Act to be limited to those individuals eligible for Title IV assistance under the

HEA.  *Id*. at 8.

---

[1]    Notably, Defendants' main argument in favor of rulemaking authority is

undermined by its own litigation position.  Defendants' claim that recipient

institutions could use the Institutional Portion of its HEERF funds for emergency

financial aid grants to non-Title IV eligible students is plainly inconsistent with its

primary argument that the statutory language of the CARES Act intended to

exclude non-Title IV eligible students from any HEERF grant eligibility.  *See* ECF

No. 22 at 35.

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION ~ 29

1      However, the discussion above shows there is no ambiguity for which the

2   Defendants can interpret the CARES Act to be limited only to those individuals

3   eligible for Title IV assistance under the HEA.  On balance, Plaintiff is likely to

4   succeed on the merits of its *Skidmore* argument.

5         5.   *Remaining Substantive Claims*

6      Plaintiff contends that the eligibility restriction is an arbitrary and capricious

7   agency action.  ECF No. 5 at 38-41.  The Court finds it unnecessary to address this

8   claim at this time because Plaintiff's arbitrary and capricious argument functions as

9   an alternative to Plaintiff's *Skidmore* argument, which the Court has already found

10  is likely to succeed on the merits.

11     Plaintiff also raises constitutional challenges to the eligibility restriction

12  under the separation of powers doctrine and the spending clause.  ECF No. 5 at 41-

13  45.  A "fundamental rule of judicial restraint" is that federal courts "must consider

14  nonconstitutional grounds for decision" prior to addressing constitutional

15  questions."  *Jean v. Nelson*, 472 U.S. 846, 854 (1985).  Because the Court has

16  already determined that Plaintiff is likely to succeed on the merits of its APA

17  claim, it is appropriate to exercise judicial restraint and decline to consider the

18  merits of Plaintiff's constitutional claim at this time.  This decision has no impact

19  on consideration of the present motion because Plaintiff has already satisfied the

20  first prong of the *Winter* test with the strength of its APA claim.

1  **C. Irreparable Injury**

2       Plaintiff contends it will suffer irreparable injury absent preliminary

3  injunctive relief.  ECF No. 5 at 45-50.  A plaintiff seeking injunctive relief must

4  "demonstrate that irreparable injury is *likely* in the absence of an injunction."

5  *Winter*, 555 U.S. at 22 (emphasis in original).  "Issuing a preliminary injunction

6  based only on a possibility of irreparable harm is inconsistent with [the Supreme

7  Court's] characterization of injunctive relief as an extraordinary remedy that may

8  only be awarded upon a clear showing that the plaintiff is entitled to such relief."

9  *Id.*  "Irreparable harm is traditionally defined as harm for which there is no

10  adequate legal remedy, such as an award of damages."  *Arizona Dream Act*

11  *Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

12       Plaintiff, on behalf of itself and as *parens patriae* in protecting the health

13  and well-being of its residents, identifies a series of injuries it faces as a result of

14  the eligibility restriction: inability to use Congressionally appropriated emergency

15  relief money, lost tuition money from student disenrollment, undermining the

16  mission of Washington's higher education institutions, injury to the health and

17  well-being of Washington students, and alleged constitutional injury.  ECF No. 5 at

18  46-50.  Plaintiff's loss of tuition money is particularly persuasive.  "Economic

19  harm is not normally considered irreparable," but it may be considered irreparable

20  in APA cases because the APA does not permit recovery of money damages.

1  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).  The disruption of campus

2  operations due to COVID-19 has caused students at Washington colleges and

3  universities to incur unexpected expenses such as food, housing, course materials,

4  technology, health care, and child care, and some students have been unable to

5  remain in school due to these expenses.  ECF No. 1 at 30, ¶ 72.  Lack of financial

6  resources is the most common reason for student disenrollment.  ECF No. 1 at 30,

7  ¶ 73.  These institutions have already altered their plans to grant HEERF aid to

8  non-Title IV eligible students.  ECF No. 1 at 30, ¶ 71.  Because Plaintiff would

9  have no means of recovering lost tuition revenue as a remedy in the event it

10  succeeds on its APA claims, Plaintiff's loss of tuition attributable to an inability to

11  award HEERF grants to non-Title IV eligible students is an irreparable injury.

12  **D.  Balancing of Equities and Public Interest**

13  Finally, Plaintiff contends that the balance of equities and public interest

14  weigh in favor of granting injunctive relief in this case.  ECF No. 5 at 50-51.

15  "When the government is a party, these last two factors merge."  *Drakes Bay v.*

16  *Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

17  "In each case, courts must balance the competing claims of injury and must

18  consider the effect on each party of the granting or withholding of the requested

19  relief."  *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).  The Court

20  must balance the hardships to the parties should the *status quo* be preserved against

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION ~ 32

the hardships to the parties should Plaintiff's requested relief be granted.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quotation omitted).  "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted).  Regardless, the Court will not grant a preliminary injunction unless the public interests in favor of granting an injunction "outweigh other public interests that cut in favor of *not* issuing the injunction." *Cottrell*, 632 F.3d at 1138 (emphasis in original).

Plaintiff contends that that maintaining the *status quo* would result in significant economic consequences to Washington students, while granting injunctive relief would impose no cost to Defendants.  ECF No. 5 at 50-51. Defendants respond that maintaining the *status quo* would serve the public interest by allowing Defendants to complete the rulemaking process (which they have now completed), and that granting injunctive relief could result in the distribution of HEERF funds to individuals who are not otherwise qualified.  ECF No. 22 at 35-36.

Plaintiff's position is more persuasive.  As an initial matter, the Court notes the contradiction in Defendants' argument that no harm would result from

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ~ 33

maintaining the *status quo* because higher education institutions are not prohibited

from distributing HEERF Institutional Portion dollars to individuals who are not

otherwise eligible for Title IV aid.  ECF No. 22 at 35.  The Institutional Portion

and the Student Aid Portion of the HEERF are created and governed by a single

subsection of the CARES Act.  CARES Act § 18004(c).  It is inconsistent with

Defendants' entire argument in favor of the eligibility restriction to assert that the

Institutional Portion, which is statutorily equivalent to the Student Aid Portion, is

unencumbered by Title IV's restrictions.

More importantly, though, failure to grant injunctive relief would have a

significant impact on the public interest because non-Title IV eligible students who

are likely otherwise entitled to HEERF relief will not receive emergency financial

aid grants.  Defendants contend that this harm is attributable to the negative

economic impacts of the COVID-19 pandemic generally, and not specifically to

the loss of eligibility for HEERF emergency grants.  ECF No. 22 at 34-35.

Defendants' argument misses the purpose of the present litigation.  It is

undisputed that the COVID-19 pandemic has had devastating economic

consequences.  For this reason, Congress passed the CARES Act to provide

*emergency* economic relief, including emergency financial aid grants under

HEERF.  Plaintiff has identified a host of campus resources students have lost due

to the pandemic: loss of access to on-campus resources such as labs, media centers,

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION ~ 34

and technical equipment; loss of access to technology resources for disability services accommodations; loss of income from a campus job or other work; loss of access to onsite counselors and medical care; loss of access to campus gym shower facilities for personal hygiene when necessary due to living situations or homelessness. ECF No. 1 at 31-32, ¶ 75. The disruption of campus operations due to COVID-19 has caused students at Washington colleges and universities to incur unexpected expenses such as food, housing, course materials, technology, health care, and childcare. ECF No. 1 at 30, ¶ 72. The harm to students that stems from the eligibility restriction is not only the inability to access HEERF funds; the harm is in the inability to access these emergency funds in a timely manner. Absent injunctive relief, students will continue to be denied access to emergency relief funds to which they are likely otherwise entitled.

Defendants counter that the public interest weighs in favor of allowing the Department to complete its rulemaking process. ECF No. 22 at 35. Defendants rulemaking is all but complete with its issuance of the proposed Interim Final Rule. For the reasons discussed *supra*, that rulemaking is likely unjustified and inadequate. The public interest weighs in favor of granting preliminary injunctive relief.

//

//

# CONCLUSION

The Court finds that Plaintiff has satisfied all elements of the *Winter* test, and preliminary injunctive relief is appropriate.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Preliminary Injunction (ECF No. 5) is GRANTED.

2. The United States Department of Education, Secretary of Education Betsy DeVos, and their officers, agents, servants, employees, attorneys, and any person in active concert or participation with them, are hereby **preliminarily enjoined** from implementing or enforcing the provisions in the April 21, 2020 guidance and the Interim Final Rule that restricts the discretion of higher education institutions in the State of Washington to determine which students will receive CARES Act student emergency financial assistance grants to only those students who are eligible for federal financial aid under Title IV, section 484 of the Higher Education Act, in any manner or in any respect, and shall preserve the status quo until further Order of the Court. This preliminary injunction does not lift the restrictions of 8 U.S.C. § 1611(a).

3. No bond shall be required pursuant to Fed. R. Civ. P. 65(c).

//

//

1    The District Court Executive is directed to enter this Order and furnish

2    copies to counsel.

3        **DATED** June 12, 2020.



THOMAS O. RICE
Chief United States District Judge