ROBERT W. FERGUSON
*Attorney General*

SPENCER W. COATES, WSBA #49683
R. JULY SIMPSON, WSBA #45869
JEFFREY T. SPRUNG, WSBA #23607
PAUL M. CRISALLI, WSBA #40681
*Assistant Attorneys General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
**AT SPOKANE**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:20-cv-00182-TOR |
| Plaintiff, | PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| BETSY DeVOS, in her official capacity as Secretary of the United States Department of Education, and the UNITED STATES DEPARTMENT OF EDUCATION, a federal agency, | NOTED FOR: JULY 27, 2020 With Telephonic Oral Argument: 11:00 a.m.[1] |
| Defendants. | |

---

[1] On June 24, 2020, Washington moved for an expedited hearing on this motion, which would allow the hearing to take place on July 27, 2020, at 11:00 a.m. The Court has not yet ruled on this motion.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

1

# TABLE OF CONTENTS

2    I.    INTRODUCTION ............................................................................. 1

3    II.   STATUTORY AND FACTUAL BACKGROUND ............................ 2

4    III.  ARGUMENT .................................................................................... 6

5          A.  Standard of Review ................................................................. 6

6          B.  The Department Has No Authority to Enforce PRWORA or to
                Impose Eligibility Restrictions on HEERF Funds ........................ 7
7
           C.  PRWORA Does Not Prevent Institutions From Distributing
8              HEERF Funds to Non-Citizens ...................................................... 9

9              1.  HEERF emergency student grants are not "federal public
                   benefits" ................................................................................ 9
10
               2.  PRWORA's "notwithstanding" clause does not mean
11                 PRWORA automatically applies to HEERF Funds ............. 15

12   IV.   CONCLUSION ............................................................................... 20

13

14

15

16

17

18

19

20

21

22

1  **TABLE OF AUTHORITES**

2  <u>**Cases**</u>

3  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) ...........................................................................................6, 8

4
   *Citizens to Pres. Overton Park, Inc. v. Volpe,*
5     401 U.S. 402 (1971) ...........................................................................................6

6  *City of Arlington, Tex. v. F.C.C.,*
      569 U.S. 290 (2013) ...........................................................................................6

7
   *City of Los Angeles v. Barr,*
8     941 F.3d 931 (9th Cir. 2019) ...........................................................................17

9  *Conn. Nat'l Bank v. Germain,*
      503 U.S. 249 (1992) .........................................................................................20

10
   *FDA v. Brown & Williamson Tobacco Corp.,*
11    529 U.S. 120 (2000) .........................................................................................20

12  *Gonzales v. Oregon,*
       546 U.S. 243 (2006) ...........................................................................................6

13
   *Gozlon-Peretz v. United States,*
14    498 U.S. 395 (1991) .........................................................................................18

15  *Kucana v. Holder,*
       558 U.S. 233 (2010) .........................................................................................18

16
   *La. Pub. Serv. Comm'n v. F.C.C.,*
17    476 U.S. 355 (1986) ...........................................................................................6

18  *Ledezma-Galicia v. Holder,*
       636 F.3d 1059 (9th Cir. 2010) .........................................................................16

19
   *Oakley v. Devos,*
20    No. 20-cv-03215-YGR, 2020 WL 3268661 (N.D. Cal.
      June 17, 2020) .....................................................................................4, 7, 14, 19

21
   *Rural Alaska Cmty. Action Program v. Smith,*
22    847 F.2d 535 (9th Cir. 1988) ...........................................................................14

*Sierra Club v. Trump,*
  929 F.3d 670 (9th Cir. 2019)............................................................6

*United States v. Juvenile Male,*
  670 F.3d 999 (9th Cir. 2012)..........................................................19

## Statutes

5 U.S.C. § 706(2)(A) (2020)...............................................................6

5 U.S.C. § 706(2)(C) (2020)...............................................................6

5 U.S.C. § 706(2)(D) (2020)...............................................................6

8 U.S.C. § 1601(6)...........................................................................19

8 U.S.C. § 1611......................................................................1, 4, 16

8 U.S.C. § 1611(a).......................................................................5, 13

8 U.S.C. § 1611(b) (2020)..............................................................4, 9

8 U.S.C. § 1611(c) (2020)...............................................................4, 9

8 U.S.C. § 1611(c)(1) (2020)...............................................................9

8 U.S.C. § 1611(c)(2) (2020)..........................................................4, 9

8 U.S.C. § 1614 (2020)......................................................................8

8 U.S.C. § 1642(a)(1) (2020)............................................................10

8 U.S.C. § 1642(a)(2) (2020)............................................................10

20 U.S.C. § 1091(a)(5) (2020)............................................................3

42 U.S.C. § 701..............................................................................12

42 U.S.C. §§ 5103 et seq. ..............................................................13

42 U.S.C. §§ 6861 et seq. (2020).....................................................12

H.R. Rep. No. 104-651 (1996) .......................................................19

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Pub. L. No. 104–193, 110 Stat. 2105 (Aug. 22, 1996).........................................4

2  Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020)...........................................2

3  Pub. L. No. 116-136, 134 Stat. 281 § 1102(a)(2)(36)(A) (Mar. 27, 2020)........18

4  Pub. L. No. 116-136, 134 Stat. 281 § 2107(b)(1) (Mar. 27, 2020) ...................18

5  Pub. L. No. 116-136, 134 Stat. 281 § 2201 (Mar. 27, 2020) ............................18

6  Pub. L. No. 116-136, 134 Stat. 281 § 6428(d) (Mar. 27, 2020)........................18

7  Pub. L. No. 116-136, 134 Stat. 281 § 18001(b) (Mar. 27, 2020)........................2

8  Pub. L. No. 116-136, 134 Stat. 281 § 18003(d)(8) (Mar. 27, 2020) .................18

9  Pub. L. No. 116-136, 134 Stat. 281 § 18004 (Mar. 27, 2020) .......... 2, 7-8, 15-19

10  Pub. L. No. 116-136, 134 Stat. 281 § 18004(a) (Mar. 27, 2020)..................2, 14

11  Pub. L. No. 116-136, 134 Stat. 281 § 18004(a)(1) (Mar. 27, 2020) .................16

12  Pub. L. No. 116-136, 134 Stat. 281 § 18004(b) (Mar. 27, 2020)........................2

13  Pub. L. No. 116-136, 134 Stat. 281 § 18004(c) (Mar. 27, 2020).............2, 16, 18

14  <u>**Other Authorities**</u>

15  Attorney General Order No. 2353-2001, 66 FR 3613-02, 2001 WL 31994
16   (Jan. 16, 2001)..............................................................................................11

17  HHS Notice, PRWORA; Interpretation of 'Federal Public Benefit,' 63 FR
   41658-01, 1998 WL 435846 (Aug. 4, 1998) ...............................11, 12, 14, 15

18  Janet M. Fox, *LIHEAP IM 1999-10 on Federal Public Benefits Under the
   Welfare Reform Law -- Revised Guidance*, Office of Community Services,
19   U.S. Dep't of Health & Human Servs. (June 15, 1999),
   https://www.acf.hhs.gov/ocs/resource/federal-public-benefits-under-the-
20   welfare-reform-law-revised-guidance (last visited June 26, 2020) ..........12, 13

21

22

U.S. Dep't of Educ., *Methodology for Calculating
  Allocations per Section 18004(a)(1) of the CARES Act*,
  https://www2.ed.gov/about/offices/list/ope/heerf90percentformulaallocatione
  xplanation.pdf (last visited June 23, 2020) ..............................................16, 17

U.S. Dep't of Justice, et al., Joint Letter on Immigrant Access to Housing and
  Services (Aug. 5, 2016), https://www.hhs.gov/sites/default/files/Joint-Letter-
  August-2016.pdf (last visited June 26, 2020) .....................................11, 12, 19

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.    INTRODUCTION

Some of Washington's "DREAMers"—non-citizens brought here as children—have been forced to drop out of college during the COVID-19 pandemic because they cannot afford technology or internet necessary to engage in online classes. Declaration of Brian Dixon, ECF No. 34 at ¶ 8. If educational institutions could provide them CARES Act emergency financial assistance, "they would be better able to manage the financial pressures COVID-19 has caused and remain in school" when classes resume in just over a month. *Id*.

Despite initially advocating that the *only* statutory requirement was that emergency funds be used to cover expenses related to the disruption of campus operations due to coronavirus, Defendants (the Department) now maintain that restrictions in 8 U.S.C. § 1611, a part of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), prevent institutions receiving emergency grant funds from distributing the money to noncitizens. But as one court already has ruled, the Department's first position was right. The Department lacks statutory authority to interpret PRWORA. Further, PRWORA does not apply to one-time emergency grants, distributed through state entities, and generally available to impacted populations, as the agencies *actually* charged with interpreting PRWORA have made clear. Further, the text, structure, and purpose of the CARES Act preclude the Department's new position: Congress knew how—and did—restrict eligibility on the basis of immigration status for

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

1

1    some CARES Act assistance but did not with respect to the grants at issue here.

2    This Court should grant Washington's motion for partial summary judgment.

3    ## II.    STATUTORY AND FACTUAL BACKGROUND

4    On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and

5    Economic Security Act (CARES Act). Pub. L. No. 116-136, 134 Stat. 281

6    (Mar. 27, 2020). The CARES Act appropriated approximately $14 billion for the

7    Higher Education Emergency Relief Fund (HEERF). CARES Act § 18001(b).

8    Section 18004 commanded the Secretary of Education to distribute HEERF funds

9    to institutions of higher education using a precise formula based on student

10    enrollment; those institutions were required to use at least fifty percent of those

11    funds as emergency grants to students for "expenses related to the disruption of

12    campus operations due to coronavirus . . . ." *Id*. §§ 18004(a)-(c). Section 18004

13    did not grant the Secretary any rulemaking or interpretive authority, nor any

14    discretion in implementing Congress's directives. *Id*. § 18004; ECF No. 31 at 25.

15    The Department initially empowered institutions to determine which

16    students would receive emergency student grants limited only by the express

17    requirements in the Act. On April 9, 2020, it released the portion of the CARES

18    Act funding Congress appropriated for student emergency grants along with a

19    letter from Secretary DeVos to college and university presidents which stated that

20    "[t]he CARES Act provides institutions with significant discretion on how to

21    award this emergency assistance to students." ECF No. 6-1 at 8, Ex. A. She stated

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    that "[t]he *only* statutory requirement is that the funds be used to cover expenses

2    related to the disruption of campus operations due to coronavirus (including

3    eligible expenses under a student's cost of attendance, such as food, housing,

4    course materials, technology, health care, and child care)." *Id.* (emphasis added).

5    Thus, notably at this time the Department did not believe that the citizenship

6    requirements of section 484 of Title IV of the Higher Education Act or PRWORA

7    served as a statutory bar to the disbursement of these funds.

8         But the Department reversed itself on April 21, 2020, when in connection

9    with its release of different CARES Act funding, the Department issued "FAQs"

10   that concluded that "[o]nly students who are or could be eligible to participate in

11   programs under Section 484 in Title IV of the Higher Education Act of 1965, as

12   amended (HEA), may receive emergency financial aid grants." ECF No. 6-1 at

13   129, Ex. G, FAQ #9; *see also* ECF No. 6-1 at 133, Ex. H, FAQ #5 (the "Eligibility

14   Restriction"). Notable among these Eligibility Restrictions—and listed as the

15   first prohibiting factor in the FAQ by the Department—is the prohibition on

16   distribution of Title IV funds to non-U.S. citizens. 20 U.S.C. § 1091(a)(5) (2020)

17   (requiring federal financial aid recipients "be a citizen or national of the United

18   States, a permanent resident of the United States, or able to provide evidence

19   from the Immigration and Naturalization Service that he or she is in the United

20   States for other than a temporary purpose with the intention of becoming a citizen

21   or permanent resident[.]").

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    On May 11, 2020, California Community Colleges filed suit against the

2  Department challenging the Title IV Eligibility Restrictions largely focusing on

3  the impact to non-citizen and DACA students. *See Oakley v. Devos*,

4  No. 20-cv-03215-YGR, 2020 WL 3268661 (N.D. Cal. June 17, 2020). On

5  May 19, 2020, Washington filed this suit also challenging the Title IV Eligibility

6  Restrictions and on the same day filed a motion for preliminary injunction.

7  ECF Nos. 1 and 5.

8    On May 21, 2020, the Department issued further guidance stating that, in

9  addition to the Title IV eligibility restriction, institutions were further restricted

10  from distributing funds to non-citizen students due to restrictions under 8 U.S.C.

11  § 1611. That statute is part of the Personal Responsibility and Work Opportunity

12  Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104–193, 110 Stat. 2105

13  (Aug. 22, 1996). PRWORA restricts immigrants' eligibility for certain "federal

14  public benefits," which are defined in general terms by the statute. *See* 8 U.S.C.

15  § 1611(c) (2020) (listing categories of benefits "provided to an individual,

16  household, or family eligibility unit by an agency of the United States or by

17  appropriated funds of the United States."). The definition does not include all

18  federal programs and includes several exceptions. *Id*. at §§ 1611(b), (c)(2).

19    The Department subsequently argued in their Response to Preliminary

20  Injunction that the PRWORA restrictions prevented institutions from distributing

21  funds to non-citizen students. ECF No. 22. Washington briefly responded to these

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

4

1    arguments in its Reply though with only an abbreviated ability to respond due to

2    page limitations. ECF No. 23. This Court issued a preliminary injunction, but it

3    stated that both sides made compelling arguments on the issue of whether

4    PRWORA would serve as a bar to students receiving CARES Act funding.

5    ECF No. 31 at 17-21. Thus the scope of the preliminary injunction did not reach

6    the applicability of 8 U.S.C. § 1611(a). *Id*. at 36.

7        On June 17, 2020, Judge Gonzalez Rogers from the United Stated District

8    Court of the Northern District of California granted California Community

9    College's Motion for Preliminary Injunction. ECF No. 32-1. In that Order,

10   Judge Gonzalez Rogers found the Department's argument that CARES Act

11   emergency student grants were "federal public benefits" unpersuasive and

12   enjoined the Department from enforcing 8 U.S.C. § 1611(a)'s restrictions as to

13   California institutions. ECF No. 32-1 at 24, 28-29.

14       Since the Court granted Washington's Motion for Preliminary Injunction

15   the Department published an Interim Final Rule on June 15, 2020, that went into

16   effect immediately. Declaration of R. July Simpson (Simpson Decl.), Ex. A. In

17   its contemporaneous press release, the Department nearly ignored its original

18   restriction and revealed the true purpose of the rule: "Non-citizens . . . will not

19   receive taxpayer funds." *Id*., Ex. B. Washington brings this motion to address this

20   belated rationale.

21

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# III.  ARGUMENT

## A.  Standard of Review

The Administrative Procedure Act (APA) provides that courts must "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations," "not in accordance with law," or "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §§ 706(2)(A), (C), (D) (2020). The APA requires this Court to conduct "plenary review of the Secretary's decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

An agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). In determining whether agency action exceeds statutory authority, "the question . . . is always whether the agency has gone beyond what Congress has permitted it to do[.]" *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297-98 (2013). When Congress has not delegated interpretive authority and yet an agency takes it upon itself to exercise that authority, the agency's action is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006); *Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019). Even where an agency has authority to interpret a statute, its interpretation will receive no deference where "the intent of Congress is clear" on the question at issue. *Chevron*, 467 U.S. at 842 & n.9.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B.    The Department Has No Authority to Enforce PRWORA or to Impose Eligibility Restrictions on HEERF Funds**

Neither the CARES Act nor PRWORA itself indicate that any immigration-related eligibility restrictions apply to HEERF funds. The only assertion that PRWORA would bar this sort of transfer comes from the Department's third "nonbinding" guidance document from May 21, then later in the Interim Final Rule. These attempts to extend PRWORA's restrictions beyond their reach are invalid as the Department has no rulemaking or regulatory authority over eligibility for HEERF funds, and their novel "interpretation" of PRWORA is entitled to no deference.

First, as this Court and the Northern District of California have recognized, the Department does not have any authority to impose conditions on institutions' usage of HEERF funds, or add, change, or define eligibility criteria for students' receipt of such assistance. *See* ECF No. 31 at 8-9 (Department does not have rulemaking authority under the CARES Act); *Oakley*, 2020 WL 3268661, at *9-12 (finding Department had no rulemaking authority under Section 18004, and "likely exceeded its authority by imposing eligibility requirements on the distribution of HEERF Student Assistance"). Neither Section 18004 nor the CARES Act as a whole created any program of "federal public benefits" for the Department of Education to "administer." Because the Department does not have the rulemaking or regulatory authority to "administer" the HEERF funds as a federal program, it cannot define or alter the eligibility criteria set by Congress.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *See* 8 U.S.C. § 1614 (2020) (agency that "administers" program of federal public

2    benefits must notify public of changes in eligibility). To the extent the

3    Department contends its guidance or Interim Final Rule interpretations are the

4    product of any delegated authority, they are mistaken.

5            Second, the Department's interpretation of PRWORA is unpersuasive and

6    deserves no deference. Because the Department does not "administer" any

7    program involving the HEERF funds, their interpretation of whether those funds

8    are "federal public benefits" is not afforded *Chevron* deference, especially when

9    such an interpretation adds a condition to the funds' usage not present in the

10   statute. *See* ECF No. 31 at 8-9 (Department's interpretation of Section 18004 not

11   entitled to *Chevron* deference). Nor is the Department's inconsistent

12   interpretation of the applicability of PRWORA and other statutory proscription

13   afforded any *Skidmore* deference. *Id*. at 9-10. As explained below, the

14   Department's interpretation of PRWORA's applicability is contrary to the

15   language of the CARES Act and PRWORA itself (which does not afford the

16   Department authority to set conditions on HEERF funds through PRWORA

17   enforcement), contradicted by other agencies' guidance, and ignores key

18   considerations of the present situation.

19

20

21

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

8

**C.    PRWORA Does Not Prevent Institutions From Distributing HEERF Funds to Non-Citizens**

**1.    HEERF emergency student grants are not "federal public benefits"**

PRWORA does not bar institutions from distributing funds to non-citizen students because the HEERF student grants are not "federal public benefits" as defined by that statute. Under PRWORA, a "federal public benefit" is (a) "any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States;" or (b) "any . . . benefit[] . . . for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. § 1611(c)(1) (2020).

Despite the superficial breadth of this statutory definition, "federal public benefits" refer to a much narrower subset of federal programs and their administering agencies than the plain text indicates. *See* 8 U.S.C. § 1611(c) (2020) (listing categories of benefits "provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States."). They do not apply to *all* federal, state, and locally funded activities and programs. *Id*. In fact, the statute includes many exceptions to the meaning of federal public benefit. *Id*. at §§ 1611(b), (c)(2). These include access to important emergency health services, public health assistance,m, and community-based services necessary to protect life and safety. *Id*.

The limited scope of PRWORA's definition of "federal public benefits"

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

was clarified after its passage through multiple formal agency actions by the Department of Justice and the U.S. Department of Health and Human Services (HHS), among others. Indeed, PRWORA designated HHS as the agency responsible for assisting the Attorney General in promulgating its implementing regulations. *See* 8 U.S.C. §§ 1642(a)(1)-(2) (2020).

After PRWORA's passage, the Attorney General was tasked with promulgating the implementing regulations. 8 U.S.C. § 1642(a)(1) (2020). In 2001, after consulting with other Federal agencies, including HUD and HHS, the Attorney General issued an Order identifying multiple types of programs, services, or assistance do not qualify as programs of "federal public benefits," including:

> (a)    Crisis counseling and intervention programs; services and assistance relating to child protection, adult protective services, violence and abuse prevention, victims of domestic violence or other criminal activity; or treatment of mental illness or substance abuse;
> (b)    Short-term shelter or housing assistance for the homeless, for victims of domestic violence, or for runaway, abused, or abandoned children;
> (c)    Programs, services or assistance to help individuals during periods of heat, cold, or other adverse weather conditions;
> (d)    Soup kitchens, community food banks, senior nutrition programs such as meals on wheels, and other such community nutritional services for persons requiring special assistance;
> (e)    Medical and public health services (including treatment and prevention of diseases and injuries) and mental health, disability, or substance abuse assistance necessary to protect life or safety;
> (f)    Activities designed to protect the life or safety of workers, children and youths, or community residents; and
> (g)    Any other programs, services, or assistance necessary for the protection of life or safety.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      Attorney General Order No. 2353-2001, 66 FR 3613-02, 2001 WL 31994

2      (Jan. 16, 2001). As these agencies observed again in 2016, "[i]t is also important

3      to note that there are many government-funded programs and services that are

4      not considered 'federal public benefits' or 'state or local public benefits' and

5      therefore are not limited by the restrictions on immigrant access to public benefits

6      that were put in place by PRWORA." *See* U.S. Dep't of Justice, et al., Joint Letter

7      on Immigrant Access to Housing and Services, at 1, 3 (Aug. 5, 2016),

8      https://www.hhs.gov/sites/default/files/Joint-Letter-August-2016.pdf        (last

9      visited June 26, 2020) ("DOJ Joint Letter") (reminding recipients of federal

10     financial assistance "that they should not withhold certain services based on

11     immigration status when the services are necessary to protect life or safety.").

12         HHS, which administers a number of programs covered by PRWORA such

13     as the Temporary Assistance to Needy Families (TANF) Program and Medicaid,

14     offered the most widely cited interpretation of "federal public benefits." *See* HHS

15     Notice, PRWORA; Interpretation of 'Federal Public Benefit,' 63 FR 41658-01,

16     1998 WL 435846 (Aug. 4, 1998) ("HHS Notice"). HHS advised that part A of

17     PRWORA's definition of "federal public benefit" "generally include[s]

18     agreements or arrangements between Federally funded programs and individuals,

19     such as research grants, student loans, or patent licenses." *Id*. at 41659. HHS

20     acknowledges that "many government-funded programs and services . . . are *not*

21     considered 'federal public benefits' . . . and therefore are not limited by the

22

PLAINTIFF'S MOTION FOR                    11          ATTORNEY GENERAL OF WASHINGTON
PARTIAL SUMMARY JUDGMENT                                        Complex Litigation
                                                          800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                                       Seattle, WA 98104-3188
                                                               (206) 464-7744

1    restrictions on immigrant access to public benefits that were put in place by

2    PRWORA." DOJ Joint Letter at 3 (emphasis added).

3        Similarly, HHS said the term "grants" refers to grants to individuals, not

4    "block grants" provided to states or localities. HHS Notice, 63 FR at 41659. HHS

5    stated that "unless the authorizing statutes require that the characteristics of these

6    groups form the basis for denial of services or benefits, these are not benefits."

7    *Id*. Under the HHS Notice, assistance that is "generally targeted to communities"

8    and does not "mandate ineligibility for individuals [who] do not meet certain

9    criteria" is not a federal public benefit under subsection (c)(1)(B). *Id*.

10        Several classes of benefits—especially those that are "generally targeted

11   to communities"—have been determined to fall outside of PRWORA's federal

12   public benefit restrictions. For example, the Maternal and Child Health Services

13   Block Grant, *see* 42 U.S.C. § 701, which makes access to health care services for

14   mothers and children available to low-income women and families is "a benefit

15   targeted to certain populations based on their characteristics," rather than a

16   benefit intended for individual eligibility units, and is therefore "not a 'Federal

17   public benefit.' " HHS Notice, 63 FR at 41660.

18        Similarly, funds distributed through the Low-Income Home Energy

19   Assistance Program (LIHEAP) that are used to weatherize structures that house

20   immigrants of all statuses are a community benefit, with no immigration status

21   verification of residents required. 42 U.S.C. §§ 6861 et seq. (2020); *see also*

22

1    Janet M. Fox, *LIHEAP IM 1999-10 on Federal Public Benefits Under the*
2    *Welfare Reform Law -- Revised Guidance*, Office of Community Services,
3    U.S.    Dep't    of    Health    &    Human    Servs.    (June    15,    1999),
4    https://www.acf.hhs.gov/ocs/resource/federal-public-benefits-under-the-
5    welfare-reform-law-revised-guidance (last visited June 26, 2020).

6         Community Development Block Grant programs administered by HUD,
7    42 U.S.C. §§ 5103 et seq., also do not contain restrictions under PRWORA. Each
8    of these programs direct their benefits to communities, rather than to individuals
9    or family units based on particularized eligibility criteria.

10        Here, the CARES Act and specifically the HEERF program were enacted
11   to respond to a once-in-a-lifetime international emergency and public health
12   crisis caused by COVID-19. HEERF funds provide relief to institutions and their
13   students due to the significant disruption associated with COVID-19 and may be
14   used to address a broad range of needs due to this emergency caused by
15   COVID-19 including, but not limited to, food, housing, technology, health care,
16   or childcare. The program is thus most similar to the federally funded programs
17   that are exempted from the restrictions found in 1611(a) like the programs that
18   address public health, medical emergencies, disaster relief, or are "necessary for
19   the protection of life or safety."

20        Moreover, as explained by HHS, the HEERF funds are not "grants" to
21   individuals. They are "block grants" targeted toward institutions of higher
22

1    education, not grants of "federal public benefits" to individuals. *See Rural Alaska*

2    *Cmty. Action Program v. Smith*, 847 F.2d 535, 536 (9th Cir. 1988) ("the block

3    grant system . . . permits [federal fund grantees] to administer the program[] with

4    minimal federal involvement and few federal procedural requirements[.]").

5    HEERF funds are outside the ambit of the definition of "federal public benefits"

6    because they (1) are assistance targeted to institutions and students generally and

7    thus are assistance "generally targeted to [a] communit[y]," and (2) are not funds

8    that require that any characteristics of those students form the basis for the denial

9    of the grants.[2] HHS Notice, 63 FR at 41659.

10       The fact that HEERF funds may flow through institutions to individuals

11    does not change this analysis. Like other federally allocated block grant monies

12    not subject to PRWORA, HEERF funds are intended to benefit educational

13    communities as a whole, allowing colleges and their populations to "prevent,

14    prepare for, and respond to coronavirus[.]" CARES Act § 18004(a).

15    _____

16       [2] For these reasons, the Northern District of California was persuaded that

17    PRWORA's restrictions would not apply to HEERF funds. *Oakley*,

18    2020 WL 3268661, at *16 ("[T]he Court is not persuaded by the Secretary's

19    argument that HEERF funds would constitute 'Federal public benefits' from

20    which most non-citizens would be denied eligibility, nor that the Secretary's

21    election to apply 1611(a)'s restrictions to these funds as an eligibility condition

22    would be lawful."). This Court should hold the same.

PLAINTIFF'S MOTION FOR                          14          ATTORNEY GENERAL OF WASHINGTON
PARTIAL SUMMARY JUDGMENT                                              Complex Litigation
                                                                  800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                                                Seattle, WA 98104-3188
                                                                        (206) 464-7744

1    "Mixed-benefits" programs, where some federal funds are provided to broad

2    communities and others flow directly to individuals or families, are not

3    automatically considered "federal public benefits." *See* HHS Notice, 63 FR at

4    41660 ("Programs that are primarily designed to target and provide services to

5    communities should not be burdened with new verification procedures merely

6    because they may include some services that flow more directly to the individual,

7    household or family.").

8        Given the non-exhaustive nature of PRWORA and these longstanding

9    agency interpretations, Congress would have no reason to assume that a program

10   like HEERF would be restricted by the provisions of PRWORA. In fact, as

11   described above, the careful restriction of the Department's rulemaking and

12   administrative authority in Section 18004 prevents the Department from treating

13   them as such. The emergency community benefits flowing from HEERF

14   funds—structured as a formula block grant—place those funds outside of the

15   parameters of the "federal public benefits" restricted under PRWORA.

16       **2.    PRWORA's "notwithstanding" clause does not mean**
              **PRWORA automatically applies to HEERF Funds**
17
         As discussed above, PRWORA does not apply in all cases where there is
18
     a dispersal of federal assistance. Further, PRWORA's "notwithstanding" clause
19
     does not and cannot dispel Congress's clear intent that the one-time, emergency
20
     grants set forth in Section 18004 are not subject to immigration-related
21
     restrictions. "Notwithstanding" provisions in statutes do not mean that their
22

1    statutes apply broadly and automatically to any subsequent law, as they "can be

2    overridden by other statutory indicators." *Ledezma-Galicia v. Holder*, 636 F.3d

3    1059, 1071 n.12 (9th Cir. 2010). The CARES Act contains such indicators.

4        Here, the intent behind the HEERF Funds in Section 18004 is clear:

5    institutions may distribute the emergency assistance funds they receive to any

6    students, and the Department may not impose restrictions limiting this discretion.

7    And as this Court and the Northern District of California have observed, the

8    CARES Act repeatedly manifests Congress's intent that HEERF funds remain

9    free from extraneous eligibility limitations. ECF Nos. 31 at 26-30 and 32-1 at

10    12-18, 23-24, 28. Section 18004, and the CARES Act in general, make no

11    mention of PRWORA or its eligibility restrictions. To the contrary, the structure

12    of Section 18004 reflects the intent of Congress that all students, regardless of

13    immigration status, be eligible for grants.

14        Subsection (a)(1) of § 18004 mandates that the Secretary "shall allocate"

15    HEERF Assistance according to a precise formula requiring counting all students

16    not previously enrolled only in online learning. Of that calculation 75% are Pell

17    Grant Recipients who must meet certain conditions including income

18    requirements, but the remaining 25% are *all* students, including those who are

19    ineligible under § 1611, minus distance learners.[3] Section 18004(c)'s direction

20    _____

21        [3] This process was employed to calculate each IHE's allocation.

22    *See* U.S. Dep't of Educ., *Methodology for Calculating*

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

16

1   that institutions "shall use no less than 50 percent" of the funds "for emergency

2   financial aid grants to students" for "eligible" expenses related to COVID-19,

3   including "a student's cost of attendance." The formula's inclusion of students

4   irrespective of PRWORA eligibility shows that Congress intended for these

5   restrictions not to apply to HEERF Assistance.

6        It would be illogical and contrary to Congressional intent to hold that the

7   same terms take on different meaning in the same section. *City of Los Angeles v.*

8   *Barr*, 941 F.3d 931, 941 (9th Cir. 2019) ("Under the normal rule of statutory

9   construction, we presume that identical words used in different parts of the same

10   act are intended to have the same meaning.") (internal quotation marks and

11   citations omitted). Nor would it make sense to include certain students for

12   funding formula and allocation purposes, but to categorically exclude them from

13   the relief that the program was intended to provide.

14        Moreover, while Congress did not impose immigration status eligibility

15   restrictions on HEERF assistance, it did restrict other assistance provided under

16   the CARES Act. The lack of mention in Section 18004 of PRWORA or any other

17   restriction on eligibility is telling, as other sections of the CARES Act do contain

18   some eligibility restriction on recipients of grants or assistance. For instance, the

19   ————————————

20   *Allocations    per    Section    18004(a)(1)    of    the    CARES    Act*,

21   https://www2.ed.gov/about/offices/list/ope/heerf90percentformulaallocationexp

22   lanation.pdf (last visited June 23, 2020).

PLAINTIFF'S MOTION FOR          17          ATTORNEY GENERAL OF WASHINGTON
PARTIAL SUMMARY JUDGMENT                    Complex Litigation
NO. 2:20-cv-00182-TOR                         800 Fifth Avenue, Suite 2000
                                              Seattle, WA 98104-3188
                                              (206) 464-7744

1    CARES Act specifically excludes "any nonresident alien individual" from

2    eligibility for recovery rebates under Section 2201. *See* CARES Act §§ 2201,

3    6428(d) (recovery rebates are available for "eligible individuals," and excludes

4    "nonresident alien individual[s]").

5         The CARES Act also contains a number of other provisions explicitly

6    mandating individual eligibility criteria. *See, e.g.*, CARES Act

7    §§ 1102(a)(2)(36)(A) (defining "eligible recipients" for paycheck protection

8    program); 2107(b)(1) (describing unemployment compensation as being

9    available "for each eligible individual"); 18003(d)(8) (can use funds "to provide

10   meals to eligible students"). No such eligibility restriction on individuals is

11   present in Section 18004; instead, the eligibility for grants is simple: recipients

12   must be "students." *Id.* § 18004(c). Where one section of a statute explicitly states

13   parameters for its application, but another section is silent, those parameters

14   should be presumed to not apply to the latter. *Kucana v. Holder*, 558 U.S. 233,

15   249 (2010) ("[W]here Congress includes particular language in one section of a

16   statute but omits it in another section of the same Act, it is generally presumed

17   that Congress acts intentionally and purposely in the disparate inclusion or

18   exclusion.") (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009));

19   *see also Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (same).

20        Thus, it is presumed that Congress intended that immigration-related

21   eligibility tests would not apply in Section 18004, and this presumption is

22

PLAINTIFF'S MOTION FOR                          18          ATTORNEY GENERAL OF WASHINGTON
PARTIAL SUMMARY JUDGMENT                                              Complex Litigation
                                                                  800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                                               Seattle, WA 98104-3188
                                                                       (206) 464-7744

1    supported by the text and structure of Section 18004 and the CARES Act itself.

2    Funds made available to educational institutions through HEERF were not

3    intended to be restricted based on immigration status, whether they are used to

4    address disruptions in instruction, or distributed to students. Congress established

5    emergency aid such as the HEERF funds to support institutions in protecting the

6    integrity of their communities during a crisis. *See, e.g.*, DOJ Joint Letter at 2-3

7    (joint position of the DOJ, HHS, and HUD that PRWORA's immigration status

8    verification requirements do not restrict access to specified short-term measures

9    which "provid[e] basic needs and safety while they seek to rebuild their lives.").

10    Ultimately, the CARES Act and PRWORA are two distinct statutes with

11    different purposes and structure. PRWORA was enacted with the objective of

12    decreasing long-term dependency on public benefits, "remov[ing] the incentive

13    for illegal immigration provided by the availability of public benefits," 8 U.S.C.

14    § 1601(6), and "limit[ing] lifetime welfare benefits," H.R. Rep. No. 104-651, at 3

15    (1996). That objective "would not apply to HEERF, a one-time federal funding

16    allocation to address emergency needs during a national public health crisis."

17    *Oakley*, 2020 WL 3268661, at *16 n.30.

18    Further, PRWORA's general restrictions are inapplicable to the more

19    specific provisions governing HEERF funds. "Where two statutes conflict, the

20    later-enacted, more specific provision generally governs." *United States v.*

21    *Juvenile Male*, 670 F.3d 999, 1008 (9th Cir. 2012). Thus, the specific policy

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    articulated in the CARES Act controls this Court's construction of PRWORA's

2    applicability. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143

3    (2000) ("[A] specific policy embodied in a later federal statute should control our

4    construction of the [earlier] statute, even though it ha[s] not been expressly

5    amended.") (internal citations omitted).

6         Although the Department has argued that this omission may be the result

7    of the haste with which Congress adopted the CARES Act, the assumption that

8    Congress made a mistake is contrary to all canons of statutory construction. By

9    contrast, a cardinal canon of statutory construction requires that "courts must

10   presume that a legislature says in a statute what it means and means in a statute

11   what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

12   Congress thus knew how to—and in fact did—restrict eligibility on the basis of

13   immigration status for some assistance under the CARES Act but did not do so

14   with respect to HEERF assistance.

15                      **IV.   CONCLUSION**

16        For the foregoing reasons this Court should grant Washington's motion for

17   partial summary judgment.

18

19

20

21

22

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      RESPECTFULLY SUBMITTED this 29th day of June 2020.

2                                ROBERT W. FERGUSON
                                 Attorney General of Washington
3

4                                /s/ Spencer W. Coates
                                 SPENCER W. COATES, WSBA #49683
5                                R. JULY SIMPSON, WSBA #45869
                                 JEFFREY T. SPRUNG, WSBA #23607
6                                PAUL M. CRISALLI, WSBA #40681
                                 Assistant Attorneys General
7                                800 Fifth Avenue, Suite 2000
                                 Seattle, WA 98104-3188
8                                (206) 464-7744
                                 spencer.coates@atg.wa.gov
9                                july.simpson@atg.wa.gov
                                 jeff.sprung@atg.wa.gov
10                               paul.crisalli@atg.wa.gov
                                 Attorneys for Plaintiff State of Washington
11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR                    21          ATTORNEY GENERAL OF WASHINGTON
PARTIAL SUMMARY JUDGMENT                                      Complex Litigation
                                                          800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                                        Seattle, WA 98104-3188
                                                               (206) 464-7744

1     **<u>DECLARATION OF SERVICE</u>**

2          I hereby declare that on this day I caused the foregoing document to be

3     electronically filed with the Clerk of the Court using the Court's CM/ECF System

4     which will serve a copy of this document upon all counsel of record.

5          DATED this 29th day of June 2020, at Seattle, Washington.

6

7                              */s/ Spencer W. Coates*
                              SPENCER W. COATES, WSBA #49683
8                              Assistant Attorney General

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR                  22          ATTORNEY GENERAL OF WASHINGTON
PARTIAL SUMMARY JUDGMENT                                    Complex Litigation
NO. 2:20-cv-00182-TOR                                    800 Fifth Avenue, Suite 2000
                                                           Seattle, WA 98104-3188
                                                              (206) 464-7744