UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>  Plaintiff,<br><br>  v.<br><br>BETSY DeVOS, in her official capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, a federal agency,<br><br>  Defendants. | NO. 2:20-CV-0182-TOR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment (ECF No. 37). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 37) is denied.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

# BACKGROUND

This case concerns the legality of certain eligibility restrictions promulgated by Defendants to limit receipt of emergency higher education relief funds allocated by Congress in response to the ongoing COVID-19 pandemic. The following facts are drawn from Plaintiff's Complaint and are undisputed as relevant and material to resolution of the instant motion.

**A. CARES Act**

In late March 2020, Congress acted to address the COVID-19 outbreak. ECF No. 1 at 13, ¶ 32. On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") into law. ECF No. 1 at 13, ¶ 33; Pub. L. No. 116-136, 134 Stat. 281. The CARES Act appropriates federal funding for a wide array of purposes related to COVID-19, including a series of provisions directing funding through the Department of Education ("the Department"). ECF No. 1 at 13, ¶ 34. Specifically, the CARES Act appropriates $30,750,000,000 to the Department for an "Education Stabilization Fund." *Id.*

Section 18001 directs the Secretary of Education ("the Secretary") to allocate the Education Stabilization Fund for specified purposes in specified percentages. ECF No. 1 at 13, ¶ 35. Section 18001 directs the Secretary to allocate to three funds created by the Act: the Governor's Emergency Education Relief Fund, the Elementary and Secondary School Emergency Relief Fund, and

the Higher Education Emergency Relief Fund ("HEERF").  ECF No. 1 at 13-14, ¶ 35.

Subsection (a)(1) of Section 18004 directs the Secretary how to allocate the vast majority of the HEERF: "90 percent to each institution of higher education to prevent, prepare for, and respond to coronavirus by apportioning it" according prescribed percentages based on full-time equivalent of students receiving and not receiving Federal Pell Grants.  ECF No. 1 at 14, ¶ 37; CARES Act § 18004(a)(1).  Subsection (a)(2) directs the Secretary to allocate 7.5% of the HEERF to minority-serving institutions based on a non-discretionary formula.  ECF No. 1 at 14, ¶ 38; CARES Act § 18004(a)(2).  Lastly, subsection (a)(3) grants the Secretary discretion over the remaining 2.5% of the HEERF to institutions "that the Secretary determines have the greatest unmet needs related to coronavirus."  ECF No. 1 at 15, ¶ 39; CARES Act § 18004(a)(3).  The Act further provides that the 90% allocation of HEERF funds "shall be distributed by the Secretary using the same systems as the Secretary otherwise distributes funding to each institution under title IV of the Higher Education Act of 1965."  ECF No. 1 at 15, ¶ 41; CARES Act § 18004(b).

Subsection (c) instructs how institutions of higher education are to use CARES Act funds: "[A]n institution of higher education receiving funds under this section may use the funds received to cover any costs associated with significant

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

changes to the delivery of instruction due to the coronavirus," subject to certain discrete subject limitations. ECF No. 1 at 16, ¶ 42; CARES Act § 18004(c). The Act further provides: "Institutions of higher education shall use no less than 50 percent of such funds to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care)." ECF No. 1 at 16, ¶ 43; CARES Act § 18004(c).

### B. Eligibility Guidelines

On April 9, 2020, the Department released a portion of the CARES Act funding Congress appropriated for student emergency grants. ECF No. 1 at 17, ¶ 45. That same day, the Department issued a letter from the Secretary to college and university presidents, a certification form for higher education institutions, a list of individual allocations to colleges and universities, and a methodology for how it calculated the allocations schools were scheduled to receive. ECF No. 1 at 17, ¶ 46; ECF No. 6-1, Ex. B-D. The Secretary's April 9 letter states, in relevant part:

> The CARES Act provides institutions with significant discretion on how to award this emergency assistance to students. This means that each institution may develop its own system and process for determining how to allocate these funds, which may include distributing the funds to all students or only to students who demonstrate significant need. The only statutory requirement is that the funds be used to cover expenses related to the

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

> disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care).

ECF No. 1 at 17-18, ¶ 48; ECF No. 6-1 at 8.

The Department's certification form states in relevant part:

> Recipient retains discretion to determine the amount of each individual emergency financial aid grant consistent with all applicable laws including non-discrimination laws. … The Secretary does not consider these individual emergency financial aid grants to constitute Federal financial aid under Title IV of the HEA.

ECF No. 1 at 19, ¶ 50; ECF No. 6-1 at 11. Specific recommendations to recipients as to how to allocate the funds follow language such as "the Secretary recommends" and "the Secretary strongly encourages." *Id.*

On April 21, 2020, the Department announced it would release the additional funds the CARES Act appropriated for institutions' own use. ECF No. 1 at 21, ¶ 53. On that same day, the Department posted a document entitled "Frequently Asked Questions about the Emergency Financial Aid Grants to Students under Section 18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act" ("the FAQs"). ECF No. 1 at 21-22, ¶ 55. In the FAQs, the Department purported to answer the question, "What students are eligible to receive emergency financial aid grants from the HEERF?" *Id.* The Department's response (the "eligibility restriction") states:

> Only students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

>(HEA), may receive emergency financial aid grants. If a student has filed a Free Application for Federal Student Aid (FAFSA), then the student has demonstrated eligibility to participate in programs under Section 484 [of] the HEA. Students who have not filed a FAFSA but who are eligible to file a FAFSA also may receive emergency financial aid grants. The criteria to participate in programs under Section 484 of the HEA include but are not limited to the following: U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is male); and a high school diploma, GED, or completion of high school in an approved homeschool setting.

*Id.*; ECF No. 6-1 at 128, ¶ 9. On April 21, 2020, the Department published a second set of FAQs regarding the institutional portion of the HEERF, which similarly state that "students must be eligible to receive emergency financial aid grants, and only students who are or could be eligible to participate in programs under Section 484 of Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial grants." ECF No. 1 at 22-23, ¶ 57; ECF No. 6-1 at 133, ¶ 5.

Section 484 of Title IV of the HEA ("Title IV") contains numerous requirements for student eligibility for financial aid, including: U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is male); a high school diploma, GED, or completion of high school in an approved homeschool setting; the student is not in default on any loan issued by the Department; and the student has maintained at least a cumulative C average, or its equivalent or academic standing consistent with the requirements

for graduation.  ECF No. 1 at 23, ¶ 58; 20 U.S.C. § 1091.  Although the Department's FAQs state that a FAFSA is not required for a student to be eligible for CARES Act funds, having a FAFSA on file is the primary practicable means for an institution to determine whether a student is eligible to participate in student aid programs and meets all applicable eligibility guidelines.  ECF No. 1 at 24, ¶ 59.

The Department's certification forms for the two HEERF disbursements require the recipient to acknowledge that it may be subject to legal liability if it does not comply with the terms of the certification form "and/or all relevant provisions and requirements of the CARES Act or any other applicable law."  ECF No. 1 at 24, ¶ 61.

**C.  Procedural Background**

On May 19, 2020, Plaintiff, on behalf of itself and as *parens patriae* in protecting the health and well-being of its residents, filed a Complaint for declaratory and injunctive relief and also filed a Motion for Preliminary Injunction.  ECF Nos. 1, 5.  Specifically, Plaintiff sought to enjoin Defendants from enforcing the emergency financial aid grant eligibility restriction in Washington.  ECF No. 5 at 12.  On June 2, 2020, in its Opposition to Plaintiff's Motion for Preliminary Injunction, Defendants argued for the first time in these proceedings that, independently from Plaintiff's legal challenges to the eligibility restriction, Plaintiff's requested injunctive relief was partially barred by the Personal

Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), 8 U.S.C. § 1611, which would prohibit distribution of emergency financial aid grants to certain non-qualified alien students. ECF No. 22.

On June 15, 2020, Defendants promulgated the Interim Final Rule. ECF No. 38-1. The Interim Final Rule provides justification and reasoning for the Defendants to promulgate a rule which interprets a perceived ambiguity in the CARES Act definition of "student" recipients eligible for "emergency financial aid grants." ECF No. 28-1 at 7 (duplicated at ECF No. 38-1). Defendants have concluded that Congress intended the category of those eligible for "emergency financial aid grants to students" in Section 18004 of the CARES Act to be limited to those individuals eligible for Title IV assistance under the HEA. *Id*. at 8. This interpretation, thus, necessarily also prohibits distribution of HEERF funds to those aliens prohibited from receiving benefits under PRWORA. *Id*.

On June 12, 2020, this Court granted Plaintiff's Motion for Preliminary Injunction and enjoined Defendants from implementing or enforcing the provisions of the April 21, 2020 guidance and the Interim Final Rule that restrict the discretion of higher education institutions in the State of Washington to determine which students will receive CARES Act emergency financial assistance grants to Title IV eligible students. ECF No. 31. The Court did not extend the preliminary injunction to other statutory restrictions imposed by PRWORA. *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

On June 29, 2020, Plaintiff filed the instant Motion for Partial Summary Judgment, seeking summary judgment only on the question of whether PRWORA operates as an independent statutory restriction on how HEERF emergency financial aid grants are distributed to students. ECF No. 37.

## DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. Further,

a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Nature of the PRWORA Challenge

As an initial matter, the Court notes the unique procedural posture of Plaintiff's PRWORA challenge. Although the Court granted Plaintiff's Motion for Preliminary Injunction, it declined to extend the injunction to Plaintiff's argument that emergency financial aid grant distribution was governed by PRWORA. ECF No. 31. Plaintiff now seeks summary judgment on the PRWORA argument specifically to resolve the question of whether, in light of the preliminary injunction, Washington's higher educational institutions may distribute CARES Act financial aid grants to "DREAMers," non-citizens brought to the United States as children. ECF No. 37 at 7.

At the time the Complaint was filed, the Department's eligibility restriction did not make reference to PRWORA. *See* ECF No. 1. In the current proceedings,

1 it was not until Defendants filed their opposition to Plaintiff's Motion for

2 Preliminary Injunction that Defendants argued, as a litigation position, that

3 Plaintiff's requested injunctive relief was partially barred by PRWORA. ECF No.

4 22. Later, in the Interim Final Rule published on June 15, 2020, Defendants

5 reiterated their position that HEERF distributions are subject to PRWORA. ECF

6 No. 28-1. The PRWORA argument is not a cause of action.

7 Plaintiff now characterizes Defendants' PRWORA argument as two distinct

8 types of legal issues: (1) an attempt to exercise agency rulemaking authority and

9 promulgate a rule regarding PRWORA's applicability to HEERF funds, based on

10 the May 21, 2020 guidance document and the June 15, 2020 Interim Final Rule;

11 and (2) a litigation position adopted to defend against Plaintiff's requested

12 injunctive relief. ECF No. 37 at 13-15. Given the contents of the Complaint and

13 the status of the current proceedings, the Court agrees with Defendants that the

14 relevant scope of the current motion is the legality of Defendants' PRWORA

15 argument as raised in response to Plaintiff's requested injunctive relief. ECF No.

16 52 at 12. Although the Interim Final Rule discusses PRWORA as a factor that

17 informed Defendants' rulemaking process, the Interim Final Rule itself purports to

18 govern the Title IV issue, not the PRWORA issue. ECF No. 38-1. Accordingly,

19 the Court considers the merits of the parties' legal arguments in the scope of a

20

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 11

defense to Plaintiff's requested injunctive relief, not as an exercise of rulemaking authority.

### C. Federal Public Benefit

Plaintiff contends it is not prohibited from distributing HEERF emergency financial aid grants to noncitizen students because the funds are not a "federal public benefit" within the meaning of PRWORA. ECF No. 37 at 15-21.

PRWORA provides "Notwithstanding any other provision of law … an alien who is not a qualified alien … is not eligible for any Federal public benefit[.]" 8 U.S.C. § 1611(a). "Federal public benefit" is defined to mean "any grant … provided by an agency of the United States or by appropriated funds of the United States" or "any … public or assisted housing, postsecondary education, food assistance, … or any other similar benefit for which payments or assistance are provided to an individual, … by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. § 1611(c)(1). The statute carves out a series of exceptions, including medical assistance, non-cash emergency disaster relief, public health assistance for immunization and treatment of communicable disease, and in-kind community services, which may be provided to non-qualified aliens. 8 U.S.C. § 1611(b)(1)(A)-(E). The statute also makes specific exceptions for certain benefits payable under the Social Security Act and the Railroad Retirement Act. 8 U.S.C. § 1611(b)(2)-(5).

Despite Plaintiff's characterization to the contrary, PRWORA's definition of "federal public benefit" is expansive. The individual student aid grants authorized by Section 18004 of the CARES Act clearly qualify as a grant or "postsecondary education … or any other similar benefit for which payments or assistance are provided to an individual … by appropriated funds of the United States" within the plain meaning of those terms. 8 U.S.C. § 1611(c).

Plaintiff attempts to avoid this broad statutory definition by pointing to implementing regulations promulgated by the United States Attorney General and the Department of Health and Human Services which identify certain programs that do not qualify as "federal public benefits" under PRWORA. ECF No. 37 at 16-21. Even if these regulations are relevant to interpreting PRWORA in the context of HEERF emergency financial aid grants, they do not exempt those funds from the general definition of federal public benefits. The specific programs Plaintiff identifies as PRWORA exceptions, and the regulations that authorize them, are the types of in-kind programs, services, and goods distributed at the community level that PRWORA explicitly exempts from its general prohibitions. 8 U.S.C. § 1611(b)(1)(D). Plaintiff does not identify an example of direct cash assistance provided to individuals that is excepted from PRWORA's restrictions, absent some other express statutory exemption. That the grants are ultimately distributed by schools does not change this analysis. *Pimentel v. Dreyfus*, 670 F.3d

1096, 1099 n.4 (9th Cir. 2012) (under PRWORA, "a federally funded benefit is still considered a "federal public benefit" even if administered by a state or local agency."). The CARES Act appropriates money for the Department of Education to allocate to higher education institutions, which are then statutorily required to redistribute at least 50% of that money directly to students in the form of emergency financial aid grants. CARES Act § 18004(c). Under the plain meaning of the statute, the emergency financial aid grants to students authorized by Section 18004 of the CARES Act are a "federal public benefit" within the meaning of PRWORA.

### D. Statutory Conflict

In the alternative, Plaintiff argues that certain features of the CARES Act indicate a congressional intent to override the otherwise generally applicable limitations on federal public benefits imposed by PRWORA. ECF No. 37 at 21-26.

"The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). "[A]s a general proposition[,] … statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws." *United States v. Novak*, 476 F.3d 1041, 1046 (9th

Cir. 2007). A "notwithstanding" clause "can be overridden by other statutory indicators." *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1071 n.12 (9th Cir. 2010). However, "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Id.* at 1069 (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007).

Here, Plaintiff argues that certain features of the CARES Act override PRWORA's "notwithstanding" clause. ECF No. 37 at 21-26. First, as the Court explained in the Order Granting Plaintiff's Motion for Preliminary Injunction, another provision of the CARES Act specifically excludes noncitizens from receiving funds under other relief allocation. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (citation omitted). The CARES Act section authorizing $1,200 payments to individuals specifically excludes "nonresident alien individuals" from eligibility. *See* CARES Act § 2201 ("Recovery Rebates for Individuals"). That Congress specifically included language to exclude noncitizens from eligibility for individual rebate funds, but failed to include specific language to exclude noncitizens from eligibility for HEERF funds, implies that the omission was intentional. *Gozlon-Peretz*, 498 U.S. at 404.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

Second, Defendants' argument would require the Court to ascribe different meanings to the term "students" throughout a single section of the CARES Act. "Under the 'normal rule of statutory construction,' we presume that 'identical words used in different parts of the same act are intended to have the same meaning.'" *City of Los Angeles v. Barr*, 941 F.3d 931, 941 (9th Cir. 2019) (quoting *Dep't of Revenue of Or. v. ACF Indus.*, 510 U.S. 332, 342 (1994)). The CARES Act requires institutions of higher education to use HEERF funds to provide emergency financial aid grants to "students," which Defendants now contend excludes non-qualified alien students. CARES Act § 18004(c). However, a prior subsection of the same provision calculates a portion of an institution's allocation of HEERF funds based on its "relative share of full-time equivalent enrollment of students who were not Federal Pell Grant recipients," excluding only those "who are not exclusively enrolled in distance education courses prior to the coronavirus emergency." CARES Act § 18004(a)(1)(B). This definition does not exclude noncitizen students. Indeed, the Department has already calculated each institution's HEERF allocation without any indication that it did so based on a definition of "students" that excluded noncitizens. ECF No. 37 at 22-23. If "students" in subsection (a)(1)(B) means all students excluding distance learners, then Defendants' proposed definition in subsection (c) as excluding certain noncitizen students would create two different definitions for an identical term in

1  the same statutory provision.  This result would contravene ordinary rules of

2  statutory construction.  *Barr*, 941 F.3d at 941.

3        Despite these statutory inconsistencies, the Court cannot find that the

4  language of the CARES Act demonstrates a "clear and manifest" intent to override

5  the otherwise generally applicable terms of PRWORA.  The plain text of

6  PRWORA allows for distribution of certain in-kind assistance to non-qualified

7  aliens, but Congress has previously amended PRWORA itself when authorizing

8  direct payments to non-qualified aliens.  8 U.S.C. § 1611(b)(2)-(5).  The statutory

9  language discrepancies identified above are more likely attributable to inartful

10 drafting under the constraints of a global pandemic rather than any clearly

11 expressed intent to override a longstanding provision of federal law with an

12 overarching "notwithstanding" clause.  This finding is not a conclusion, as Plaintiff

13 argues, that assumes Congress made a mistake, "contrary to all canons of statutory

14 interpretation."  ECF No. 37 at 26.  Instead, the Court finds that Congress's

15 inconsistent language in Section 18004 of the CARES Act is too ambiguous to

16 demonstrate a "clear and manifest" intent to override the longstanding and

17 generally applicable PRWORA bar.  This outcome is consistent with the Court's

18 obligation to read both PRWORA and the CARES Act as effective absent clear

19 congressional intent for the latter to override the former.  *Morton*, 417 U.S. at 551.

20 Plaintiff is not entitled to judgment as a matter of law on its PRWORA argument.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

1  **ACCORDINGLY, IT IS HEREBY ORDERED:**

2  Plaintiff's Motion for Partial Summary Judgment (ECF No. 37) is DENIED.

3  The District Court Executive is directed to enter this Order and furnish

4  copies to counsel.

5  **DATED** July 24, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 18