1
ROBERT W. FERGUSON
*Attorney General*

2

3
JEFFREY T. SPRUNG, WSBA #23607
R. JULY SIMPSON, WSBA #45869
SPENCER W. COATES, WSBA #49683

4
PAUL M. CRISALLI, WSBA #40681
*Assistant Attorneys General*

5
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

6
(206) 464-7744

7
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

8
**AT SPOKANE**

9
STATE OF WASHINGTON,                    NO. 2:20-cv-00182-TOR

10
                    Plaintiff,           FIRST AMENDED COMPLAINT
                                         FOR DECLARATORY AND

11
          v.                             INJUNCTIVE RELIEF

12
BETSY DeVOS, in her official
capacity as Secretary of the United

13
States Department of Education, and
the UNITED STATES

14
DEPARTMENT OF EDUCATION, a
federal agency,

15
                    Defendants.

16

17

18

19

20

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................... 1

II.   JURISDICTION AND VENUE ....................................................... 3

III.  PARTIES ..................................................................................... 4

IV.  RELEVANT FACTS ...................................................................... 5

    A.  The COVID-19 Pandemic ..................................................... 5

    B.  The Coronavirus Aid, Relief, and Economic Security Act ......... 11

    C.  The Department's CARES Act Guidance ................................. 15

        1.  April 9, 2020, guidance ................................................. 15

        2.  April 21, 2020, guidance ............................................... 19

        3.  May 21, 2020, Guidance ............................................... 24

        4.  The Department's Interim Final Rule .............................. 25

    D.  The Department's Reversal of Position in Its April 21 Guidance, May 21 Guidance, and Interim Final Rule Is Unlawful ............. 26

    E.  Injuries to the State of Washington and Its Residents ............... 28

V.   CAUSES OF ACTION ................................................................ 36

VI.  PRAYER FOR RELIEF ............................................................... 44

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.    INTRODUCTION

1.    This suit challenges the United States Department of Education's (the Department) unilateral denial of emergency COVID-19 relief to tens of thousands of Washington higher education students made eligible by Congress and who are in desperate need of help. In the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Congress directed the Department to distribute over $100 million to colleges and universities in Washington to provide emergency financial aid grants to higher education students whose lives and educations were disrupted by COVID-19. Without Congressional authorization, the Department grafted its own limit on Congress's directive, requiring students to meet the eligibility requirements for federal financial aid under two different statutes. The Department did so despite its express recognition that CARES Act emergency grants are not federal financial aid, Congress gave institutions—not the Department—"significant discretion" to decide which students need urgent financial help, and the Department lacked authority to impose additional restrictions on the eligibility criteria dictated by Congress.

2.    As a result of the Department's unauthorized eligibility restriction, over 85,000 Washington higher education students who desperately need financial assistance have been excluded from federal help. These students are among those whose financial survival and lifeline to higher education is most threatened by COVID-19, because they worked part-time to pay for tuition,

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    healthcare, and childcare, they did not have high school diplomas, or they had

2    missed payments on federal student loans. They include, for example, 24,364

3    basic adult education students at Washington's 34 community and technical

4    colleges who are acquiring reading, writing, math, and language skills to leverage

5    a job, college degree, or trade certification; 28,451 high school-aged students in

6    Running Start Programs; and many of Washington's approximately 17,000

7    "Dreamers," individuals brought to the country at an early age, educated by

8    Washington secondary schools, and protected under the Deferred Action for

9    Childhood Arrivals program.

10        3.    The Department's unauthorized eligibility restriction violates the

11    Administrative Procedure Act, separation of powers, and the Spending Clause in

12    the United States Constitution. The CARES Act does not delegate to the

13    Department authority to interpret its eligibility requirements. Thus, the

14    Department's action is entitled to no or minimal deference. In this case, the

15    applicable CARES Act provision provides no support for engrafting the

16    eligibility requirements from two different statutes onto students' ability to

17    qualify for emergency grants to respond to a sudden pandemic. Further, the

18    Department's eligibility restriction is arbitrary and capricious because, among

19    many reasons, it denies emergency aid to college students who most need

20    pandemic assistance to continue their higher education. Finally, separation of

21    powers principles and the Spending Clause prevent the Department from

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

2

asserting "[the] unilateral authority" to "thwart congressional will by canceling appropriations passed by Congress." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) (internal quotation marks and citations omitted).

4.     To avert irreparable injury to the State and its residents, Washington brings this suit to declare unlawful and enjoin the Department's restriction on student eligibility for coronavirus emergency financial aid grants.

## II.     JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(e) because Defendants are agencies and officers of the United States.

6.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because this is a judicial district in which Plaintiff State of Washington resides, the Department's interpretation of the CARES Act will adversely affect the health and welfare of residents in this district, and the finances of the State, and this action seeks relief against a federal agency and its official acting in her official capacity.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### III.    PARTIES

8.    The State of Washington represented by its Attorney General is a sovereign state of the United States of America.

9.    Plaintiff State of Washington is represented by its Attorney General, who is the State's chief legal advisor. The powers and duties of the Attorney General include acting in federal court on matters of public concern to the State.

10.    The State of Washington brings this action to redress harms to its sovereign, proprietary, and quasi-sovereign interests and its interests as *parens patriae* in protecting the health and well-being of their residents. The State of Washington is affected by the Department's interpretation of the CARES Act, is directly injured by it, and the relief requested will redress its injuries.

11.    Washington's institutions of higher education are current recipients of CARES Act emergency grant funds. Accordingly, Washington is directly affected by the Department's unlawful interpretation of section 18004 of the CARES Act. Washington institutions are forced to change their behavior because of the Department's unlawful guidance.

12.    Washington has a proprietary interest in maintaining the enrollment of students in its institutions of higher education. The Department's guidance harms this interest because it denies emergency assistance to students who need it to remain in school. Washington colleges and universities have experienced

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    harm in the form of loss of enrollment due to students' recent financial insecurity

2    and expect continued loss of enrollment because of the Department's restriction.

3        13.    Washington has a quasi-sovereign interest in protecting the health,

4    safety, and well-being of its residents. The Department's interpretation severely

5    limits the use of emergency funding that Congress intended to broadly assist

6    higher education students affected by COVID-19. It therefore jeopardizes the

7    health, housing, nutrition, and well-being of students in the State of Washington.

8        14.    The State of Washington and its higher education students will

9    suffer significant and irreparable harm if the Department's interpretation is

10    allowed to stand.

11        15.    Defendant Betsy DeVos is the Secretary of the Department of

12    Education. She is sued in her official capacity.

13        16.    Defendant United States Department of Education is an executive

14    agency with responsibility for distributing Higher Education Emergency Relief

15    Act funds to Washington institutions of higher education in compliance with

16    section 18004 of the Cares Act.

17            **IV.    RELEVANT FACTS**

18    **A.    The COVID-19 Pandemic**

19        17.    A novel coronavirus is a new coronavirus that has not been

20    previously identified. According to Johns Hopkins University & Medicine

21    Coronavirus Resource Center, on December 29, 2019, the Wuhan City

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

government, in Hubei Province, China, started to trace cases of a coronavirus. On January 4, 2020, a Shanghai lab detected a coronavirus similar to severe acute respiratory syndrome (SARS). On January 6, 2020, a Wuhan doctor and 13 nurses were infected after operating on infected patient, and the next day the pathogen was identified as a novel coronavirus.

18.    On January 30, 2020, the World Health Organization (WHO) declared the novel coronavirus outbreak a Public Health Emergency of International Concern. On February 11, 2020, it announced an official name for the disease causing the 2019 outbreak, coronavirus disease 2019, abbreviated as COVID-19. (In COVID-19, 'CO' stands for 'corona,' 'VI' for 'virus,' and 'D' for 'disease.' Formerly, this disease was referred to as "2019 novel coronavirus" or "2019-nCoV.")

19.    Coronaviruses are a large family of viruses that are common in people and may affect different species of animals, including camels, cattle, cats, and bats. The exact source of the COVID-19 virus is unknown.

20.    The virus that causes COVID-19 is thought to spread mainly from person to person. It is spreading very easily and sustainably between people. Information from the ongoing COVID-19 pandemic indicates this virus spreads more efficiently than influenza.

21.    One of the most important ways to measure the burden of COVID-19 is mortality. Nevertheless, the actual total death toll from COVID-19

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  is likely to be higher than the number of confirmed deaths, due to limited testing

2  and problems in the attribution of the cause of death. Countries throughout the

3  world have reported different case fatality ratios – the number of deaths divided

4  by the number of confirmed cases. Differences in mortality numbers can be

5  caused by differences in the number of people tested; demographics, because

6  mortality tends to be higher in older populations, and characteristics of the

7  healthcare system, because mortality may rise as hospitals become overwhelmed

8  and have fewer resources.

9      22.    The fatality rate of COVID-19 is higher than the fatality rate for a

10  more familiar disease: the seasonal influenza. Deaths have been concentrated

11  among older adults, who have weaker immune systems on average than younger

12  people and have a higher rate of chronic illness. People of all ages with chronic

13  medical conditions are also at higher risk. Johns Hopkins University & Medicine

14  Coronavirus Resource Center reports a death rate in the United States of 3%,

15  which is higher than the fatality rate in the United States for people infected with

16  the flu. Johns Hopkins University & Medicine, *Mortality Analyses*,

17  https://coronavirus.jhu.edu/data/mortality (last visited Sept. 9, 2020). Some

18  scientists estimate that COVID-19 is up to 20 times more deadly than the flu. *See,*

19  *e.g.*,    Jeremy    Samuel    Faust    &    Carlos    del    Rio,

20  *Assessment    of    Deaths    From    COVID-19    and    From    Seasonal*

21  *Influenza*,    JAMA    Internal    Med.,    May    14,    2020,

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2766121

2    (last visited May 19, 2020).

3        23.    On January 21, 2020, the Washington State Department of Health

4    confirmed what was believed to be the first case of COVID-19 in the United

5    States in Snohomish County, Washington. The Centers for Disease Control and

6    Prevention (CDC) then confirmed as the first-known U.S. case a diagnosis of a

7    35-year-old man living in Snohomish County, Washington.[1] Since then, as of

8    September 17, the country has reported 6,644,311 cases and 197,120 deaths.

9    Johns Hopkins University & Medicine, COVID-19 Dashboard by the Center for

10    Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU),

11    https://coronavirus.jhu.edu/map.html (last visited Sept. 17, 2020).

12        24.    On February 19, 2020, a resident of a Life Care Centers of America

13    nursing home in Kirkland, Washington, was transferred to a local hospital and

14    later tested positive for COVID-19. On February 24, a 54-year-old man was

15    transferred from the Life Care Center of Kirkland to Harborview Medical Center

16    _____

17        [1]It was later determined that a woman in California died on February 6

18    from COVID-19, meaning she likely contracted it in early to mid-January. CNN,

19    Jason    Hanna,    et    al.,    *2 Californians    died    of    coronavirus    weeks*

20    *before    previously    known    1st    US    death*    (Apr.    22,    2020),

21    https://www.cnn.com/2020/04/22/us/california-deaths-earliest-in-us/index.html

22    (last visited May 19, 2020).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

8

1    and died there on February 26. Also on February 26, a woman in her 80s from

2    the center died at her family home. Both were found to have had COVID-19. On

3    February 28, a high school student at Henry M. Jackson High School in

4    Mill Creek, Washington, was confirmed as having the virus, causing the school

5    to be closed immediately. The following day, researchers confirmed the

6    coronavirus strain in the student's case may be related to the coronavirus strain

7    in the first confirmed U.S. case from January 21, suggesting that the virus may

8    have been spreading in the area for up to six weeks.

9        25.    Washington State made the first announcement of a death from the

10    disease in the U.S. on February 29 and later announced that the two deaths on

11    February 26 were also due to COVID-19. Until mid-March, Washington had the

12    highest absolute number of confirmed cases and the highest number per capita of

13    any state in the country, when it was surpassed by New York.

14        26.    On February 29, 2020, Washington Governor Jay Inslee declared a

15    state of emergency in all counties in Washington. In Proclamation 20-05,

16    Governor Inslee stated that the CDC had identified the potential public health

17    threat posed by COVID-19 both globally and in the United States as "high." He

18    provided that there were 85,688 confirmed cases of COVID-19 worldwide with

19    66 of those cases in the United States. Governor Inslee found that the Washington

20    State Department of Health had confirmed localized person-to-person spread of

21    COVID-19 in Washington State, which "significantly increase[ed] the risk of

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    exposure and infection to Washington State's general public and creat[ed] an

2    extreme public health risk that may spread quickly[.]" State of Washington Office

3    of    the    Governor,    Proclamation    by    the    Governor    20-05,

4    https://www.Governor.wa.gov/sites/default/files/proclamations/20-

5    05%20Coronavirus%20%28final%29.pdf (last visited May 14, 2020).

6        27.    The two largest state universities, University of Washington (UW)

7    and Washington State University (WSU) curtailed on-campus classes during the

8    pandemic. UW announced its closure on March 6; and on March 11, WSU

9    announced the closure would begin after its spring break, on March 23.

10        28.    On March 12, 2020, Governor Inslee announced closures for all

11    public and private K-12 schools in King, Snohomish, and Pierce Counties

12    beginning from March 17 through at least April 24. Later, on March 13,

13    Governor Inslee announced K-12 closures until at least April 24 throughout the

14    state. On April 6, 2020, Governor Inslee announced that the school closure would

15    encompass the rest of the school year statewide.

16        29.    On March 13, 2020, President Trump issued a proclamation that the

17    COVID-19 outbreak constituted a national emergency.

18        30.    As of September 16, 2020, the Washington State Department of

19    Health reported 80,812 confirmed cases of COVID-19 in the State and 2,020

20    deaths.

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

10

31.     As of September 17, 2020, Johns Hopkins University & Medicine Coronavirus Resource Center reported over 29.9 million confirmed COVID-19 cases, with over 6.6 million in the United States, and over 942,259 global deaths.

**B.      The Coronavirus Aid, Relief, and Economic Security Act**

32.     In late March 2020, the United States Congress acted to address the COVID-19 outbreak. It passed legislation, signed by the President, that included large new appropriations to federal agencies with explicit directions for distributing the new funding.

33.     At 11:17 p.m., on March 25, 2020, the Senate passed the Coronavirus Aid, Relief, and Economic Security Act as an amendment in the nature of a substitute to H.R. 748. On March 27, 2020, the House passed the bill and presented it to the President, who signed it the same day. Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020) (CARES Act).

34.     The CARES Act appropriates federal funding for a wide array of purposes related to COVID-19. It contains a series of provisions directing funding through the Department of Education. Specifically, the CARES Act makes the following appropriation to the Department:

> For an additional amount for "Education Stabilization Fund", $30,750,000,000, to remain available through September 30, 2021, to prevent, prepare for, and respond to coronavirus, domestically or internationally[.]

*Id.*

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

35.     Section 18001 of the CARES Act directs the Secretary of Education to allocate the Education Stabilization Fund for specified purposes in specified percentages. After directing the Secretary to allocate 2% of the Education Stabilization Fund to certain purposes, Section 18001 specifies the percentages the Secretary is to allocate to three funds created by the Act, the Governor's Emergency Education Relief Fund, the Elementary and Secondary School Emergency Relief Fund, and the Higher Education Emergency Relief Fund (HEERF). CARES Act, § 18001(b).

36.     In total, the CARES Act appropriates approximately $14 billion in funding to institutions of higher education to assist with the costs associated with disruptions in education due to COVID-19. In Section 18004(a), Congress details exactly how the Secretary is to allocate the Higher Education Emergency Relief Fund. This subsection gives the Secretary discretion only with regard to the allocation of 2.5% of the roughly $14 billion fund.

37.     Subsection (a)(1) directs the Secretary how to allocate the vast majority of the HEERF. "The Secretary shall allocate funding under this section as follows: (1) 90 percent"—$12.56 billion—"to each institution of higher education to prevent, prepare for, and respond to coronavirus," using a detailed formula specified by Congress based on student enrollment. CARES Act, § 18004(a)(1).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    38.    Subsection (a)(2) directs 7.5% of the HEERF to minority-serving

2    institutions, again based on a specified, non-discretionary formula. CARES Act,

3    § 18004(a)(2) ("allocated by the Secretary proportionally to such programs based

4    on the relative share of funding appropriated to such programs in the Further

5    Consolidated Appropriations Act, 2020 . . . ").

6    39.    Finally, subsection (a)(3) gives the Secretary some discretion over

7    just 2.5% of the HEERF. That percentage is reserved for "institutions of higher

8    education that the Secretary determines have the greatest unmet needs related to

9    coronavirus[.]" CARES Act, § 18004(a)(3).

10    40.    Subsection (b) of Section 18004 directs the Secretary how to

11    distribute the HEERF, and subsection (c) directs how the HEERF may be used.

12    Neither subsection grants the Secretary any interpretive authority or any

13    discretion in implementing Congress's directives.

14    41.    Subsection (b) states that HEERF funds "shall be distributed by the

15    Secretary using the same systems as the Secretary otherwise distributes funding

16    to each institution under title IV of the Higher Education Act of 1965 (20 U.S.C.

17    [§] 1001 et seq.)." This refers to an existing G5 grants management system the

18    Department    uses    to    disburse    money.    CARES    Act,    § 18004(b).

19    *See    also*    U.S.    Dep't    of    Educ.,    Frequently    Asked    Questions,

20    https://www.g5.gov/g5/home/!ut/p/z1/hY1BC4IwHMU_za77_zHN6GahkHaIQ

21    ly7xAZrCrrJXAp9-gYduhS923vv93jAgQE3Yu608J01og_-

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  yte3CPeIWF3q9JyneEiKuDxVdRQXCM0_gIcafyhDKIHr3sr3VWbkaqOBO3

2  VXTjn6cCFuvR-

3  nLUGCy7JQnVBtZ4KNkjthTIBaP3wdt3bywD4bGAf2PKomewEZ_rsa/dz/d5/

4  L2dJQSEvUUt3QS80TmxFL1o2XzVJMVVRM0tTVUY3SkQwSUFFFMFY3O

5  DgxMDA3/#faqQuestion11 (last visited May 14, 2020).

6      42.     Subsection (c) addresses "use of funds" by institutions. It gives the

7  Secretary no authority; indeed, it does not mention the Secretary. "Except as

8  otherwise specified in subsection (a), an institution . . . may use the funds received

9  to cover any costs associated with significant changes to the delivery of

10  instruction due to the coronavirus," excluding athletics, religious instruction, and

11  other activities for which Congress denies funding. CARES Act, § 18004(c).

12      43.     Further addressing the emergency grants at issue in this litigation,

13  Congress directs that:

14  > Institutions of higher education shall use no less than 50 percent of
15  > such funds to provide emergency financial aid grants to students for
       expenses related to the disruption of campus operations due to
16  > coronavirus (including eligible expenses under a student's cost of
       attendance, such as food, housing, course materials, technology,
17  > health care, and child care).

   *Id.*
18
19      44.     The education provisions in the CARES Act define "cost of

20  attendance" as used in section 18004(c). "Except as otherwise provided in

21  sections 18001–18006 of this title, as used in such sections . . . the term 'cost of

22  attendance' has the meaning given such term in section 472 of the Higher

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Education Act of 1965." CARES Act, § 18007(5). In turn, section 472 of the

2    HEA is an expansive definition that includes things like tuition, books,

3    miscellaneous personal expenses, computer equipment, room and board, and

4    certain dependent care expenses. 20 U.S.C. § 1087ll (2008).

5    **C.    The Department's CARES Act Guidance**

6            **1.    April 9, 2020, guidance**

7            45.    On April 9, 2020, the Department released the portion of the

8    CARES Act funding Congress appropriated for student emergency grants. The

9    Department issued a press release, in which Defendant DeVos was quoted:

10   "What's best for students is at the center of every decision we make[.]" Press

11   Release, U.S. Dep't of Educ., Secretary DeVos Rapidly Delivers More Than $6

12   Billion in Emergency Cash Grants for College Students Impacted by Coronavirus

13   Outbreak (Apr. 9, 2020), https://www.ed.gov/news/press-releases/secretary-

14   devos-rapidly-delivers-more-6-billion-emergency-cash-grants-college-students-

15   impacted-coronavirus-outbreak (last visited May 14, 2020) (emphasis added).

16           46.    In addition to a press release, the Department contemporaneously

17   issued a letter from Secretary DeVos to college and university presidents, a

18   certification form for higher education institutions, a list of individual allocations

19   to colleges and universities, and a methodology for how it calculated the

20   allocations schools were scheduled to receive.

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

47.    The documents issued by Defendants on April 9, 2020, correctly read the CARES Act as giving no authority to the Department to restrict the students to whom institutions awarded emergency grants, not limiting recipients to students eligible for financial aid under Title IV of the HEA, and as empowering institutions to determine the recipients limited only by the express requirements in the Act.

48.    In the April 9, 2020, letter to college and university presidents, Defendant DeVos wrote that "[t]he CARES Act provides institutions with significant discretion on how to award this emergency assistance to students." Letter from the Secretary of Education to College and University Presidents (Apr. 9, 2020), https://www2.ed.gov/about/offices/list/ope/caresactgrantfundingcoverletterfinal.pdf (last visited Sept. 9, 2020). DeVos continued:

> This means that *each institution may develop its own system and process for determining how to allocate these funds*, which may include distributing the funds to all students or only to students who demonstrate significant need. The *only statutory requirement* is that the funds be used to cover expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care).

*Id.* (emphasis added).

49.    The Department's press release confirmed the Department's initial understanding of the CARES Act: "In order to access the funds, the Department must receive a signed certification from the higher education institution affirming

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    they will distribute the funds in accordance with applicable law. ***The college or***

2    ***university will then determine which students will receive the cash grants***.”

3    Press Release, U.S. Dep't of Educ., Secretary DeVos Rapidly Delivers More

4    Than $6 Billion in Emergency Cash Grants for College Students Impacted by

5    Coronavirus Outbreak (Apr. 9, 2020), https://www.ed.gov/news/press-

6    releases/secretary-devos-rapidly-delivers-more-6-billion-emergency-cash-

7    grants-college-students-impacted-coronavirus-outbreak (last visited May 14,

8    2020) (emphasis added).

9         50.    The Department's certification form expressly disavowed that

10    CARES Act emergency grants were subject to Title IV requirements: “The

11    Secretary does not consider these individual emergency financial aid grants to

12    constitute Federal financial aid under Title IV of the HEA.” Recipient's Funding

13    Certification and Agreement Emergency Financial Aid Grants to Students under

14    the Coronavirus Aid, Relief, and Economic Security (CARES) Act ¶ 3,

15    https://www2.ed.gov/about/offices/list/ope/caresheerfcertificationandagreement

16    finalombapprovedforissuance.pdf (last visited May 14, 2020). The certification

17    form also expressly acknowledged that Congress assigned to institutions the

18    discretion to determine the amount, and thus necessarily the recipients, of

19    emergency aid, subject to applicable statutes: “Recipient retains discretion to

20    determine the amount of each individual emergency financial aid grant consistent

21    with all applicable laws including non-discrimination laws.” *Id.* The language the

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

17

1    Department included in the certification regarding institutions' use of CARES

2    Act emergency grant funding was intentionally hortatory and not mandatory,

3    using phrases such as "the Secretary recommends," "the Recipient should be

4    mindful," and the "Secretary strongly encourages." *Id.*

5        51.    Contemporaneous reporting on the website of a prominent higher

6    education trade organization, the National Association of Financial Aid

7    Administrators, noted institutions' broad discretion recognized by the

8    Department, expressly reporting that the Title IV federal financial aid eligibility

9    requirements did not apply: "Notably, neither the statute or certification form

10   require that these funds be provided to Title IV eligible students, meaning schools

11   are able to cast a wider net in determining and meeting emergency needs."

12   Owen Daugherty,    *ED    Provides    Details    on    Institutional*

13   *Allocation    for    $6    Billion    in    Emergency    Funds    for    Students*,

14   NASFAA    (Apr.    10,    2020,    12:35    p.m.),    https://www.nasfaa.org/news-

15   item/21501/ED_Provides_Details_on_Institutional_Allocation_for_6_Billion_i

16   n_Emergency_Funds_for_Students (last visited May 14, 2020).

17       52.    The Department's April 9, 2020, guidance to institutions is

18   consistent with guidance its Office of Postsecondary Education issued on April 3,

19   2020. In a memorandum posted on that office's website, it stated: "***Any aid (in***

20   ***the form of grants or low-interest loans) received by victims of an emergency***

21   ***from a federal or state entity for the purpose of providing financial relief is not***

22

FIRST AMENDED COMPLAINT                18            ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                          Complex Litigation
INJUNCTIVE RELIEF                                        800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                                     Seattle, WA 98104-3188
                                                              (206) 464-7744

1    *counted* as income for calculating a family's Expected Family Contribution

2    (EFC) under the Federal Methodology or *as estimated financial assistance for*

3    *packaging purposes*." Office of Postsecondary Education, UPDATED Guidance

4    for interruptions of study related to Coronavirus (COVID-19),

5    Federal Student Aid (Apr. 3, 2020), https://ifap.ed.gov/electronic-

6    announcements/040320UPDATEDGuidanceInterruptStudyRelCOVID19

7    (last visited May 18, 2020) (emphasis added).

8        **2.    April 21, 2020, guidance**

9        53.    On April 21, 2020, the Department announced that it would release

10    the additional $6.2 billion the CARES Act appropriated for institutions' own use.

11    The Department recognized that the "funding for these 'Recipient Institutional

12    Costs' is separate from the funding previously made available for 'Emergency

13    Financial Aid Grants to Students.' " Press Release, U.S. Dep't of Educ., Secretary

14    DeVos Delivers $6 Billion in Additional Grant Funding to Support Continued

15    Education at America's Colleges, Universities (Apr. 21, 2020),

16    https://www.ed.gov/news/press-releases/secretary-devos-delivers-6-billion-

17    additional-grant-funding-support-continued-education-americas-colleges-

18    universities (last visited May 14, 2020).

19        54.    Despite the fact that this release of funds did not pertain to

20    Congress's authorization of emergency grants to students, the Department

21    reversed its position on the discretion institutions had to determine students

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    eligible for emergency grants, as well as the authority the Department had to

2    restrict student eligibility.

3        55.    On April 21, 2020, it posted a document entitled "Frequently Asked

4    Questions about the Emergency Financial Aid Grants to Students under Section

5    18004 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act"

6    (Emergency Grants FAQs). In the Emergency Grants FAQs, the Department

7    purported to answer the question, "What students are eligible to receive

8    emergency financial aid grants from the HEERF?" For the first time, the

9    Department asserted that "[o]nly students who are or could be eligible to

10   participate in programs under Section 484 in Title IV of the Higher Education

11   Act of 1965, as amended (HEA), may receive emergency financial aid grants."

12   Higher Education Emergency Relief Fund, Frequently Asked Questions about

13   the Emergency Financial Aid Grants to Students under Section 18004 of the

14   Coronavirus Aid, Relief, and Economic Security (CARES) Act (Emergency

15   Grants FAQs I), https://www2.ed.gov/about/offices/list/ope/heerfstudentfaqs.pdf

16   (FAQ #9) (last visited May 14, 2020).

17       56.    The Department's FAQ response continued:

18   If a student has filed a Free Application for Federal Student Aid
     (FAFSA), then the student has demonstrated eligibility to participate
19   in programs under Section 484 the HEA. Students who have not
     filed a FAFSA but who are eligible to file a FAFSA also may receive
20   emergency financial aid grants. The criteria to participate in
     programs under Section 484 of the HEA include but are not limited
21   to the following: U.S. citizenship or eligible noncitizen; a valid
     Social Security number; registration with Selective Service (if the

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR                    20        ATTORNEY GENERAL OF WASHINGTON
                                                         Complex Litigation
                                                      800 Fifth Avenue, Suite 2000
                                                        Seattle, WA 98104-3188
                                                          (206) 464-7744

student is male); and a high school diploma, GED, or completion of high school in an approved homeschool setting.

*Id.*

57.    On or about April 21, 2020, the Department also published a second set of FAQs, entitled, "Frequently Asked Questions about the Institutional Portion of the Higher Education Emergency Relief Fund under Section 18004(a)(1) and 18004(c) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act." Higher Education Emergency Relief Fund, Frequently Asked Questions about the Institutional Portion of the Higher Education Emergency Relief Fund under Section 18004(a)(1) and 18004(c) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Emergency Grants FAQs II), https://www2.ed.gov/about/offices/list/ope/heerfinstitutionalfaqs.pdf (last visited May 14, 2020). In this FAQ, the Department repeated that "students must be eligible to receive emergency financial aid grants, and only students who are or could be eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965, as amended (HEA), may receive emergency financial aid grants." *Id.*, FAQ #5.

58.    Section 484 of Title IV of the HEA, 20 U.S.C. § 1091, contains numerous requirements for student eligibility for financial aid not contained in the CARES Act. These include "U.S. citizenship or eligible noncitizen; a valid Social Security number; registration with Selective Service (if the student is male); and a high school diploma, GED, or completion of high school in an approved

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  homeschool setting." Emergency Grants FAQs I, FAQ #9. Other requirements

2  include that the student not be in default on any loan issued by the Department and

3  have maintained at least a cumulative C average, or its equivalent or academic

4  standing consistent with the requirements for graduation. 20 U.S.C. § 1091(a)(3),

5  (c)(1)(B) (2019); *see also* 34 C.F.R. § 668.32 (2020). By imposing eligibility

6  requirements not contained in the CARES Act, the Emergency Grants FAQs

7  violated section 18004(c) of the CARES Act.

8       59.    While the Department's Emergency Grants FAQ states that a FAFSA

9  is not required, having one on file is the primary practicable means for an institution

10  to determine that a student is eligible to participate in the student aid programs and

11  meet all applicable eligibility requirements.

12       60.    For institutions to access the second wave of funding, the Department

13  announced they first must have submitted the certification form for the emergency

14  grants for students, and then must submit a second certification form attesting that

15  they will use the money in accordance with the law.

16       61.    Both the Department's certifications purported to impose liability on

17  institutions if they did not comply with the Department's restriction of student

18  eligibility for emergency grants. The certification required for institutions to receive

19  emergency grant funding for their students states:

20      [F]ailure to comply with this Certification and Agreement, its terms
    and conditions, and/or all relevant provisions and requirements of

21      the CARES Act or any other applicable law may result in
    Recipient's liability under the False Claims Act, 31 U.S.C. § 3729,

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

22

*et seq.*; OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement) in 2 CFR part 180, as adopted and amended as regulations of the Department in 2 CFR part 3485; 18 USC § 1001, as appropriate; and all of the laws and regulations referenced in Attachment A, which is incorporated by reference hereto.

Recipient's Funding Certification and Agreement Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief, and Economic Security (CARES) Act ¶ 4(g), https://www2.ed.gov/about/offices/list/ope/caresheerfcertificationandagreement finalombapprovedforissuance.pdf (last visited May 14, 2020).

62.    The certification to receive CARES Act funding for institutions' own use states:

Recipient's failure to comply with this Certification and Agreement, its terms and conditions, and/or all relevant provisions and requirements of the CARES Act or any other applicable law may result in Recipient's liability under the False Claims Act, 31 U.S.C. § 3729, *et seq.*; OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement) in 2 CFR part 180, as adopted and amended as regulations of the Department in 2 CFR part 3485; 18 USC § 1001, as appropriate; and all of the laws and regulations referenced in Attachment A, which is incorporated by reference hereto.

Recipient's Funding Certification and Agreement for the Institutional Portion of the Higher Education Emergency Relief Fund Formula Grants Authorized by Section 18004(a)(1) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act ¶ 4(i), https://www2.ed.gov/about/offices/list/ope/heerfInstitutionalcertificationagreem ent42020v2.pdf (last visited May 14, 2020).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

23

**3.    May 21, 2020, guidance**

63.    On May 21, 2020, the Department issued further guidance stating that, in addition to the Title IV eligibility restriction, institutions were further restricted from distributing funds to non-citizen students due to restrictions under 8 U.S.C. § 1611.

64.    8 U.S.C. § 1611 is part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. No. 104–193, 110 Stat. 2105 (Aug. 22, 1996). PRWORA restricts immigrants' eligibility for certain "federal public benefits," which are defined in 8 U.S.C. § 1611(c).

65.    8 U.S.C. § 1611 does not include all federal programs and includes several exceptions including those that generally safeguard health during emergencies including emergency health services, public health assistance, and community-based services necessary to protect life and safety. 8 U.S.C. § 1611(b), (c)(2) (2020).

66.    After PRWORA passed, the Attorney General was tasked with promulgating and implementing regulations to govern PRWORA. 8 U.S.C. § 1642(a)(1) (2020). The Attorney General identified many more programs, services, or assistance that do not qualify as "federal public benefits." Attorney General Order No. 2353-2001, 66 FR 3613-02, 2001 WL 31994 (Jan. 16, 2001). These include programs that provide crisis counseling, assistance with adverse weather conditions, assistance with food insecurity, medical and mental health services, activities to protect life or safety of the community, and "[a]ny other

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    programs, services, or assistance necessary for the protection of life or safety."

2    *Id.*

3        67.    PRWORA designated the U.S. Department of Health and Human

4    Services (HHS) as the agency responsible for assisting the Attorney General in

5    promulgating its implementing regulations. *See* 8 U.S.C. §§ 1642(a)(1)-(2)

6    (2020). HHS has identified many other government-funded programs and

7    services that are not "federal public benefits." U.S. Dep't of Justice, et al., Joint

8    Letter on Immigrant Access to Housing and Services, at 3 (Aug. 5, 2016),

9    https://www.hhs.gov/sites/default/files/Joint-Letter-August-2016.pdf    (last

10   visited June 26, 2020) ("DOJ Joint Letter").

11       68.    HHS has stated that "block grants" are excluded from the definition

12   of "federal public benefits" because "grants" under PRWORA are grants to

13   individuals as opposed to "block grants" which are provided to states or localities.

14   HHS stated that "unless the authorizing statutes require that the characteristics of

15   these groups form the basis for denial of services or benefits, these are not

16   benefits . . . ." HHS Notice, PRWORA; Interpretation of 'Federal Public Benefit,'

17   63 FR 41658-01, 1998 WL 435846 (Aug. 4, 1998) ("HHS Notice").

18       **4.    The Department's Interim Final Rule**

19       69.    On June 15, 2020, the Department published an Interim Final Rule

20   that went into effect immediately.

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    70.    The Interim Final Rule argues that the CARES Act is ambiguous,

2    *see* Interim Final Rule, 85 Fed. Reg. 36,495 (June 17, 2020), and that Congress

3    intended to exclude students who are not eligible for student financial aid under

4    Title IV of the Higher Education Act from CARE Act grants. *Id.* at 36,496.

5    71.    The Interim Final Rule also takes the position that 8 U.S.C. § 1611

6    prohibits non-citizen students from receiving CARES Act emergency grants.

7    *Id.* at 8-9.

8    72.    The Department filed contemporaneous press release which stated

9    that "Non-citizens . . . will not receive taxpayer funds." Press Release, U.S. Dep't

10   of Educ., U.S. Department of Education Issues Rule to Protect American

11   Taxpayers from Waste, Fraud, and Abuse, Ensure COVID-19 Relief Funds Get

12   to Eligible Students (June 11, 2020), https://www.ed.gov/news/press-releases/us-

13   department-education-issues-rule-protect-american-taxpayers-waste-fraud-and-

14   abuse-ensure-covid-19-relief-funds-get-eligible-students (last visited Sept. 4,

15   2020).

16   **D.    The Department's Reversal of Position in Its April 21 Guidance,**
     **May 21 Guidance, and Interim Final Rule Is Unlawful**

17

18   73.    The Department's restriction on student eligibility for CARES Act

19   emergency grants to only those students who qualify for federal financial aid under

     section 484 of Title IV of the HEA and who are not disqualified under PRWORA

20

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

26

1   is unlawful.[2] The CARES Act does not restrict emergency grants to only students

2   eligible for federal financial aid under section 484 of Title IV of the HEA or who

3   are not disqualified under PRWORA. Further, the CARES Act does not delegate to

4   the Department the authority to interpret section 18004.

5       74.    The Department's Eligibility Restriction is illegal whether it is a

6   legislative or interpretive rule. If it is deemed a substantive rule, it is contrary to the

7   plain meaning of the CARES Act and is contrary to law. If it is deemed an

8   interpretive rule, it improperly imposes binding legal obligations on Washington

9   institutions of higher education that diverge from the CARES Act and purports to

10  have the force of law. Further, it is entitled to no or minimal deference and

11  contradicts Congress's manifest intent to funnel emergency aid through institutions

12  to students they deem in urgent need.

13      75.    The Eligibility Restriction also is arbitrary and capricious. The

14  Department initially acknowledged that "[t]he CARES Act provides institutions

15  with significant discretion on how to award this emergency assistance to

16  students," and "[t]he only statutory requirement is that the funds be used to cover

17  expenses related to the disruption of campus operations due to coronavirus

18  (including eligible expenses under a student's cost of attendance, such as food,

19  housing, course materials, technology, health care, and child care)." Letter from

20  _____

21      [2]Washington refers to the restrictions below as the Department's

22  "Eligibility Restriction."

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

27

the Secretary of Education to College and University Presidents (Apr. 9, 2020), https://www2.ed.gov/about/offices/list/ope/caresactgrantfundingcoverletterfinal. pdf (last visited May 14, 2020). Further, the Department's certification form expressly states that the grants are not "Federal financial aid under Title IV of the HEA." Recipient's Funding Certification and Agreement Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief, and Economic Security (CARES) Act ¶ 3, https://www2.ed.gov/about/offices/list/ope/caresheerfcertificationandagreement finalombapprovedforissuance.pdf (last visited May 14, 2020). Nevertheless, within 11 days the Department changed course and announced that the funds are federal financial aid and that students would have to qualify under Title IV of the HEA to be entitled to an emergency grant. The Emergency Grants FAQs contain no analysis or explanation for this change of course. Nor was the Department's certification revised to remove the inconsistent language that the grants were *not* considered federal financial aid under Title IV of the HEA.

76.    The Department reversed its position without displaying awareness that it was changing course, showing that the Eligibility Restriction was permissible under section 18004, and without providing good reasons for the change.

**E.    Injuries to the State of Washington and Its Residents**

77.    The Washington Legislature enacted the Community and Technical College Act of 1991, Wash. Rev. Code Title 28B.50. This Act created a network

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of community and technical colleges as an essential part of the State's higher education system, including the colleges referred to above. The purpose of the Act is to:

provide for the dramatically increasing number of students requiring high standards of education either as a part of the continuing higher education program or for occupational education and training, or for adult basic skills and literacy education, by creating a new, independent system of community and technical colleges which will:

(1) Offer an open door to every citizen, regardless of his or her academic background or experience, at a cost normally within his or her economic means;

(2) Ensure that each college district, in coordination with adjacent college districts, shall offer thoroughly comprehensive educational, training, and service programs to meet the needs of both the communities and students served by combining high standards of excellence in academic transfer courses; realistic and practical courses in occupational education, both graded and ungraded; community services of an educational, cultural, and recreational nature; and adult education, including basic skills and general, family, and workforce literacy programs and services;

(3) Provide for basic skills and literacy education, and occupational education and technical training in order to prepare students for careers in a competitive workforce;

(4) Provide or coordinate related and supplemental instruction for apprentices at community and technical colleges;

(5) Provide administration by state and local boards which will avoid unnecessary duplication of facilities, programs, student services, or administrative functions; and which will encourage efficiency in operation and creativity and imagination in education, training, and service to meet the needs of the community and students;

(6) Allow for the growth, improvement, flexibility and modification of the community colleges and their education, training, and service programs as future needs occur; and

(7) Establish firmly that as provided under RCW 28B.50.810, community colleges are, for purposes of academic training, two year institutions, and are an independent, unique, and vital section of our state's higher education system,

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    separate from both the common school system and other institutions
     of higher learning.

2    Wash. Rev. Code § 28B.50.020 (2019).

3        78.    Approximately 363,000 students are enrolled statewide in

4    Washington's community and technical colleges.

5        79.    Wash. Rev. Code Title 28B.10 establishes a system of Washington

6    universities. These include state universities, the University of Washington and

7    Washington State University; regional universities, Western Washington

8    University at Bellingham, Central Washington University at Ellensburg, and

9    Eastern Washington University at Cheney; and state college, The Evergreen State

10   College in Thurston county. Wash. Rev. Code § 28B.10.016 (2019). These

11   universities also are part of the State's system of higher education.

12       80.    Numerous colleges and universities in Washington have submitted

13   applications to the Department to receive HEERF monies and have signed Funding

14   Certifications and Agreements as required by the Department. This includes

15   Washington's major four-year universities and all 34 community and technical

16   colleges in Washington, including Columbia Basin College, Wenatchee Valley

17   College, Pierce College, North Seattle College, and Skagit Valley College. Many

18   of these institutions signed the Recipient's Funding Certification and Agreement

19   Emergency Financial Aid Grants to Students under the Coronavirus Aid, Relief,

20   and Economic Security (CARES) Act before the Department announced the

21   Eligibility Restriction.

22

FIRST AMENDED COMPLAINT                   30           ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                            Complex Litigation
INJUNCTIVE RELIEF                                          800 Fifth Avenue, Suite 2000
                                                             Seattle, WA 98104-3188
NO. 2:20-cv-00182-TOR                                            (206) 464-7744

81.     The Department's Eligibility Restriction applies to Washington colleges and universities and restricts their ability to distribute CARES Act funds to all needy students. But for the Eligibility Restriction, Washington colleges and universities would distribute CARES Act funding to students who qualify under section 18004(c) but are excluded by the challenged action.

82.     Students at Washington colleges and universities have been deeply affected by the COVID-19 pandemic. The disruption of campus operations has caused them to incur unexpected expenses such as food, housing, course materials, technology, health care, and child care. Some students have been unable to remain in school due to these expenses, and Washington institutions have lost enrollment as a result. In addition, the institutions anticipate continued loss of enrollment in summer terms and future semesters because of these expenses. The Eligibility Restriction has caused students to have to try to absorb the above expenses themselves, forced students to disenroll in order to manage these expenses, and worsened the rate of disenrollment from Washington institutions.

83.     Lack of financial resources is the most common reason for student disenrollment. Many students, particularly at technical and community colleges, work part-time while in school making them ineligible for unemployment benefits, and others are small business owners. Many such students are without an income because of COVID-19 and desperately need help. In addition, many Washington students are just above the level to receive Pell Grants. These individuals are often

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   the hardest hit because they do not meet the threshold to receive any significant

2   amount of aid, but they do not make enough to make ends meet. Many of these

3   students would be able to continue their education if their institutions could provide

4   CARES Act funding more broadly.

5       84.   The loss of enrollment at Washington institutions caused by the

6   Eligibility Restriction has reduced tuition payments and will continue to do so. This

7   financial injury harms the proprietary interests of Washington and its institutions of

8   higher education.

9       85.   Washington higher education students have encountered a variety of

10   needs during the switch to online learning. These include:

11       a.   Loss of access to campus computer labs, student media centers, artist

12       centers, electronics, science, and/or nursing labs requiring the purchase of

13       technical equipment for use at home such as computers, printers, cameras,

14       other equipment for classes, and upgrades of internet services or internet

15       hotspots;

16       b.   Loss of access to technology resources for disability services

17       accommodations such as screen readers, alternate format textbooks,

18       notetakers, or other needs;

19       c.   Loss of income from a campus job or other work;

20       d.   Loss of access to onsite counselors and other medical care; and

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

e.    Loss of access to campus gym shower facilities for personal hygiene when necessary due to living situations or homelessness.

86.    The Eligibility Restriction has forced Washington colleges and universities to deny emergency financial aid grants to students who are eligible for emergency financial aid grants under the CARES Act.

87.    545,000 of Washingtonians 18 and over lack a high school credential. The students improperly denied grants by the Eligibility Restriction include those in Basic Education for Adults (BEdA) programs. The majority of Washington's 51,838 Basic Education for Adults students are not receiving or deemed eligible for CARES Act funding. BEdA students fall into two categories: students who did not complete high school but are seeking to reengage in school to get a high school diploma and students for whom English is not their first language. The students for whom English is not their first language are often highly educated in their home countries and plan to enroll in a 4-year degree once their English language skills improve. Both these populations are more likely to rely on campus internet or computer labs making the transition to distance learning more challenging or impossible without financial support. Sometimes this is because the students cannot afford laptops or internet. Other students are older and face the additional burden that the use of technology is already more difficult or the use of the internet or a laptop was not part of their daily life.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

88.    The Eligibility Restriction also denies emergency financial aid grants to students in the Running Start Program. There are a significant number of Running Start students at Washington higher education institutions who are high school students taking primarily, or all, community college classes. In the 2017-18 school year, 28,541 community and technical college students were in a Running Start Program. Many of those students qualify for free or reduced lunches and now face food insecurity due to campus closure. They already face other economic barriers. For example, Running Start students do not qualify for federal aid money to purchase textbooks and other course materials.

89.    Other Washington students harmed by the Eligibility Restriction include those under the age of 24 who would otherwise qualify for aid under Title IV but cannot file a FAFSA because their parents will not sign the document. These include students who have been abandoned, whose parents were abusive, or whose parents simply refuse to sign because their child is now over 18 and they will no longer provide any form of assistance.

90.    According to data maintained by the Washington Student Achievement Council, of 76,198 expected graduates for the class of 2020 in Washington, 34,826 (or 45.7 percent) students did not submit a FAFSA. Wash. Student Achievement Council, FAFSA Completion, https://wsac.wa.gov/fafsa-completion (last accessed Sept. 17, 2020). Of the 41,372 students who did submit a FAFSA, 1,634 (or 3.9 percent) of those students submitted FAFSAs with errors.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Id.* Indeed, Washington has an extremely low FAFSA completion rate. According

2    to the Washington Student Achievement Council, for all 2019 seniors, it was

3    46 percent, which placed Washington 49th nationally. *Id.*

4    91.    In addition, Washington colleges and universities have many

5    students who have temporary protected status or DACA status. Under the

6    Department's Eligibility Restriction, these students are ineligible to receive

7    emergency financial aid under the CARES Act. If these students do not receive

8    this aid and no other assistance is available, many will have to disenroll, lose

9    housing, or face any number of consequences of lack of funds.

10    92.    Washington institutions may face legal claims by the Department if

11    they inadvertently disbursed funds in violation of the Eligibility Restriction. If

12    institutions inadvertently erred in determining a student's eligibility for federal

13    financial aid under Title IV and disbursed an emergency grant to the student, the

14    Department could demand they pay back the money back to the Department, or

15    seek to impose False Claims Act liability.

16    93.    The missions of Washington institutions of higher education are

17    harmed by the Eligibility Restriction. Colleges and universities already have lost

18    student enrollment because of the Eligibility Restriction and expect that more

19    students will disenroll. The loss of enrollment because of the Eligibility

20    Restriction will cause students to give up or put on hold their hopes of bettering

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

their lives, which is the ultimate goal of Washington's system of higher education.

## V.    CAUSES OF ACTION

### Count I:
### Violation of the Administrative Procedure Act
### Agency Action in Excess of Statutory Authority, Short of Statutory Right, or Not in Accordance with Law

94.    Washington realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

95.    The APA requires that a court hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory authority, short of statutory right, or not in accordance with law. 5 U.S.C. § 706(2)(A), (C) (1966).

96.    Congress did not grant the Department authority to interpret section 18004 of the CARES Act. In addition, Congress did not delegate authority to the Department to make rules concerning section 18004, such as the Eligibility Restriction, carrying the force of law. The Department's Eligibility Restriction is unauthorized by and contrary to section 18004(c) of the CARES Act. It therefore is in excess of statutory authority, short of statutory right, and not in accordance with law.

97.    To the extent the Department claims that its Eligibility Restriction is merely an interpretation contained in a policy statement, agency manual, or enforcement guideline that lacks the force of law, the Department's interpretation

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    is entitled to no or only limited deference. The Eligibility Restriction is not

2    persuasive, nor does it reflect thorough consideration. There are many students

3    at Washington's institutions of higher education who are not U.S. citizens or who

4    otherwise do not qualify for financial aid under Title IV, but who need emergency

5    financial assistance due to the impacts of COVID-19. In fact, many of the

6    students who do not qualify under the Eligibility Restriction are those most in

7    need of financial support. In any event, Congress's intent in the CARES Act is

8    clear that institutions of higher education possess discretion to determine which

9    students need emergency grants to cover expenses related to the disruption of

10   campus operations due to coronavirus, and their discretion is not limited by

11   section 484 of Title IV of the HEA or PRWORA.

12        98.    Absent injunctive and declaratory relief suspending and vacating the

13   April 21 Guidance, the May 21 Guidance, and the Interim Final Rule Washington

14   and its residents will be immediately, continuously, and irreparably harmed by

15   Defendants' illegal actions.

**Count II:
Violation of the Administrative Procedure Act
Arbitrary and Capricious Agency Action**

18        99.    Washington realleges and reincorporates by reference the

19   allegations set forth in each of the preceding paragraphs.

20

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      100.   The APA requires that a court hold unlawful and set aside agency

2      action, findings, and conclusions found to be arbitrary, capricious, or an abuse of

3      discretion. 5 U.S.C. § 706(2)(A) (1966).

4      101.   The Eligibility Restriction is an arbitrary and capricious agency

5      action because, among other reasons, the Department expressed no awareness

6      that it was reversing its position, its new position is not permissible under section

7      18004 of the CARES Act, and the Department failed to provide good reasons for

8      its sudden change in interpretation. Further, the Eligibility Restriction is so

9      implausible that it cannot be ascribed to a difference in view or the product of

10     agency expertise ignores important aspects of the problem and runs counter to

11     the evidence before the Department. In addition, the Eligibility Restriction is so

12     implausible that it cannot be ascribed to a difference in view or the product of

13     agency expertise.

14     102.   Absent injunctive and declaratory relief suspending and vacating the

15     April 21 Guidance, May 21 Guidance, and Interim Final Rule Washington and

16     its residents will be immediately, continuously, and irreparably harmed by

17     Defendants' illegal actions.

18                                    **Count III:**
       **Violation of the Administrative Procedure Act**
19     **Agency Action Without Observance of Procedure Required by Law**

20     103.   Washington realleges and reincorporates by reference the

21     allegations set forth in each of the preceding paragraphs.

22

FIRST AMENDED COMPLAINT                    38        ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                           Complex Litigation
                                                          800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                             Seattle, WA 98104-3188
NO. 2:20-cv-00182-TOR                                           (206) 464-7744

1   104.   The APA requires that a court hold unlawful and set aside agency

2   action, findings, and conclusions found to be without observance of procedure

3   required by law. 5 U.S.C. § 706(2)(D) (1966).

4   105.   The APA requires an agency to give "[g]eneral notice of proposed

5   rule making" and provide "interested persons an opportunity to participate in the

6   rule making through submission of written data, views, or arguments with or

7   without opportunity for oral presentation." 5 U.S.C. §§ 553(b), (c) (2020). If an

8   agency foregoes notice-and-comment rulemaking, it generally must "for good

9   cause find[] (and incorporate[] the finding and a brief statement of reasons

10   therefor in the rules issued) that notice and public procedure thereon are

11   impracticable,   unnecessary,   or   contrary   to   the   public   interest."

12   5 U.S.C. § 553(b)(3)(B) (2020).

13   106.   "[T]he good cause exception" to the APA "is to be narrowly

14   construed and only reluctantly countenanced." *Mack Trucks, Inc. v. E.P.A.*,

15   682 F.3d 87, 93 (D.C. Cir. 2012) (quoting *Util. Solid Waste Activities Grp. v.*

16   *E.P.A.*, 236 F.3d 749, 754 (D.C. Cir. 2001)). That standard is "meticulous and

17   demanding." *N.J., Dep't of Envtl. Prot. v. U.S. Envtl. Prot. Agency*, 626 F.2d

18   1038, 1046 (D.C. Cir. 1980). The exemption excuses agencies from the notice

19   and comment requirement only "in emergency situations, or where delay could

20   result in serious harm." *Jifry v. F.A.A.*, 370 F.3d 1174, 1179 (D.C. Cir. 2004)

21   (internal citation omitted).

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

39

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

107.   The Eligibility Restriction is a legislative rule adopted without complying with the notice and comment requirements of the APA.

108.   The Eligibility Restriction was procedurally defective because the Department did not satisfy the good cause exception in 5 U.S.C. § 553(b)(3)(B). Absent injunctive and declaratory relief suspending and vacating the April 21 Guidance, May 21 Guidance, and Interim Final Rule Washington and its residents will be immediately, continuously, and irreparably harmed by Defendants' illegal actions.

### Count IV:
### Separation of Powers

109.   Washington realleges and reincorporates by reference the allegations set forth in each of the preceding paragraphs.

110.   Article I of the Constitution "exclusively grants the power of the purse to Congress[.]" *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018) (citing U.S. Const. art. I, § 9, cl. 7; U.S. Const. art. I, § 8, cl. 1). That power includes "condition[ing] the receipt of funds, by states or others, on compliance with federal directives." *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989). As the Ninth Circuit recently reaffirmed, the Executive Branch "does not have unilateral authority" to "thwart congressional will by canceling appropriations passed by Congress." *City & County of San Francisco*, 897 F.3d at 1232 (internal quotation marks and citations omitted); *Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("[N]o provision in the

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

40

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Constitution . . . authorizes the President to enact, to amend, or to repeal statutes."). To that end, the Executive Branch is without inherent power to "condition the payment of . . . federal funds on adherence to its political priorities." *Oregon v. Trump*, 406 F. Supp. 3d 940, 961 (D. Or. 2019) (citing *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018), *reh'g en banc granted in part, opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated on other grounds*, Nos. 17-2991 & 18-2649, 2018 WL 4268814 (7th Cir. Aug. 10, 2018)). If the Executive Branch wishes to condition the receipt of federal funds, it may *only* do so pursuant to a specific delegation of spending authority by Congress. *City & County of San Francisco*, 897 F.3d at 1233-34.

111.   The Eligibility Restriction permits Defendants to withhold, deny, suspend, claw back, or terminate money appropriated by Congress, thereby violating constitutional separation of powers principles based on conditions not provided for in the CARES Act. Defendants did not have inherent authority to impose these restrictions. Nor did Congress afford Defendants any discretion or authority to place such restrictions through the CARES Act.

112.   In unilaterally imposing the Eligibility Restriction, the Department abrogated the discretion given the educational institutions in the CARES Act and usurped Congress' power to legislate in violation of the principles of separation of powers.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

41

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    113.    Absent injunctive and declaratory relief vacating the Final Rule and

2    prohibiting it from going into effect, Washington and its residents will be

3    immediately, continuously, and irreparably harmed by Defendants' illegal

4    actions.

**Count V:**
**Spending Clause**

5

6    114.    Washington realleges and reincorporates by reference the

7    allegations set forth in each of the preceding paragraphs.

8    115.    Article I, section 8, clause 1 of the United States Constitution, also

9    known as the Spending Clause, states that "Congress shall have Power To lay

10   and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for

11   the common Defence and general Welfare of the United States[.]"

12   116.    Under the Spending Clause, conditions may not be placed on federal

13   funds that are (1) so coercive that they compel (rather than encourage) recipients

14   to comply, (2) ambiguous, (3) retroactive, or (4) unrelated to the federal interest

15   in a particular program. *Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S.

16   519, 575–78 (2012); *South Dakota v. Dole*, 483 U.S. 203, 206–08 (1987).

17   117.    At the very least, the Department's Eligibility Restriction violates

18   the Constitutional requirements that conditions on funds be "unambiguous" and

19   not retroactive because they are improper "post-acceptance" restrictions.

20   *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)

21   ("[I]f Congress intends to impose a condition on the grant of federal moneys, it

22

FIRST AMENDED COMPLAINT                42        ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                              Complex Litigation
INJUNCTIVE RELIEF                                800 Fifth Avenue, Suite 2000
NO. 2:20-cv-00182-TOR                            Seattle, WA 98104-3188
                                                 (206) 464-7744

must do so unambiguously."). States "cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.' " *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17).

118.  "Though Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25; *see also Sebelius*, 567 U.S. at 584 (quoting *Pennhurst*, holding Congress cannot retroactively alter conditions of Medicaid grants to states). Once a state has accepted funds pursuant to a federal spending program, the federal government cannot alter the conditions.

119.  Accordingly, the Spending Power does not permit what the Department is attempting to do here: "surprising participating States with post acceptance or 'retroactive' conditions" on congressionally appropriated funds. *Pennhurst*, 451 U.S. at 25; *see also Sebelius*, 567 U.S. at 519 (quoting *Pennhurst*, holding Congress cannot retroactively alter conditions of Medicaid grants to states). Once a state or state entity has accepted funds pursuant to a federal spending program, the federal government cannot alter the conditions attached to those funds so significantly as to "accomplish[] a shift in kind, not merely degree." *Sebelius*, 567 U.S. at 523.

120.  The Eligibility Restriction is not stated unambiguously in the CARES Act. Further, Washington institutions did not know of the Eligibility

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

43

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Restriction at the time they signed the Department's certification to receive

2  emergency financial aid grants for their students. Therefore they were unable to

3  exercise their choice knowingly, cognizant of the consequences of their

4  participation, and they were surprised with post acceptance or retroactive

5  conditions. In addition, the Eligibility Restriction is not related to the federal

6  interest in assisting students impacted by COVID-19, nor is it consistent with

7  other provisions of the Constitution. For these reasons, the Eligibility Restriction

8  violates the Spending Clause.

9      121.    Absent injunctive and declaratory relief vacating the Final Rule and

10  prohibiting it from going into effect, Washington and its residents will be

11  immediately, continuously, and irreparably harmed by Defendants' illegal

12  actions.

13              **VI.    PRAYER FOR RELIEF**

14      WHEREFORE, the State of Washington prays that the Court:

15      a.    Declare Defendants' April 21, May 21, and Interim Final Rule

16  restrictions on student eligibility for emergency financial relief grants

17  unauthorized by and contrary to the Constitution and laws of the United States,

18  and the only requirement applicable to institutions of higher education is that the

19  funds be used to provide emergency financial aid to their students for expenses

20  related to the disruption of campus operations due to coronavirus (including

21

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

44

1    eligible expenses under a student's cost of attendance, such as food, housing,

2    course materials, technology, health care, and child care);

3         b.     Declare Defendants' April 21, May 21, and Interim Final Rule

4    restrictions on student eligibility for emergency financial relief grants invalid and

5    without force of law;

6         c.     Issue preliminary and permanent injunctions prohibiting Defendants

7    from implementing or enforcing the April 21, May 21, and Interim Final Rule

8    restrictions on student eligibility for emergency financial relief grants;

9         d.     Compel Defendants to rescind the April 21, May 21, and Interim

10    Final Rule restrictions on student eligibility for emergency financial relief grants

11    and to distribute CARES Act funds to Washington institutions without any such

12    restriction, pursuant to 28 U.S.C. § 1361;

13         e.     Award the State of Washington its costs and reasonable attorneys'

14    fees; and

15         f.     Award such other and further relief as the interests of justice may

16    require.

17         RESPECTFULLY SUBMITTED this 18th day of September 2020.

18         ROBERT W. FERGUSON
     Attorney General of Washington

19

20         */s/ R. July Simpson*
     JEFFREY T. SPRUNG, WSBA #23607
     R. JULY SIMPSON, WSBA #45869

21         SPENCER W. COATES, WSBA #49683
     PAUL M. CRISALLI, WSBA #40681

22

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

45

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
jeff.sprung@atg.wa.gov
july.simpson@atg.wa.gov
spencer.coates@atg.wa.gov
paul.crisalli@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
NO. 2:20-cv-00182-TOR

46

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744