1   ROBERT W. FERGUSON
    *Attorney General*
2
    R. JULY SIMPSON, WSBA #45869
3   JEFFREY T. SPRUNG, WSBA #23607
    SPENCER W. COATES, WSBA #49683
4   PAUL M. CRISALLI, WSBA #40681
    *Assistant Attorneys General*
5   800 Fifth Avenue, Suite 2000
    Seattle, WA 98104-3188
6   (206) 464-7744

7           **UNITED STATES DISTRICT COURT**
          **EASTERN DISTRICT OF WASHINGTON**
8                    **AT SPOKANE**

9   STATE OF WASHINGTON,              NO. 2:20-cv-00182-TOR

10              Plaintiff,            PLAINTIFF STATE OF
                                      WASHINGTON'S MOTION
11      v.                            FOR SUMMARY JUDGMENT

12  BETSY DeVOS, in her official      NOTED FOR: February 24, 2021
    capacity as Secretary of the United   Without Oral Argument
13  States Department of Education, and
    the UNITED STATES
14  DEPARTMENT OF EDUCATION, a
    federal agency,
15
                Defendants.
16

17

18

19

20

21

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................1

II.   STATUTORY AND FACTUAL BACKGROUND...........................1

      A.  The Coronavirus Aid, Relief, and Economic Security Act...........1

      B.  The Department's CARES Act Guidance Initially Complied with Congress's Directive ...............................................3

      C.  The Department Reverses Its Policy Without Explanation ..........5

      D.  Multiple States Seek to Enjoin the Eligibility Requirement and the Department Engages in Rulemaking.......................................7

III.  ARGUMENT...........................................................................9

      A.  Legal Standard ...............................................................9

      B.  The Eligibility Restriction Exceeds the Department's Statutory Authority ........................................................................10

          1.  Congress did not delegate authority to the Department to make eligibility rules for student emergency grants.............10

              a.   The plain language of section 18004 forecloses any rulemaking authority ......................................................10

              b.   The Secretary has no implicit rulemaking authority......11

          2.  The Department's Eligibility Restriction fails to persuade under *Skidmore* ...................................................13

      C.  The Department's Eligibility Restriction is Arbitrary and Capricious...................................................................19

      D.  The Eligibility Restriction Violates Separation of Powers.........22

      E.  The Eligibility Restriction Violates the Spending Clause ..........23

IV.   CONCLUSION ...................................................................24

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

# TABLE OF AUTHORITIES

2

## <u>Cases</u>

3

4

*Albino v. Baca,*
   747 F.3d 1162 (9th Cir. 2014)...................................................................9

5

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
   548 U.S. 291 (2006)....................................................................................24

6

7

*Charles v. Verhagen,*
   348 F.3d 601 (7th Cir. 2003.......................................................................24

8

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984).........................................................................9, 13, 15

9

10

*Chinook Indian Nation v. U.S. Dep't of Interior,*
   No. C17-5668-RBL, 2020 WL 363410 (W.D. Wash. Jan. 22, 2020) ...........20

11

*City & County of San Francisco v. Trump,*
   897 F.3d 1225 (9th Cir. 2018).....................................................................22

12

13

*City of Arlington, Tex. v. F.C.C.,*
   569 U.S. 290 (2013) ......................................................................................9

14

*City of Los Angeles v. Barr,*
   941 F.3d 931 (9th Cir. 2019).......................................................................12

15

16

*F.C.C. v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ....................................................................................20

17

*FDA v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) .............................................................................15, 18

18

19

*Gonzalez v. Oregon,*
   546 U.S. 243 (2006) .....................................................................9, 10, 12, 13

20

*King County v. Azar,*
   320 F. Supp. 3d 1167 (W.D. Wash. 2018), *appeal dismissed*
   No. 18-35606, 2018 WL 5310765 (9th Cir. Sept. 20, 2018) .........................10

21

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*La. Pub. Serv. Comm'n v. F.C.C.,*
   476 U.S. 355 (1986) ....................................................................................9

*Massachusetts v. U.S. Dep't of Educ.,*
   No. 1:20-11600-LTS, 2020 WL 6750518 (D. Mass. Sept. 3, 2020) ...........7, 8

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ...............................................................................19, 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*),
   567 U.S. 519 (2012) ..................................................................................23

*National Cable & Telecommunications Association v. Brand X Internet
   Services,*
   545 U.S. 967 (2005) .............................................................................11, 19

*New York v. United States,*
   505 U.S. 144 (1992) ..................................................................................24

*Noerand v. Devos,*
   No. 20-11271-LTS, 2020 WL 4274559 (D. Mass. July 24, 2020)..................8

*Oakley v. Devos,*
   No. 20-CV-03215-YGR, 2020 WL 3268661
   (N.D. Cal. June 17, 2020) .....................................................................7, 8, 23

*Pennhurst State Sch. & Hosp. v. Halderman,*
   451 U.S. 1 (1981) .....................................................................................24

*Perrin v. United States,*
   444 U.S. 37 (1979) ....................................................................................16

*Russello v. United States,*
   464 U.S. 16 (1983) ....................................................................................11

*Sierra Club v. Trump,*
   929 F.3d 670 (9th Cir. 2019).............................................................9, 13, 15

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ..............................................................................8, 13, 15

*South Dakota v. Dole,*
   483 U.S. 203 (1987) ..................................................................................23

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Sutton v. United Air Lines, Inc.*,
   527 U.S. 471 (1999) ........................................................................12

*Train v. City of New York*,
   420 U.S. 35 (1975) ........................................................................22

*Union Station Assocs. LLC v. Puget Sound Energy, Inc.*,
   238 F. Supp. 2d 1226 (W.D. Wash. 2002) .....................................10

*Washington v. U.S. Dep't of State*,
   318 F. Supp. 3d 1247 (W.D. Wash. 2018) .....................................20

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
   864 F.3d 158 (2d Cir. 2017) ..........................................................13

### Constitutional Provisions

U.S. Const. art. I, § 8, cl. 1 .................................................................22

### Statutes

5 U.S.C. § 706(2)(A) (2020) ........................................................9, 19

5 U.S.C. § 706(2)(C) (2020) ..............................................................9

20 U.S.C. §§ 1001 *et seq.* (2020) ....................................................17

20 U.S.C. §§ 1051-1068h (2020) .....................................................17

20 U.S.C. §§ 1070-1099d (2020) .....................................................17

20 U.S.C. § 1091(a)(3) (2020) ...........................................................6

20 U.S.C. § 1091(c)(1)(B) (2020) ......................................................6

20 U.S.C. §§ 1101-1103g (2020) .....................................................17

20 U.S.C. §§ 1121-1132 (2020) .......................................................17

20 U.S.C. §§ 1151-1155 (2020) .......................................................17

20 U.S.C. § 1161w (2020) ...............................................................22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

20 U.S.C. § 1161w(f)(2) (2020) ........................................................................18

31 U.S.C. § 3729(a)(1) ........................................................................................6

Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020).........................................2

Pub. L. No. 116-136, 134 Stat. 281 § 3513 (Mar. 27, 2020) ......................14, 18

Pub. L. No. 116-136, 134 Stat. 281 § 3513(f) (Mar. 27, 2020) .......................11

Pub. L. No. 116-136, 134 Stat. 281 § 18001(b) (Mar. 27, 2020).......................2

Pub. L. No. 116-136, 134 Stat. 281 § 18004 (Mar. 27, 2020) ...................passim

Pub. L. No. 116-136, 134 Stat. 281 § 18004(a) (Mar. 27, 2020).................2, 16

Pub. L. No. 116-136, 134 Stat. 281 § 18004(a)(1) (Mar. 27, 2020) ...................2

Pub. L. No. 116-136, 134 Stat. 281 § 18004(a)(2) (Mar. 27, 2020) .................16

Pub. L. No. 116-136, 134 Stat. 281 § 18004(a)(3) (Mar. 27. 2020) .................16

Pub. L. No. 116-136, 134 Stat. 281 § 18004(b) (Mar. 27, 2020)............2, 17, 18

Pub. L. No. 116-136, 134 Stat. 281 § 18004(c) (Mar. 27, 2020).................2, 16

Pub. L. No. 116-136, 134 Stat. 281 § 18007 (Mar. 27, 2020) ..........................16

## **Regulations**

34 C.F.R. § 668.32 (2020) ..................................................................................6

34 C.F.R. § 668.34(a)(4)(ii) (2020) ...................................................................6

34 C.F.R. § 685.207 (2020) ..............................................................................21

34 C.F.R. § 690.79 (2020) ................................................................................21

34 C.F.R. § 690.80 (2020) ................................................................................21

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.   INTRODUCTION

On June 12, 2020, this Court preliminarily enjoined the U.S. Department of Education's April 21, 2020, guidance and its June 15, 2020, Interim Final Rule. ECF No. 31. It concluded that "Section 18004 [of the Coronavirus Aid, Relief, and Economic Security Act] . . . does not indicate an intent to subject [Higher Education Emergency Relief Funds] funds to Title IV" of the Higher Education Act, and "Defendants' minimal consideration of the interests of non-Title IV eligible students at present, combined with Defendants' position that the April 9 and April 21 statements are not inconsistent, do not reflect thorough evidence in support of the agency's decision-making or consistency between its pronouncements." *Id.* at 27, 28-29.

Washington now brings this motion for summary judgment asking the Court to affirm its preliminary conclusion and convert its preliminary injunction into a final judgment. In addition, Washington submits that the Rule is arbitrary and capricious and violates the separation of powers doctrine and the Spending Clause. This Court should enter summary judgment against the Department on these claims and vacate the April 21 guidance and the Interim Final Rule in their entirety.

# II.   STATUTORY AND FACTUAL BACKGROUND

## A.   The Coronavirus Aid, Relief, and Economic Security Act

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Economic Security Act (CARES Act). Pub. L. No. 116-136, 134 Stat. 281

2    (Mar. 27, 2020). The CARES Act appropriated $14 billion for the Higher

3    Education Emergency Relief Fund (HEERF), the section at issue in this litigation.

4    CARES Act § 18001(b).

5        Congress explained its intent in enacting the HEERF in section 18004.

6    First, it commanded the Secretary of Education to distribute the HEERF to

7    institutions of higher education. CARES Act § 18004(a). Second, it specified

8    exactly how the Secretary is to allocate the money, prescribing a formula based

9    on student enrollment. *Id.* § 18004(a)(1). Third, it provided explicit instructions

10   on the means of distribution, dictating that the Secretary employ the

11   Department's existing grants management system used to distribute federal

12   student aid funds. CARES Act § 18004(b). Fourth, it specified how HEERF

13   funds may be used, providing, as relevant to this litigation:

> Institutions of higher education shall use no less than 50 percent of
> such funds to provide emergency financial aid grants to students for
> expenses related to the disruption of campus operations due to
> coronavirus (including eligible expenses under a student's cost of
> attendance, such as food, housing, course materials, technology,
> health care, and child care).

CARES Act § 18004(c).

        Section 18004 did not grant the Secretary any rulemaking or interpretive

authority, nor any discretion in implementing Congress's directives. Indeed,

subsection (c), the use provision, did not mention the Secretary at all.

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**B.      The Department's CARES Act Guidance Initially Complied with Congress's Directive**

The Department initially followed Congress's instructions. On April 9, 2020, it released the portion of the CARES Act funding Congress appropriated for student emergency grants. In addition the Department issued a press release, a letter from Secretary DeVos to college and university presidents, a certification form for higher education institutions, and a list of individual allocations to colleges and universities. Administrative Record (AR) 99-100, 103-105, 125-26; ECF No. 6-1 (Ex. D).

The Department's April 9, 2020, issuances correctly read the CARES Act as giving no authority to the Department to restrict the students to whom institutions awarded emergency grants, and as empowering institutions to determine the recipients limited only by the express requirements in the Act. Specifically, in the April 9, 2020, letter to college and university presidents, Secretary DeVos wrote that "[t]he CARES Act provides institutions with significant discretion on how to award this emergency assistance to students." AR 99-100. This "means that each institution may develop its own system and process for determining how to allocate these funds[.]" *Id.* She stated that "[t]he *only* statutory requirement is that the funds be used to cover expenses related to the disruption of campus operations due to coronavirus (including eligible expenses under a student's cost of attendance, such as food, housing, course materials, technology, health care, and child care)." *Id.* (emphasis added).

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Further, the Department's press release confirmed that once institutions

2    submitted the required certification, "[t]he college or university will then

3    determine which students will receive the cash grants." AR 125-26. And the

4    certification form also acknowledged that institutions "retain[] discretion to

5    determine the amount of each individual emergency financial aid grant consistent

6    with all applicable laws including non-discrimination laws." AR 103-105. The

7    language in the certification regarding institutions' use of CARES Act

8    emergency grant funding was intentionally hortatory and not mandatory, using

9    phrases such as "the Secretary recommends," "the Recipient should be mindful,"

10   and the "Secretary strongly encourages." *Id.* The certification form expressly

11   disavowed that CARES Act emergency grants were subject to the requirements

12   of Title IV of the Higher Education Act (HEA): "The Secretary does not consider

13   these individual emergency financial aid grants to constitute Federal financial aid

14   under Title IV of the HEA." *Id.*

15       Washington higher education institutions, acting urgently on Congress's

16   offer of federal aid to their students, promptly submitted applications and signed

17   certifications according to the Department's then-existing instructions and

18   assurances. ECF No. 7 (Woods Decl.) at 6 ¶ 12 (applied April 10, 2020);

19   ECF No. 8 (Flores Decl.) at 6 ¶ 12 (applied April 12, 2020); ECF No. 9 (Allison

20   Decl.) at 6 ¶ 12 (applied April 13, 2020); ECF No. 10 (Buchmann Decl.) at 6-8

21   ¶¶ 12-13 (applied April 21, 2020); ECF No. 11 (Soto Decl.) at 5-6 ¶ 12 (applied

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    April 21, 2020); ECF No. 12 (Sanchez Decl.) at 6 ¶ 12 (applied April 10, 2020).

2    **C.    The Department Reverses Its Policy Without Explanation**

3             Nevertheless, 11 days later the Department abruptly and inexplicably

4    reversed course. On April 21, 2020, in connection with its release of different

5    CARES Act funding, the Department issued "FAQs" that purported to restrict

6    student eligibility for emergency grants. The Department asserted that "[o]nly

7    students who are or could be eligible to participate in programs under Section

8    484 in Title IV of the Higher Education Act of 1965, as amended (HEA), may

9    receive emergency financial aid grants." AR 109 (FAQ #9); (*see also*

10   ECF No. 6-1, Ex. H, FAQ #5 (the "Eligibility Restriction")). Despite Congress

11   having assigned the Department no role in determining institutions' use of

12   emergency grant funds, the Department engrafted its own eligibility restriction

13   onto those grant funds from a different statute, unlawfully adding that onto "[t]he

14   only statutory requirement" it previously had identified, AR 99-100, and

15   restricted institutions' discretion.

16            The Department's unilateral Eligibility Restriction excluded hundreds of

17   thousands of students in desperate need of financial assistance nationwide. The

18   HEA contains numerous requirements for student eligibility for financial aid not

19   found in the CARES Act. These include U.S. citizenship or legal permanent

20   resident status; a valid Social Security number; registration with Selective Service

21   (if the student is male); a high school diploma, GED, or completion of high school

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    in an approved homeschool setting; that the student not be in default on any loan

2    issued by the Department; and maintenance of at least a cumulative C average, or

3    its equivalent or academic standing consistent with the requirements for graduation.

4    20 U.S.C. §§ 1091(a)(3), (c)(1)(B) (2020); *see also* 34 C.F.R. §§ 668.32,

5    668.34(a)(4)(ii) (2020); ECF No. 13 (Yoshiwara Decl.) at 5-6 ¶ 11.

6        While technically a student does not need to possess a Department-approved

7    federal student aid application (called a Free Application for Federal Student Aid,

8    or FAFSA), most schools do "not have the capability to determine if students are

9    eligible for federal financial aid under Title IV without information provided by

10   [the Department], such as an approved FAFSA." ECF No. 8 (Flores Decl.) at 5

11   ¶ 10; *see also* ECF No. 13 (Yoshiwara Decl.) at 11-12 ¶ 21. Furthermore, "given

12   the number of these students and the urgent need for us to distribute the

13   emergency grants," those schools "do not have the capacity to research and

14   independently determine if these students would qualify for federal financial aid

15   under Title IV." ECF No. 8 (Flores Decl.) at 9 ¶ 18.

16       Institutions' compliance with the Eligibility Restriction is mandatory. The

17   Department's required certifications made institutions that received HEERF money

18   liable for any failure to comply with the CARES Act—threatening treble damages

19   under the False Claims Act, 31 U.S.C. § 3729(a)(1), if they did not abide by the

20   Eligibility Restriction. AR 104; ECF No. 6-1 (Ex. I) at 139 ¶ 4(i); *see also*

21   ECF No. 8 (Flores Decl.) at 6 ¶ 11; ECF No. 7 (Woods Decl.) at 6 ¶ 11;

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    ECF No. 10 (Buchmann Decl.) at 6 ¶ 11; ECF No. 9 (Allison Decl.) at 6 ¶ 11;

2    ECF No. 12 (Sanchez Decl.) at 6 ¶ 11.

3           Thus the Department's Eligibility Restriction immediately cut off access to

4    emergency grants to tens of thousands of Washington students and denied

5    institutions discretion granted by Congress in using HEERF funds.

6    **D.    Multiple States Seek to Enjoin the Eligibility Requirement and the
          Department Engages in Rulemaking**

7
            On May 19, 2020, Washington State filed suit against the Department
8
     challenging the Eligibility Restriction and that same day filed a Motion for
9
     Preliminary Injunction seeking to enjoin the Eligibility Restriction. ECF No. 1
10
     and ECF No. 5. California filed suit on May 11, 2020, along with a Motion for
11
     Preliminary Injunction on May 13, 2020. *Oakley v. Devos*, No. 20-CV-03215-
12
     YGR, 2020 WL 3268661 (N.D. Cal. June 17, 2020). And on August 26, 2020,
13
     Massachusetts filed suit and a motion for preliminary injunction. *Massachusetts*
14
     *v. U.S. Dep't of Educ.*, No. 1:20-11600-LTS, 2020 WL 6750518 (D. Mass. Sept.
15
     3, 2020). In spite of these challenges, on June 11, 2020, the Department filed a
16
     notice that they would be filing an interim final rule to codify the Eligibility
17
     Restriction that would be published in the Federal Register within a few days.
18
     ECF No. 28.
19
            However, on June 12, 2020, this Court granted Washington's Motion for
20
     Preliminary Injunction holding that Washington was likely to succeed on its
21
     arguments that the CARES Act did not delegate rulemaking authority to the
22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Department and that the Eligibility Restriction fails to persuade under *Skidmore*.

2    ECF No. 31 at 23-25, 30. The Court did not reach Washington's argument that

3    the Eligibility Requirement is arbitrary and capricious, nor did the Court reach

4    the constitutional challenges raised by Washington. *Id.*

5          Subsequent district courts followed suit enjoining the Eligibility

6    Requirement in those states, though on different legal grounds. On June 17, 2020,

7    the Northern District of California enjoined enforcement of the Eligibility

8    Requirement in California, holding that the Department exceeded its authority in

9    imposing the Eligibility Requirement and that the Eligibility Requirement

10   violated the constitution under separation of powers principles and the Spending

11   Clause. *Oakley*, 2020 WL 3268661, at *18. On July 24, 2020, in *Noerand v.*

12   *Devos*, No. 20-11271-LTS, 2020 WL 4274559 (D. Mass. July 24, 2020), a case

13   filed by a student, the District of Massachusetts granted a motion for preliminary

14   injunction, holding that the CARES Act directs the distribution of funds

15   regardless of immigration status and directing the Secretary to disburse funds to

16   the Plaintiff. And on September 3, 2020, in the case filed by the State of

17   Massachusetts, the District of Massachusetts issued a preliminary injunction

18   barring the Department from enforcing the interim final rule in Massachusetts.

19   *Massachusetts v. U.S. Dep't of Educ.*, No. 1:20-11600-LTS, 2020 WL 6750518

20   (D. Mass. Sept. 3, 2020).

21

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

### III.   ARGUMENT

2

**A.    Legal Standard**

3      The APA provides that courts must "hold unlawful and set aside" agency

4   action that is "in excess of statutory jurisdiction, authority, or limitations," "not

5   in accordance with law," or "arbitrary, capricious, [or] an abuse of discretion[.]"

6   5 U.S.C. §§ 706(2)(A), (C) (2020). Additionally, an agency "literally has no

7   power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv.*

8   *Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). In determining whether agency

9   action exceeds statutory authority, "the question . . . is always whether the agency

10   has gone beyond what Congress has permitted it to do[.]" *City of Arlington, Tex.*

11   *v. F.C.C.*, 569 U.S. 290, 297-98 (2013). When Congress has not delegated

12   interpretive authority and yet an agency takes it upon itself to exercise that

13   authority, the agency's action is not entitled to deference. *Chevron, U.S.A., Inc.*

14   *v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See also Gonzalez*

15   *v. Oregon*, 546 U.S. 243, 258 (2006); *Sierra Club v. Trump*, 929 F.3d 670, 692

16   (9th Cir. 2019). Even where an agency has authority to interpret a statute, its

17   interpretation will receive no deference where "the intent of Congress is clear"

18   on the question at issue. *Chevron*, 467 U.S. at 842 & n.9.

19      "[S]ummary judgment is appropriate when 'there is no genuine dispute as

20   to any material fact and the movant is entitled to judgment as a matter of law.' "

21   *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc) (quoting Fed. R.

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Civ. P. 56(a)). Where, as here, the material facts are not genuinely in dispute and

2    the questions before the Court are purely legal, the Court can resolve APA

3    challenges on summary judgment. *King County v. Azar*, 320 F. Supp. 3d 1167,

4    1171 (W.D. Wash. 2018), *appeal dismissed* No. 18-35606, 2018 WL 5310765

5    (9th Cir. Sept. 20, 2018). Similarly, questions of statutory interpretation are

6    questions of law, which may properly be resolved at summary judgment. *See*

7    *Union Station Assocs. LLC v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226,

8    1229 (W.D. Wash. 2002).

9    **B.    The Eligibility Restriction Exceeds the Department's Statutory Authority**

10

11    **1.    Congress did not delegate authority to the Department to make eligibility rules for student emergency grants**

12

13    **a.    The plain language of section 18004 forecloses any rulemaking authority**

14    The language of section 18004 lacks *any* delegation of rulemaking

15    authority to the Secretary. *See* ECF No. 31 at 23.The starting point for an inquiry

16    into rulemaking authority is the language of the statutory provision at issue.

17    *Gonzalez*, 546 U.S. at 258. As in *Gonzalez*, the CARES Act "does not grant" the

18    Department "broad authority to promulgate rules." *Id.* at 259. And, as this Court

19    has already stated, "[t]he . . . limited powers [granted to the Department], to be

20    exercised in specific ways," *id.*, is "inconsistent with [the Department's] claim of

21    general rulemaking authority under the HEA." ECF No. 31 at 25.

22    The absence of rulemaking authority in section 18004 is in sharp contrast

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR                                      10                                      ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    to other portions of the Act that do delegate rulemaking authority to agencies. For

2    example, in an earlier section—specifically addressing relief for student loan

3    borrowers—the Secretary is delegated authority to "waive the application of . . .

4    negotiated rulemaking" under the HEA. CARES Act § 3513(f).

5        But what is lacking is any reference to rulemaking to interpret section

6    18004. "[W]here Congress includes particular language in one section of a statute

7    but omits it in another section of the same Act, it is generally presumed that

8    Congress acts intentionally and purposely in the disparate inclusion or

9    exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). The CARES Act

10    is clear: Congress did not intend to delegate rulemaking authority to the

11    Department to interpret section 18004. *See* ECF No. 31 at 23.

12        **b.    The Secretary has no implicit rulemaking authority**

13        Nor is there a statutory ambiguity that grants implicit rulemaking authority

14    to limit which students may or may not receive CARES emergency grants. As

15    this Court noted, although "ambiguities in statutes within an agency's jurisdiction

16    to administer are delegations of authority to the agency to fill the statutory gap in

17    reasonable fashion," *National Cable & Telecommunications Association v.*

18    *Brand X Internet Services*, 545 U.S. 967, 980 (2005), there is no statutory

19    ambiguity here that would justify the kind of rulemaking authority the

20    Department has attempted to invoke. ECF No. 31 at 24. Although section 18004

21    references some language from the HEA, the fact that Congress only incorporated

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

11

1  limited portions of the HEA "raises the inference that the failure to similarly

2  incorporate all of Title IV's eligibility restrictions into the CARES Act was

3  intentional." *Id.*, citing *Navajo Nation v. Dep't of Health & Human Servs., Sec'y*,

4  325 F.3d 1133, 1139-40 (9th Cir. 2003).

5      Moreover, numerous court cases have found that delegated authority in

6  one area does not imply rulemaking authority to interpret the law or terms in the

7  law. *Gonzalez*, 546 U.S. at 263-64 (holding that the Attorney General lacked

8  authority to interpret the meaning of the law, even when delegated the authority

9  to ensure compliance with the law); *Sutton v. United Air Lines, Inc.*, 527 U.S.

10  471, 478 (1999) (holding EEOC lacked authority to define "disability" even when

11  given authority to issue regulations in a separate subchapter from the definition);

12  *City of Los Angeles v. Barr*, 941 F.3d 931, 939 (9th Cir. 2019) (holding Assistant

13  Attorney General lacked authority to impose immigration conditions on Byrne

14  JAG formula grants without specific authority to do so even though the statute

15  delegated authority to "plac[e] special conditions on all grants, and determin[e]

16  priority purposes for formula grants").

17      Even more so here, where Congress did not authorize the Department even

18  to impose conditions on or determine purposes of grants. Section 18004 directed

19  the Secretary to make the funds available and to use the same "system" it

20  normally uses to distribute grant money. But it does not delegate any rulemaking

21  authority to the Department or any authority to otherwise interpret other portions

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

12

of the Act. *See* ECF No. 31 at 25.

### 2. The Department's Eligibility Restriction fails to persuade under *Skidmore*

The basis of *Chevron* deference is that "Congress has delegated authority to an administrative agency to make rules carrying the force of law and that agency's interpretation to which deference is to be given was promulgated in the exercise of that authority." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168 (2d Cir. 2017). When Congress has not delegated interpretive authority and yet an agency takes it upon itself to exercise that authority, the agency's action is not entitled to *Chevron* deference. *Gonzalez*, 546 U.S. at 258; *Sierra Club*, 929 F.3d at 692. Here, as noted by this Court, ECF No. 31 at 30, the proper standard of review is prescribed by *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), under which an agency's interpretation is only given deference to the extent it has the "power to persuade." *Skidmore* deference depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements" as well as its overall "power to persuade[.]" *Skidmore*, 323 U.S. at 140.

Here, as this Court noted, "Defendants' minimal consideration of the interests of non-Title IV eligible students at present, combined with Defendants' position that the April 9 and April 21 statements are not inconsistent, do not reflect thorough evidence in support of the agency's decision-making or consistency between its pronouncements." ECF No. 31 at 28-29. Moreover, the

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Department's actions manifest telltale inconsistency. It initially stated that

2    institutions would have "significant discretion" in how to award the funds and

3    "[t]he *only statutory requirement* is that the funds be used to cover expenses

4    related to the disruption of campus operations due to coronavirus," AR 99

5    (emphasis added), and its own Certification form specifically stated that the

6    grants do not "constitute Federal financial aid under Title IV of the HEA."

7    AR 103. Yet just 11 days later the Department reversed course and determined

8    the emergency funds *are* federal financial aid and students would have to qualify

9    under Title IV of the HEA. *Id.*; ECF No. 6-1, Ex. C.

10    Further, the Department initially took this position, which was codified in

11    an interim final rule after multiple lawsuits were filed, in so-called "FAQs,"

12    which contained no analysis or explanation for the change. The Department failed

13    to explain where or how Congress expressed its intent to apply Title IV to

14    CARES Act emergency grants—particularly when federal financial aid is

15    addressed in a separate section of the Act. *Compare* CARES Act § 3513

16    (addressing federal financial aid) *with* section 18004 (addressing relief for higher

17    education institutions and students). Nor was the certification updated to remove

18    the language that grants were not considered Title IV federal financial aid. Its

19    pronouncement is fatally conclusory and reflects no reasoning, valid or

20    otherwise. Where, as here, an agency's reasoning is "entirely conclusory," lacks

21    valid reasoning by adding language that is not in the statute, and is inconsistent

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   with its earlier pronouncement, it fails to meet *Skidmore*'s requirement of

2   "thorough consideration." *Skidmore*, 323 U.S. at 140; *Sierra Club*, 929 F.3d at

3   693.

4       Moreover, even if the Eligibility Restriction were entitled to deference

5   under *Chevron*, Congress's intent was clear. Congress did not delegate authority

6   to the Department to interpret sections 18001-18007 of the CARES Act, making

7   *Chevron* deference inappropriate. But even if it did, Congress's intent was

8   clear—institutions of higher education are not restricted as to which students they

9   may consider eligible for grants. This ends the analysis.

10      When an agency has been delegated authority to interpret a statute, its

11  implementation is analyzed using a two-step approach. *Chevron*, 467 U.S. at

12  842–44. First, using the "traditional tools of statutory construction," the court

13  first determines whether "the intent of Congress is clear[.]" *Id.* at 842 & n.9. The

14  "traditional tools" include the statute's text, history, structure, "context"—

15  including its place among other statutes enacted previously or "subsequently"—

16  as well as "common sense." *FDA v. Brown & Williamson Tobacco Corp.*,

17  529 U.S. 120, 132-33 (2000). If Congress's intent is clear, "that is the end of the

18  matter[.]" *Chevron*, 467 U.S. at 842–43. If not, and the statute "is silent or

19  ambiguous with respect to the specific issue," the court determines "whether the

20  agency's answer is based on a permissible construction of the statute." *Id.*

21      Here, Congress's intent with regard to student emergency grants when

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

15

1    passing the CARES Act is clear: all students are eligible for grants if their school

2    determines they have need. Starting with the text, section 18004(c) is entitled

3    "Uses of Funds." It directs that: "[i]nstitutions of higher education shall use no

4    less than 50 percent of such funds to provide emergency financial aid grants to

5    *students* for expenses related to the disruption of campus operations due to

6    coronavirus (including eligible expenses under a student's cost of attendance,

7    such as food, housing, course materials, technology, health care, and child care)."

8    CARES Act § 18004(c) (emphasis added). Similarly, section 18004(a) twice

9    directs that the money should be given as "grants to *students* for any component

10   of the student's cost of attendance . . . ." *Id.* §§ 18004(a)(2), (3) (emphasis added).

11   Nothing in this language indicates Congress only intended *some* students to get

12   aid, let alone that they intended to exclude some of the students with the greatest

13   needs.

14        Nor did Congress choose to define "student" to only include those eligible

15   for federal financial aid in the definitions section applicable to sections

16   18001-18006, where it would have if it so intended. CARES Act § 18007.

17   "A fundamental canon of statutory construction is that, unless otherwise defined,

18   words will be interpreted as taking their ordinary, contemporary, common

19   meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, the ordinary

20   meaning of "student" is not restricted to those who meet the eligibility criteria for

21   federal financial aid.

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Further, there is no reference to the eligibility requirements in Title IV,

2   section 484, of the HEA anywhere in sections 18001-18007. The only reference

3   to Title IV is in section 18004(b), which states that "[t]he funds made available

4   to each institution under subsection (a)(1) shall be distributed by the Secretary

5   using the same *systems* as the Secretary otherwise distributes funding to each

6   institution under title IV of the Higher Education Act of 1965 (20 U.S.C. § 1001

7   et seq.)." (Emphasis added.) The plain language of this provision indicates that

8   the Secretary shall distribute money to the institution itself using the system it

9   already has in place to transfer aid money to institutions.

10    Title IV as a whole compels the conclusion that the term "system" is a

11   technological system, not a methodology for determining eligibility. In addition

12   to governing how federal financial aid is distributed, Title IV contains a nearly

13   countless number of grants the Department distributes directly to institutions for

14   a wide variety of purposes. 20 U.S.C. §§ 1051-1068h, 1101-1103g, 1121-1132,

15   1151-1155 (2020). In fact, the sections governing grants that go directly to

16   institutions of higher education dwarf the number of provisions governing money

17   that goes to students for federal financial aid. 20 U.S.C. §§ 1070-1099d (2020)

18   (governing Student Assistance).

19    A myriad of eligibility requirements match the many provisions providing

20   aid to students and institutions. *See* 20 U.S.C. §§ 1001 *et seq.* (2020). For

21   example, to be eligible under the Path to Success program, an individual must be

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    aged 16-25, convicted of a criminal offense, and detained or released from a

2    juvenile detention center. 20 U.S.C. § 1161w(f)(2) (2020). None of these

3    eligibility requirements—including eligibility for federally financial aid—can

4    rationally be determined to be a "system" for distribution. *See* CARES Act

5    § 18004(b).

6        The structure of the CARES Act itself also shows that Congress did not

7    intend to limit CARES Act emergency grants under section 18004 only to

8    students eligible for federal financial aid. Among the many eligibility provisions

9    available under Title IV, the Department selected a single eligibility provision

10   and applied it to block needy students from accessing emergency grant money.

11   Worse, the Department selected the eligibility provisions that apply to students

12   applying for federal financial aid when Congress created a wholly separate

13   section of the CARES Act that dealt with federal financial aid. CARES Act

14   § 3513. It also defies credulity that Congress would intend to force an immensely

15   burdensome administrative task—determining each individual student's

16   technical eligibility for federal financial aid under Title IV—during a pandemic

17   when school resources are extremely limited and time is of the essence for

18   dispersing much-needed financial assistance. The Department's decision to add

19   an additional eligibility requirement simply defies "common sense."

20       Thus when using the "traditional tools" of statutory construction such as

21   the statutes text, structure, context, and common sense, *Brown & Williamson*,

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

18

1    529 U.S. at 132, Congress's intent is clear. Congress assigned to institutions the

2    ability to determine the students who would receive CARES Act grants, subject

3    "only [to the] statutory requirement . . . that the funds be used to cover expenses

4    related to the disruption of campus operations due to coronavirus . . . ." AR 99.

5    **C.**    **The Department's Eligibility Restriction is Arbitrary and Capricious**

6    The APA requires that a court "hold unlawful and set aside agency action

7    . . . found to be . . . arbitrary [and] capricious[.]" 5 U.S.C. § 706(2)(A) (2020).

8    An "unexplained inconsistency" between agency actions is "a reason for holding

9    an interpretation to be an arbitrary and capricious change . . . ." *Nat'l Cable*,

10    545 U.S. at 981. Agency action is also arbitrary and capricious if the agency

11    "entirely failed to consider an important aspect of a problem, offered an

12    explanation for its decision that runs counter to the evidence before the agency,

13    or [made a decision that] is so implausible that it could not be ascribed to a

14    difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*

15    *of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

16    First, the Eligibility Restriction is an unexplained inconsistency. A policy

17    is arbitrary and capricious when that policy is an unexplained inconsistency, but

18    a change in policy is permissible under the APA if the agency (1) displays

19    "awareness that it *is* changing position," (2) shows that "the new policy is

20    permissible under the statute," (3) "believes" the new policy is better, and

21    (4) provides "good reasons" for the new policy. *F.C.C. v. Fox Television Stations*,

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Inc.*, 556 U.S. 502, 515-16 (2009).

2          The Department's unexplained policy reversal fails to meet the standards

3    under *Fox*. First, the FAQs failed to mention the Department's previous position

4    and failed to display any awareness that it was changing its position. Second,

5    unlike the Secretary's Letter to Presidents and the Certification, which

6    specifically referenced the statutory language of the CARES Act, the FAQs failed

7    to refer to any portion of the CARES Act. AR 99-100, 103-105, 106-110. And,

8    finally, the Department fails the third and fourth prongs because the FAQs did

9    not acknowledge the Department's previous position entirely and included no

10   analysis of the need for the change and thus lacked any statements that the new

11   policy is "better" or that there were "good reasons" for the change. The

12   Department's sudden, unexplained policy shift is arbitrary and capricious and

13   should be set aside. *See Chinook Indian Nation v. U.S. Dep't of Interior*,

14   No. C17-5668-RBL, 2020 WL 363410, at *7 (W.D. Wash. Jan. 22, 2020);

15   *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1260 (W.D. Wash.

16   2018).

17          Second, the Eligibility Restriction "entirely fail[s] to consider an important

18   aspect of the problem," *Motor Vehicle Manufacturers Association*, 463 U.S. at

19   43, which is that there are many students at Washington's institutions of higher

20   education who do not qualify for financial aid under Title IV, section 484 of the

21   HEA, but who need emergency financial assistance due to the impacts of

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

20

1    COVID-19. In fact, many of the students who do not qualify are those most in

2    need of financial support such as adult basic education students who are typically

3    lower income and seeking to gain education and skills to improve their

4    employment prospects or Running Start students on free or reduced lunch

5    programs. ECF No. 13 (Yoshiwara Decl.) at 9-11 ¶¶ 18-20; ECF No. 7 (Woods

6    Decl.) at 9-12 ¶¶ 18-24; ECF No. 8 (Flores Decl.) at 7-10 ¶¶ 15-22; ECF No. 9

7    (Allison Decl.) at 8-12 ¶¶ 16-23; ECF No. 10 (Buchmann Decl.) at 8-15 ¶¶ 15-

8    27.

9         And, third, the decision to tie emergency grants to eligibility for federal

10   financial aid ignores another important aspect of the problem: the Congressional

11   purposes for each type of funding are different. Financial aid under Title IV of

12   the HEA is comprised of Direct Loans, which must be repaid, and Pell Grants,

13   which must be repaid under certain circumstances (*e.g.*, leaving the program,

14   change in enrollment status, receiving other grants that reduce financial need).

15   *See* 34 C.F.R. §§ 685.207, 690.80, 690.79 (2020). By contrast, CARES funds do

16   not need to be repaid. *See* CARES Act § 18004. Thus, any reasons Congress may

17   have conditioned eligibility for Federal Financial Aid under the HEA are simply

18   absent under the CARES Act.

19        And, finally, the Department's decision to limit emergency grants only to

20   students who are eligible for federal financial aid is completely implausible and

21   thus cannot be ascribed to a difference in view or the product of agency expertise.

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    As discussed above, there are myriad and diverse eligibility requirements found

2    in Title IV's many provisions. The Department's decision to cherry-pick a single

3    eligibility requirement from all of Title IV, in the absence of any direction from

4    Congress to do so, runs so far counter to the language of the CARES Act that it

5    is nonsensical and *prima facie* arbitrary and capricious. *See* 20 U.S.C. §§ 1161w,

6    1161k (2020).

7    **D.    The Eligibility Restriction Violates Separation of Powers**

8    The Department's Eligibility Restriction also violates constitutional

9    separation of powers principles by permitting it to refuse to disburse money

10   appropriated by Congress. The Constitution gives Congress, not the Executive

11   branch, the power to spend and to set conditions on funds. U.S. Const. art. I, § 8,

12   cl. 1. As the Ninth Circuit recently reaffirmed, the Executive Branch "does not

13   have unilateral authority" to "thwart congressional will by canceling

14   appropriations passed by Congress." *City & County of San Francisco v. Trump*,

15   897 F.3d 1225, 1232 (9th Cir. 2018) (internal quotation marks and citations

16   omitted). If the Executive branch wishes to condition the receipt of federal funds,

17   it may *only* do so pursuant to a specific delegation of spending authority by

18   Congress. *City & County of San Francisco*, 897 F.3d at 1233-34. The Executive

19   cannot amend or cancel appropriations that Congress has duly enacted by

20   imposing, without congressional authority, its own conditions on the receipt of

21   such funds. *See Train v. City of New York*, 420 U.S. 35, 38, 44 (1975).

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      Nonetheless, this is what the Department has done by placing the

2   Eligibility Restriction on CARES Act funds that Congress did not. As the

3   Northern District of California Court noted when analyzing whether the

4   Department violated separation of powers principles, "Congress has

5   demonstrated consistently that it knows how to impose conditions on funding and

6   delegate to the Secretary the authority to impose such conditions when intended"

7   but, here "no such language exists in section 18004." *Oakley*, 2020 WL 3268661,

8   at *9. Thus Congress did not afford the Department any discretion or authority to

9   place such restrictions. In unilaterally imposing the Eligibility Restriction, the

10  Department usurped Congress' power to legislate in violation of the principles of

11  separation of powers.

12  **E.      The Eligibility Restriction Violates the Spending Clause**

13      The Spending Clause mandates that an agency must not impose conditions

14  on federal funds that are (1) so coercive that they compel (rather than encourage)

15  recipients to comply, (2) ambiguous, (3) retroactive, or (4) unrelated to the

16  federal interest in a particular program. *Nat'l Fed'n of Indep. Bus. v. Sebelius*

17  (*NFIB*), 567 U.S. 519, 575–78 (2012); *South Dakota v. Dole*, 483 U.S. 203,

18  206-08 (1987). The Eligibility Restriction is ambiguous, retroactive, and is not

19  reasonably related to the federal interest in the CARES Act.

20      First, the Eligibility Restriction violates the prohibition on "ambiguity"

21  because it is not stated in the CARES Act and thus Washington institutions did

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR                    23                    ATTORNEY GENERAL OF WASHINGTON
                                                              Complex Litigation
                                                              800 Fifth Avenue, Suite 2000
                                                              Seattle, WA 98104-3188
                                                              (206) 464-7744

1    not know of the Eligibility Restriction at the time they signed the Department's

2    certification to receive emergency financial aid grants for their students.

3    *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)

4    (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981))

5    (States "cannot knowingly accept conditions of which they are 'unaware' or

6    which they are 'unable to ascertain[.]' "). Second, the Eligibility Restriction is

7    retroactive because the Department has improperly surprised Washington's

8    colleges with post-acceptance conditions on funds by imposing the eligibility

9    requirements *after* those colleges executed the required Certification. *Pennhurst*,

10   451 U.S. at 25 (federal government may not "surprise[] participating States with

11   post acceptance or 'retroactive' conditions" on congressionally appropriated

12   funds). And, third, the Eligibility Restriction is not "reasonably related to the

13   purpose of the expenditure[.]" *New York v. United States*, 505 U.S. 144, 172

14   (1992). But the Department's Eligibility Restriction frustrates the goal of the

15   CARES Act of providing financial assistance to students of higher education

16   during a public health crisis. *Charles v. Verhagen*, 348 F.3d 601, 609 (7th Cir.

17   2003) (the condition placed on a spending program must "share[] the same goal"

18   as the program).

## IV.   CONCLUSION

20       For the foregoing reasons, the State of Washington requests that the Court

21   grant Plaintiff State of Washington's Motion for Summary Judgment.

22

PLAINTIFF STATE OF
WASHINGTON'S MOTION FOR
SUMMARY JUDGMENT
NO. 2:20-cv-00182-TOR

24

1    RESPECTFULLY SUBMITTED this 20th day of November 2020.

2                                 ROBERT W. FERGUSON
                                 Attorney General of Washington
3

4                                 /s/ R. July Simpson
                                 R. JULY SIMPSON, WSBA #45869
5                                 JEFFREY T. SPRUNG, WSBA #23607
                                 SPENCER W. COATES, WSBA #49683
6                                 PAUL M. CRISALLI, WSBA #40681
                                 Assistant Attorneys General
7                                 800 Fifth Avenue, Suite 2000
                                 Seattle, WA 98104-3188
8                                 (206) 464-7744
                                 july.simpson@atg.wa.gov
9                                 jeff.sprung@atg.wa.gov
                                 spencer.coates@atg.wa.gov
10                                paul.crisalli@atg.wa.gov
                                 Attorneys for Plaintiff State of Washington
11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATE OF                        25            ATTORNEY GENERAL OF WASHINGTON
WASHINGTON'S MOTION FOR                                          Complex Litigation
                                                          800 Fifth Avenue, Suite 2000
SUMMARY JUDGMENT                                             Seattle, WA 98104-3188
NO. 2:20-cv-00182-TOR                                            (206) 464-7744

1

## <u>DECLARATION OF SERVICE</u>

2       I hereby declare that on this day I caused the foregoing document to be

3   electronically filed with the Clerk of the Court using the Court's CM/ECF System

4   which will serve a copy of this document upon all counsel of record.

5       DATED this 20th day of November 2020, at Tacoma, Washington.

6

7                                   */s/ R. July Simpson*
                                    R. JULY SIMPSON, WSBA #45869
8                                   Assistant Attorney General

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATE OF                          26          ATTORNEY GENERAL OF WASHINGTON
WASHINGTON'S MOTION FOR                                          Complex Litigation
                                                             800 Fifth Avenue, Suite 2000
SUMMARY JUDGMENT                                               Seattle, WA 98104-3188
NO. 2:20-cv-00182-TOR                                             (206) 464-7744